Linda Dakin-Grimm (admitted *pro hac vice*)
Daniel M. Perry (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & McCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90035
Telephone No.: (213) 892-4000
Facsimile No.: (213) 629-5063

Peter C. Bernhard (Nevada Bar No. 0734)
Georganne W. Bradley (Nevada Bar No. 1105)
Joseph P. Hardy (Nevada Bar No. 7370)
BULLIVANT HOUSER BAILEY PC
3883 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
Facsimile No.: (702) 650-2995
E-Mail: peter.bernhard@bullivant.com;
         georganne.bradley@bullivant.com

**Counsel for Compass Financial Partners LLC
and Compass USA SPE LLC**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| In re: USA COMMERCIAL MORTGAGE COMPANY, Debtor. | Case No. **2:07-CV-00892-RCJ-GWF** Bankruptcy Case No. BK-S-06-10725 LBR [Chapter 11] |
|---|---|
|  |  |

***ERRATA* RE: PRELIMINARY INJUNCTION AND ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 1141 AND FED. R. CIV. P. 65 ENFORCING CONFIRMATION ORDER**

Compass hereby files this *Errata* to the Preliminary Injunction and Order Pursuant to 11 U.S.C. §§ 105 and 1141 and Fed. R. Civ. P. 65 Enforcing Confirmation Order. Exhibits A and B to the Order were inadvertently omitted from the filing with this Court. In addition, Compass has made a nonmaterial change to the defined term "Compass" in the Order, at page 1,

line 20. The Order has been changed to include in its defined term of Compass a "licensed subservicer" of Compass.

Attached is a new version of the Order in which Exhibits A and B are now included, and the definition of Compass has been updated. No other changes whatsoever have been made to this document.

Dated: October 31, 2007

*[signature]*
Linda Dakin-Grimm (admitted *pro hac vice*)
Daniel M. Perry (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & McCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90035
Telephone No.: (213) 892-4000
Facsimile No.: (213) 629-5063

-and-

Peter Bernhard (State Bar No. 734)
Georganne W. Bradley (State Bar No. 1105)
Bullivant Houser Bailey PC
3883 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
peter.bernhard@bullivant.com
Telephone No.: (702) 650-6565
Facsimile No.: (702) 650-2995

Counsel for Compass Financial Partners LLC and Compass USA SPE LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                Debtor.<br><br>Affects:<br>☐ All Debtors<br>☒ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Case No. 2:07-CV-00892-RCJ-GWF<br><br>Bankruptcy Case No. BK-S-06-10725 LBR [Chapter 11]<br><br>**Preliminary Injunction and Order Pursuant to 11 U.S.C. §§ 105 and 1141 and Fed. R. Civ. P. 65 Enforcing Confirmation Order**<br><br>Hearing Date: September 10, 2007<br>Hearing Time: 3:00 p.m. |
|---|---|

On August 1, 2007, following hearings held on June 20, 2007 and July 27, 2007, the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") entered its Supplemental Order Re: Emergency Motion for Order Pursuant to 11 U.S.C. §§ 105 and 1141 Enforcing Confirmation Order and for Civil Contempt Sanctions (the "Bankruptcy Court Injunction Order") in the chapter 11 bankruptcy cases of USA Commercial Mortgage Company ("USACM") and certain of its affiliates (collectively, the "Debtors"), jointly administered under Case Number BK-S-06-10725-LBR (the "Bankruptcy Case"), with respect to the Emergency Motion of Compass Financial Partners LLC and Compass USA SPE LLC (together, with any parent, affiliate, subsidiary, or licensed subservicer thereof, "Compass") for Order Pursuant to 11 U.S.C. §§ 105 and 1141 Enforcing Confirmation Order and for Civil Contempt Sanctions (the "Sanctions Motion"). On August 6, this United States District Court for the District of Nevada (the "Court") withdrew the reference to the Bankruptcy Court with respect to the disputes set forth in the Sanctions Motion, which had been designated an adversary proceeding by the Bankruptcy Court.

On August 27, 2007, the Court held a preliminary hearing on a Motion to Dissolve Bankruptcy Court's Temporary Status Quo Order (the "Plaintiff Lenders Motion") filed by the plaintiffs in Cause No. 3:07-CV.00241: Donna M. Cangelosi ("Cangelosi"); fifty-two (52)

Limited Liability Company entities (each an "LLC," and collectively the "LLCs") purportedly holding beneficial interests in the fifty-two (52) separate loans originated by USACM identified in Exhibit A hereto (each a "Loan," and collectively the "Loans"); and an entity calling itself the "Lenders Protection Group" consisting of individuals holding beneficial interests in certain of the loans originated by the Debtors (the "LPG;" and together with Cangelosi and the LLCs, the "Plaintiff Lenders").  The Court ruled at that hearing that the Bankruptcy Court Injunction Order should remain in full force and effect pending a hearing on the Court's order to show cause why the Bankruptcy Court Injunction Order should not be entered by the Court as a preliminary injunction pursuant to Fed. R. Civ. P. 65 (the "Order to Show Cause").  A hearing on the Order to Show Cause was held before this Court on Monday, September 10, 2007, at which time the Court made preliminary findings of law and ordered interim relief, as supplemented by further rulings at hearings on related matters held on October 1, 2007 and October 2, 2007.

This Court, having heard oral argument of counsel and other interested persons whose appearances were as noted on the record of the September 10, 2007, October 1, 2007 and October 2, 2007 hearings, having read and considered all pleadings and papers filed in support of and in opposition to the Order to Show Cause, and having read and considered the Sanctions Motion, the Plaintiff Lenders Motion, and all Declarations and other pleadings and papers on file herein that are, in the opinion of the Court, relevant to the issues before it; and it appearing that interim relief is required so that borrowers will not use the dispute between Compass and the Plaintiff Lenders as an excuse not to timely remit payments to Compass and so that funds collected by Compass can be distributed to the beneficial holders of interests in the Loans (collectively, and not limited only to those holders that purported to assign such beneficial interests to an LLC, the "Direct Lenders"), including those Direct Lenders not directly or indirectly a party to the dispute, but it further appearing that the rights of the Plaintiff Lenders must be preserved so that such Plaintiff Lenders will have an opportunity to take further action in accordance with their contractual rights and this Preliminary Injunction Order to seek to terminate Compass as servicer with respect to a Loan; and for good cause otherwise appearing:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. <u>Compass as Servicer</u>. Pending further order of this Court, Compass is and shall remain the loan servicer with respect to all Loans for which Cangelosi, on behalf of FDH Management Company LLC as managing member of each of the LLCs, purported to terminate Compass as loan servicer on May 18, 2007, and Compass shall retain and be authorized to exercise its authority as servicer to (i) negotiate with borrowers under the Loans the settlement of any defaulted or non-performing Loan, and (ii) initiate and pursue foreclosure proceedings in its own name on behalf of the holders of the Bid Interests (as defined in paragraph 7 herein) with respect to any Loan in accordance with the terms of this Preliminary Injunction Order and the applicable Loan Servicing Agreements between USACM and Direct Lenders under a Loan, the rights of USACM under which were purchased by and assigned to Compass pursuant to an Order entered in the Bankruptcy Case (the "<u>LSAs</u>").

2. <u>Borrower Payments</u>. Pending further order of this Court, all amounts due and owing by borrowers under or in connection with the Loans shall continue to be paid directly to Compass (the "<u>Payments</u>"), and all Direct Lenders are enjoined, prevented and restrained from initiating or engaging in any contact with a borrower in any Loan in which such a Direct Lender: (i) undermines the exclusive authority of Compass (and its Subservicer, as defined in paragraph 3 herein) to act directly on behalf of the Direct Lenders as servicer; (ii) purports to have the authority to negotiate on behalf of Direct Lenders in such Loan; or (iii) otherwise directs a borrower to make Payments to an individual or entity other than Compass.

3. <u>Subservicer</u>. Compass is authorized, required and directed to engage a subservicer that holds a valid Nevada mortgage lender license to assist in servicing the Loans (the "<u>Subservicer</u>"), which Subservicer shall remain under the Court's supervision, to, among other things: (i) provide and distribute status updates to Direct Lenders on the Loans consistent with the terms of the LSAs; (ii) field and timely reply to Direct Lender inquiries regarding Loan status, account status, and related questions regarding the Loans; (iii) review and reply to Direct Lender inquiries regarding Compass's activities related to resolution of a defaulted or non-performing Loan; (iv) review and monitor distributions made by Compass to Direct Lenders in

1  accordance with the applicable LSAs, applicable law and this Preliminary Injunction Order
2  upon Compass's recovery on account of a Loan; (v) contact, advise, and make appropriate
3  disclosure on behalf of Compass and the Subservicer to Direct Lenders with respect to proposed
4  Loan resolutions negotiated with the defaulted borrowers; (vi) gather necessary Direct Lender
5  consents to discounted borrower Loan payoffs in accordance with the terms of this Preliminary
6  Injunction Order and the applicable LSAs; (vii) review and monitor Compass's accountings of
7  distributions to Direct Lenders, payment of applicable Compass Fees (as defined in paragraph 4
8  herein), and deposits into the Direct Lender remittance account pursuant to this Preliminary
9  Injunction Order; and (viii) comply with the requirements of applicable regulatory bodies and
10 under applicable mortgage licensing statutes, and provide guidance to Compass with respect
11 thereto.
12       4.      <u>Payment in Full</u>.  In the event Compass receives a Payment from a borrower on a
13 Loan or cash from the sale of the collateral securing a Loan which satisfies in full ("<u>Payment in
14 Full</u>") all then outstanding principal and accrued interest owed to the Direct Lenders with
15 respect to such Loan (including, but not limited to, Compass to the extent that it is a Direct
16 Lender under such Loan) ("<u>Principal and Interest</u>") and all then outstanding and accrued default
17 interest, late charges, origination fees, extension fees, exit fees, success fees, and servicing fees
18 under the terms of the applicable Loan documents and LSAs (the "<u>Compass Fees</u>"), then: (a)
19 Compass shall be permitted to deduct and retain from such Payment in Full the Compass Fees;
20 and (b) Compass shall distribute the balance of the Payment in Full to such Direct Lenders
21 (including, but not limited to, Compass to the extent that it is a Direct Lender under such Loan)
22 in accordance with applicable law and the applicable LSAs.
23       5.      <u>Consensual Discounted Payoff</u>.  In the event that Compass receives a Payment
24 from a borrower on a Loan or cash from the sale of the collateral securing a Loan that is less
25 than Payment in Full (a "<u>Discounted Payment</u>"), but, after full disclosure and a line-by-line
26 itemization to the Direct Lenders in such Loan of the Principal and Interest and the specific
27 Compass Fees related to the Loan ("<u>Disclosure</u>"), Compass has received the unconditional
28 consent of all Direct Lenders under such Loan in accordance with the applicable LSAs

1  (including, but not limited to, Compass to the extent that it is a Direct Lender under such Loan)
2  as to the amount of such Discounted Payment that shall be distributed to Direct Lenders with
3  respect to Principal and Interest on the Loan, and Compass has consented to the amount of such
4  Discounted Payment that shall be distributed to it with respect to the Compass Fees, then: (a)
5  Compass shall be entitled to deduct and retain from such Discounted Payment and release from
6  the remittance account for the Loan, if any, for its own account such amount of Compass Fees
7  as have been so consented to; and (b) Compass shall distribute to the Direct Lenders (including,
8  but not limited to, Compass to the extent that it is a Direct Lender on a Loan) from such
9  Discounted Payment such amounts of Principal and Interest as have been so consented to.
10 Notwithstanding anything contained in this Preliminary Injunction Order to the contrary, under
11 no circumstance shall Compass be obligated to accept a Discounted Payment from a borrower
12 absent the unconditional consent of Compass and all of the Direct Lenders (including, but not
13 limited to, Compass to the extent that it is a Direct Lender on a Loan) on such Loan.

14        6.    Non-Consensual Discounted Payment. In the event that Compass receives a
15 Discounted Payment on a Loan, but, after Disclosure, Compass has not received the consent of
16 all Direct Lenders under such Loan as to the amount of such Discounted Payment that Compass
17 has proposed shall be distributed to Direct Lenders (including, but not limited to, Compass to
18 the extent that it is a Direct Lender under such Loan) on account of Principal and Interest (the
19 "Direct Lender Allocation"), then: (a) Compass shall be permitted to deduct and retain from
20 such Discounted Payment its servicing fees that accrued on and after February 16, 2007 under
21 the terms of the applicable LSAs ("Post-Closing Servicing Fees") and servicer advances made
22 with respect to such Loan under the terms of the applicable Loan documents and in accordance
23 with the LSAs ("Advances"); (b) if the amount of the Discounted Payment (after the deduction
24 of Post-Closing Servicing Fees and Advances) exceeds the total amount of Principal and Interest
25 due and owing to the Direct Lenders on such Loan (including, but not limited to, Compass to the
26 extent that it is a Direct Lender under such Loan), Compass is authorized to retain and apply
27 such difference to Compass Fees; (c) Compass shall distribute to Direct Lenders (including, but
28 not limited to, Compass to the extent that it is a Direct Lender under such Loan) from such

Discounted Payment the Direct Lender Allocation; (d) Compass is authorized to deduct and retain from such Discounted Payment an amount equal to the Compass Fees (including any funds relating to such Loan currently held in the Direct Lender remittance account pursuant to prior order of the Bankruptcy Court) less the Post-Closing Servicing Fees and Advances (the "Compass Allocation") in respect of those Direct Lenders that have consented to the Discounted Payoff, the Direct Lender Allocation and the Compass Allocation; and (e) Compass shall deposit the balance of such Discounted Payment in an interest-bearing Direct Lender remittance account. The funds deposited in such remittance account shall be distributed to Compass and to those Direct Lenders that have consented to the Discounted Payoff but have not consented to the Direct Lender Allocation and the Compass Allocation only upon and pursuant to: (i) the subsequent consent of Compass and all such non-consenting Direct Lenders; or (ii) further order of this Court obtained upon a motion brought by a party in interest after appropriate notice.

      7.     Foreclosure. In the event that Compass commences and pursues a foreclosure sale with respect to a Loan in accordance with the applicable LSAs: (a) Compass or a single purpose entity designated by Compass (the "Bidding Entity") is authorized to make a credit bid at the foreclosure sale (which shall not be in an amount greater than Payment in Full) on behalf of Compass and the Direct Lenders (including, but not limited to, Compass to the extent that it is a Direct Lender under such Loan) with respect to Compass's and the Direct Lenders' respective rights as beneficiaries under any applicable deed of trust, mortgage or security interest on account of obligations arising under the applicable Loan documents that are secured by the collateral (the "Bid Interests"); (b) if the Bidding Entity makes such a credit bid and there is a cash overbid, then either (i) if the cash overbid is in an amount equal to or greater than Payment in Full, then the Bidding Entity shall have no further obligation to bid at the foreclosure sale and upon receipt of proceeds of the sale in an amount equal to or greater than Payment in Full, the Bidding Entity shall proceed in accordance with paragraph 4 above, (ii) if the cash overbid is in an amount less than Payment in Full and Compass and all Direct Lenders under such Loan (including, but not limited to, Compass to the extent that it is a Direct Lender under such Loan) have not consented to the acceptance of a cash overbid in such amount, then

1  the Bidding Entity must increase its credit bid to at least the next highest incremental bid
2  amount in excess of the cash overbid permitted at the foreclosure sale, or (iii) if the cash overbid
3  is in an amount less than Payment in Full but Compass and all Direct Lenders under such Loan
4  (including, but not limited to, Compass to the extent that it is a Direct Lender under such Loan)
5  have consented (in accordance with the applicable LSAs), after Disclosure, to the acceptance of
6  a cash overbid in such amount, then (A) the Bidding Entity must accept (or direct the
7  foreclosure trustee or other entity conducting the foreclosure sale to accept) such cash overbid,
8  and (B) the Bidding Entity shall distribute such proceeds in accordance with paragraph 5 above.
9  Under no circumstance shall the Bidding Entity be obligated to make a bid in an amount greater
10 than Payment in Full.

11       In the event that the Bidding Entity purchases the collateral at the foreclosure sale
12 pursuant to a successful credit bid made on behalf of the holders of the Bid Interests or receives
13 a deed in lieu of foreclosure, then the Bidding Entity is authorized to hold title to the purchased
14 collateral in the name of such Bidding Entity on behalf of the holders of the Bid Interests, and to
15 preserve, maintain, manage, market, sell and (in accordance with the applicable section of the
16 LSA which provides for the conveyance of title upon the approval of fifty-one percent (51%) of
17 the Direct Lenders in a Loan) convey title to the purchased collateral in the name of the Bidding
18 Entity on behalf of the holders of the Bid Interests, with all costs and advances associated
19 therewith to be deducted and paid to the Bidding Entity in accordance with the terms of the
20 applicable LSAs, after Disclosure, as a first priority from the proceeds realized in a subsequent
21 disposition of the collateral, prior to distribution of the balance in a manner consistent with
22 paragraphs 4, 5, or 6 above.

23       8.    <u>Motion to Terminate Compass</u>.  Fifty-one percent (51%) or more of the Direct
24 Lenders in a Loan, whether acting directly or acting through a person or entity holding a power
25 of attorney of such Direct Lender granted after such Direct Lender's receipt of this Preliminary
26 Injunction Order and the Contempt Order re Donna M. Cangelosi entered concurrently herewith
27 and reiterating such Direct Lender's desire to terminate Compass ("<u>Majority Lenders</u>"), may file
28 a motion seeking an order authorizing the termination of Compass as servicer with respect to

such Loan (as well as any Subservicer engaged by Compass).[1] Such motion will be heard by this Court upon no less than ten (10) days notice to Compass (without regard to any thirty (30) day or other prior notice provision in the applicable LSA). The foregoing notwithstanding, Compass shall be terminated as servicer of the Loans identified on Exhibit B hereto effective as of the date of this Preliminary Injunction Order, without a showing of cause or further order of the Court, and the Majority Lenders may take such actions with respect to such Loans as otherwise may be permitted in the absence of a servicer under the applicable LSAs and applicable law. The inclusion of any Loan on Exhibit B hereto shall not constitute an admission of wrongdoing on the part of Compass and, in accordance with paragraph 14 of the Confirmation Order entered in the Bankruptcy Case and this Preliminary Injunction Order, no entity other than Compass shall have the right or ability to compromise, subordinate, or impair, in any respect, any of the Compass Fees having accrued on such Loan through the date of this Preliminary Injunction Order (subject to further order of this Court).

        9.    <u>Compass Accountings</u>. Compass shall file with the Court as soon as is practicable, but in no event later than November 15, 2007, a detailed line-item accounting as of October 2, 2007 (which may reasonably be amended) with respect to each Loan of the following: (a) the Loan account status as of February 16, 2007; (b) all Payments received by Compass or by Silar Advisors. L.P. or Silar Special Opportunities Fund, Ltd. from the borrower or through foreclosure sales or other dispositions of collateral; (c) all Compass Fees on an itemized basis, purportedly owed on such Loan as of October 2, 2007; (d) all Compass Fees deducted from a Payment received by Compass or otherwise paid to Compass by a borrower; (e) all disbursements made by Compass; (f) all written requests for payment on a Loan made by Compass to a borrower; and (g) all written Loan payoff proposals received by Compass from a borrower.

---

[1] The LLCs may file and pursue this motion on behalf of Direct Lenders requesting termination upon obtaining a power of attorney from each such Direct Lender following their receipt of this Preliminary Injunction Order and the Contempt Order re Donna M. Cangelosi..

10. <u>LLC Accountings</u>. Each LLC shall file with the Court as soon as is practicable, but in no event later than November 15, 2007, an accounting as of October 2, 2007 with respect to each LLC from and after its inception of the following: (a) the total dollar amount of beneficial interests held by the LLC with respect to the applicable Loan; (b) the Direct Lenders who heretofore assigned to the LLC their beneficial interests under the deed of trust or mortgage securing the obligations under the Loan documents ("<u>Beneficial Interests</u>"); (c) any voluntary rescission to a Direct Lender of a Beneficial Interest heretofore assigned to an LLC and the accompanying LLC membership interest transferred to such Direct Lender; (d) all payments on account of such Loan received by the LLC from Compass, the borrower or otherwise; (e) all sales, assignments, transfers, hypothecations or encumbrances of Beneficial Interests by the LLC; (f) all funds received by the LLC on account of such sales, assignments, transfers, hypothecations or encumbrances; (g) all reasonably known requests for payment on a Loan made by an LLC or any of its members to a borrower; and (h) all reasonably known Loan payoff proposals received by an LLC or any of its members from a borrower.

11. <u>Prohibition on Compass Transfers</u>. With the exceptions of sales, assignments, transfers, hypothecations or encumbrances of Compass Fees made by Compass to Silar Advisors. L.P. or Silar Special Opportunities Fund, Ltd., or to a licensed subservicer, Compass shall not sell, assign, transfer, hypothecate or encumber the Compass Fees and/or Compass's interests as a Direct Lender in any Loan in which it is currently the servicer without further order of this Court obtained upon motion by Compass noticed to the Plaintiff Lenders.

12. <u>Prohibition on LLC Transfers</u>. With the exception of any voluntary rescission to a Direct Lender of a Beneficial Interest transferred to an LLC and the accompanying LLC membership interest transferred to such Direct Lender, and subject to paragraph 13 below, no LLC shall sell, assign, transfer, hypothecate or encumber any Beneficial Interests held or owned by such LLC without further order of this Court obtained upon motion by such LLC noticed to Compass and the affected Direct Lenders. Compass shall be provided with notice of any such rescission, sale, assignment, transfer, hypothecation or encumbrance of a Beneficial Interest

within ten (10) days after such rescission, sale, assignment, transfer, hypothecation or encumbrance becomes effective.

13. <u>LLC Encumbrance of Beneficial Interests</u>. The LLCs are permitted to encumber any Beneficial Interests held or owned by the LLCs for the purpose of obtaining litigation financing and property related carrying costs financing only upon entry of an order of this Court authorizing such encumbrance following the filing of a motion (after appropriate notice to Compass and all members of the LLCs).

14. <u>Communication of Order to Borrowers and Direct Lenders</u>. Within three (3) business days of the date of entry of this Preliminary Injunction Order, Compass shall serve by mail upon the borrowers and Direct Lenders on each Loan: (a) copies of this Preliminary Injunction Order and the Contempt Order re Donna M. Cangelosi entered concurrently herewith; and (b) with respect to each Loan, notification that (i) the May 18, 2007 correspondence of Cangelosi to the borrower purporting to terminate Compass as servicer was ineffectual, (ii) Compass remains the exclusive entity authorized to act on behalf of the Direct Lenders in such Loan; and (iii) all Payments on such Loan should continue to be made directly to Compass. If a Direct Lender who is not a Plaintiff Lender (and who did not otherwise receive notice of the October 1-2, 2007 hearing) wishes to object to the relief granted in this Preliminary Injunction Order, such Direct Lender must file a written objection with this Court stating the specific basis for such objection within fifteen (15) days of the date hereof, or such Direct Lender shall otherwise be bound by the terms hereof and forever barred from asserting a claim against any collateral conveyed in accordance with paragraph 7 hereof or against the foreclosure trustee or other entity conducting the foreclosure sale.

15. <u>Jurisdiction</u>. This Court has and shall retain in personam jurisdiction over the Plaintiff Lenders and Compass and in rem jurisdiction over the Loans and LSAs relating thereto, and the conveyance of title of collateral acquired in connection therewith.

16. <u>Effect of Preliminary Injunction Order</u>. This Preliminary Injunction Order supersedes the Bankruptcy Court Injunction Order, <u>provided</u>, <u>however</u>, funds held in any Direct Lender remittance account pursuant to prior order of the Bankruptcy Court shall remain in such

account and be distributed pursuant to paragraph 6 of this Preliminary Injunction Order. Nothing herein shall be construed as a waiver of any party's right to assert that any obligation arising under a Loan document is not secured by the collateral.

**IT IS SO ORDERED.**

Dated:  November 6, 2007

_____
**HONORABLE ROBERT C. JONES
UNITED STATES DISTRICT COURT JUDGE**

# Exhibit A

Exhibit A

Exhibit "A" Loans

1. 3685 San Fernando
2. 5505 Collwood
3. 6425 Gess
4. 60th Street Venture
5. Amesbury Hatters Point
6. Anchor B
7. BarUSA
8. Bay Pompano
9. Binford
10. Brookmere
11. Bundy Canyon $2.5 MM
12. Bundy Canyon $5.0 MM
13. Bundy Canyon $5.725 MM
14. Bundy Canyon $7.5 MM
15. Cabernet
16. Castaic II
17. Castaic III
18. Charlevoix
19. Clear Creek Plantation
20. Comvest
21. Copper Sage II
22. Cornman Toltec
23. Del Valle Livingston
24. Eagle Meadows
25. Fiesta Murrieta
26. Fiesta Stoneridge
27. Foxhills 216
28. Gramercy Court
29. Harbor Georgetown
30. Hesperia
31. HFA Clearlake I
32. HFA Clearlake II
33. Huntsville
34. La Hacienda
35. Lake Helen Partners
36. Lerin Hills
37. Margarita Annex
38. Marlton Square I
39. Marlton Square II
40. Mountain House-Pegs
41. Oak Shores II
42. Ocean Atlantic $2.75 MM
43. Ocean Atlantic $9.425 MM

44. Palm Harbor I
45. Shamrock Tower
46. SoCal Land Development
47. SVRB $2.325 MM
48. SVRB $4.5 MM
49. Tapia Ranch (Castaic I)
50. Ten-Ninety $4.15 MM
51. The Gardens $2.425 MM
52. The Gardens Timeshare

# Exhibit B

# Exhibit B

Exhibit "B" Loans

1. Brookmere
2. Hesperia
3. HFA Clearlake II
4. Lerin Hills
5. Marlton Square II
6. Ocean Atlantic $2.75 MM
7. SoCal Land Development