1 the direct lenders regarding this new communication, Compass once again expressed to the direct

2 lenders that "this is the best you can get." Based on this Proposal, Compass intended to take

3 almost one-third (1/3) of the original loan balance off the top for "earned fees."

4       95.    Compass's proposal included threats of negative impact if direct lenders did not

5 consent to the restructuring of the loans. Compass threatened that it would have to sell the

6 property at foreclosure, resulting in a recovery far less than the lenders' investments, with the

7 cost to be borne by the direct lenders, or that the borrower would be forced into bankruptcy

8 causing substantial delays. After more than 20 of the direct lenders elected not to agree to the

9 modification, Compass telephoned each dissenting investor, and aggressively campaigned to get

10 the lenders to change their votes by supplying more misleading information.

11       **(h)**   *The Harbor Georgetown Loan.*

12       96.    On information and belief, the Harbor Georgetown Borrower was attempting to

13 develop and remodel the property underlying the loan. Additionally, although in default, the

14 Harbor Georgetown Borrower was apparently receiving rents for the property from its large

15 tenants, Krogers supermarket and Rite-Aid, which could be used to pay off portions of the

16 Harbor Georgetown Loan. Compass and its managers (and Silar, as the true loan servicer),

17 however, failed to collect any type of payments from the Harbor Georgetown Borrower and

18 remit those payments to Plaintiff Harbor Georgetown Lenders, LLC ("Harbor Georgetown,

19 LLC") or other direct lenders.

20       97.    On information and belief, Compass and its managers have been unresponsive to

21 calls and other forms of communication from Plaintiff Harbor Georgetown, LLC and other direct

22 lenders about this situation and the status of the loan in general. Compass's and its managers'

23 failure to communicate with and respond to Harbor Georgetown Loan direct lenders violates

24 their fiduciary duties and obligations under the Loan Servicing Agreements.

25       **(i)**   *The La Hacienda Loan.*

26       98.    On information and belief, Compass and Silar agreed to have the borrower of the

27 La Hacienda loan wire loan payoff proceeds, portions of which were due and owing to Plaintiff

28 La Hacienda Lenders, LLC ("La Hacienda, LLC"), and other direct lenders, directly to the Silar

1   Account.  Silar kept these funds due and owing the Direct Lenders for a period of time, earning

2   interest on monies it did not own.  Compass, its managers, and Silar agreed that Silar would keep

3   the interest earned for their own benefit with the intent to deprive Plaintiff La Hacienda, LLC,

4   and other direct lenders, of these funds.

5          99.    Additionally, despite the payoff of the La Hacienda Loan, Compass and its

6   managers (and Silar, as the true loan servicer) have failed to provide the La Hacienda Loan direct

7   lenders, including Plaintiff La Hacienda, LLC, with an adequate accounting as required.

8          **(j)**    ***The Lerin Hills Loan.***

9          100.    On information and belief, the Lerin Hills Loan was secured by a second lien

10  position.  In August of 2006, USACM undertook to negotiate an early payout from the borrower

11  on this under-funded loan.  The borrower agreed to pay $9,552,824.38 (approximately 93% of

12  the original principal balance), and USACM, as servicer, agreed to waive any and all fees and

13  default interest.  The settlement was subject to approval of the Lerin Hills Loan direct lenders

14  and the bankruptcy court.  On December 12, 2006, the bankruptcy court granted authorization to

15  USACM to effectuate the payoff.  However, USACM never collected the payment, presumably

16  because its assets were auctioned and bought by Compass on December 7, 2006.  After Compass

17  took over the servicing of the loan, Piskun directed Compass to immediately renounced any

18  obligation or intention of accepting the agreed payoff, and instead unilaterally hiked the payoff

19  amount to $17,306,947.38, including $5 million in late fees, exit fees, and default interest.

20         101.    After many weeks without information from Compass and its managers, despite

21  numerous inquiries, a direct lender called the Lerin Hills Borrower's principal and learned for

22  the first time that although the borrower had been ready, willing, and able to pay the agreed

23  settlement amount, Compass had renounced the settlement approved by the bankruptcy court and

24  the Lerin Hills Loan direct lenders.  Although the borrower informed Compass and its managers

25  that there was no way he could pay $17.3 million, and that sabotaging the settlement would

26  doom his development project, Piskun, in violation of his fiduciary duties, told the borrower that

27  he did not care if the project "burned."

28

102.    Compass was well aware of, but asserted that it was not bound by, the agreed upon and court-approved settlement.  Compass also noted that the Lerin Hills Loan direct lenders stood to lose a significant amount of money unless the Lerin Hills Borrower acquiesced to Compass's demand for additional money.

103.    Following Compass's refusal to abide by the agreed to and court authorized settlement amount, Compass and its managers commenced foreclosure proceedings on April 9, 2007.

104.    Compass's notice of foreclosure set off a cascade of harmful events, all of which should have been foreseen by Compass.  First, as Compass was aware, the Lerin Hills Loan direct lenders had a junior lien on the property and an intercreditor agreement with Wachovia Bank not to commence foreclosure proceedings while the first lien was still outstanding.  Compass's noticing of foreclosure therefore triggered Wachovia's right to accelerate its own loan and to foreclose on the property, a proceeding which would assuredly all but wipe out any secured interest that the direct lenders had in the property.  Further, Compass's foreclosure posting apparently caused delayed government approvals, waning interest from builders, the first lien to be moved to Special Assets, and led to the delay of the project for an additional 12 months.  Compass's actions also apparently made it nearly impossible to refinance either the first or second lien on the property.

105.    Compass's self-serving declination of the $9.5 million payoff proposal was to the detriment of Plaintiff Lerin Hills Lenders, LLC and other direct lenders and a breach Compass's fiduciary duties and the Loan Servicing Agreements on multiple levels.  Further, due to Compass's actions, the collateral value of the project (and, therefore, the value of the Lerin Hills Loan) has been severely depressed.

**(k)    *The Marlton Square I Loan.***

106.    Compass sought permission from the Marlton Square I Loan direct lenders to negotiate a payout with the borrower that would require the direct lenders on the Marlton Square I Loan to give up 50 percent of their accrued interest while Compass received 100 percent of the default interest it claimed it was due.

107.   When Plaintiff Marlton Square I Lenders, LLC ("Marlton Square I, LLC") and other direct lenders rejected this proposal, Compass then proposed to give the lenders another twenty-five percent of the accrued interest while it continued receiving the lion's share of the payout.  This was in direct conflict with the best interests of Plaintiff Marlton Square I, LLC and other direct lenders and in violation of Compass's fiduciary duties and obligations under the Loan Servicing Agreement.

**(I)**   *The Shamrock Tower Loan.*

108.   On information and belief, Compass negotiated an agreement whereby a third party would purchase the Shamrock Tower property in a foreclosure sale for the entire value of the loan (principal, accrued interest, default interest, late fees, and other fees).  However, Compass did not share this information with Plaintiff Shamrock Tower Lenders, LLC ("Shamrock Tower, LLC") or other direct lenders.

109.   Instead, on or about March 2007, Compass and its managers knowingly and intentionally sent a fraudulent and misleading letter through the United States mail to members of Plaintiff Shamrock Tower, LLC and other direct lenders in the Shamrock Tower Loan which sought their approval to accept a "third party" buyer's offer of 88% of their principal investment and no accrued interest.  This letter was misleading, deceptive, and falsely represented the terms of the agreement with the third party buyer, who, upon information and belief, was willing to pay 100% of the direct lenders' principal investment and all accrued interest, plus certain other fees.  Compass and its managers (and Silar, as the true loan servicer) were fully aware of the misleading nature of this letter and intended the misleading information to induce members of Plaintiff Shamrock Tower, LLC and other direct lenders to accept the 88% offer.  Several members of Plaintiff Shamrock Tower, LLC and other direct lenders accepted the offer to their detriment.

110.   Silar aided this scheme by providing funds to Compass to remove a tax lien that would have prevented Compass from initiating foreclosure, thereby preventing the subsequent foreclosure sale and enabling the third party purchase of the property for full value, as negotiated by and benefiting Compass.

111.    Additionally, Compass and its managers (and Silar, as the true loan servicer) did not notify Plaintiff Shamrock Tower, LLC, or other direct lenders, before proceeding to foreclosure.   On information and belief, several members of Plaintiff Shamrock Tower, LLC, and other direct lenders, contacted Compass and its managers and requested information on the status of the loan and why they were not notified about the foreclosure (about which they learned second-hand).   Compass and its managers responded to at least one direct lender that it did not need to notify investors because they had approval from more than 50% of beneficial interest in the Shamrock Tower Loan.   Compass, however, refused to provide proof of this 50% approval.

112.    Compass and its managers (and Silar, as the true loan servicer),  in violation of their fiduciary duties and obligations under the Loan Servicing Agreements, have failed to provide timely information to Plaintiff Shamrock Tower, LLC, or other direct lenders, since the foreclosure sale on August 7, 2007.

**(m)    *The Standard Property Loan.***

113.    Members of Plaintiff Standard Property Holdings, LLC ("Standard Property, LLC") include individual direct lenders (see endnote 1 for the list of members)[i] who have assigned their interests to Standard Property, LLC.   Plaintiff Mojave Canyon, Inc. also invested as a direct lender in the Standard Property Loan.

114.    Members of Standard Property, LLC, Plaintiff Mojave Canyon, Inc., and other direct lenders, through USACM, made a direct loan to Standard Property Development, LLC (the "Standard Property Borrower").   The loan is commonly known as the "Standard Property Loan."   In connection with the Standard Property Loan, certain direct lenders, including members of Plaintiff Standard Property, LLC, executed powers of attorney, pursuant to which they appointed USACM as their servicer for the Standard Property Loan.   As of March 15, 2007, the total principal balance of the Standard Property Loan was $9,640,000 ("Standard Property Principal Balance").

115.    On February 27, 2006, the Standard Property Borrower executed a Promissory Note Secured by Mortgage in favor of certain Plaintiffs and other direct lenders (the "Standard Property Note"), which provides for an interest rate of 12.5% per annum.   Pursuant to Section 4

1   of the Standard Property Note all payments on the Note were to first be applied toward the

2   payment of accrued interest.

3    116.  Compass and its managers were aware that the Standard Property Borrower was

4   able to and ready to payoff all principal in the Standard Property Loan, but was concerned that a

5   payoff would occur prior to Compass taking over the servicing rights from USACM on February

6   16, 2007. Therefore, in furtherance of the conspiracy to defraud direct lenders and in order to

7   gain a financial advantage for Compass and Silar on this loan, on February 2, 2007, Piskun sent

8   the Standard Property Borrower an email stating that Compass would, in effect, pay the

9   Borrower off by taking care of the Borrower's legal expenses if the Borrower would not contact

10  the direct lenders about settling the loan and would allow Compass to send out the settlement

11  proposal letter *after* it took over as loan servicer.

12   117.  On or about February 2, 2007, Compass, in furtherance of the conspiracy to

13  defraud direct lenders, knowingly and intentionally sent a misleading letter through the United

14  States mail to members of Plaintiff Standard Property, LLC, Plaintiff Mojave Canyon, Inc., and

15  all other direct lenders in the Standard Property Loan which sought their approval to accept the

16  Standard Property Borrower's payoff offer of 90% of their principal investment in full

17  satisfaction of the Standard Property Loan. This letter was misleading, deceptive, and falsely

18  represented the terms of the agreement with the Standard Property Borrower, who, upon

19  information and belief, was willing to pay 100% of the direct lenders' principal investment.

20  Compass, its managers, and Silar were fully aware of the misleading nature of this letter and

21  intended the misleading information to induce members of Plaintiff Standard Property, LLC,

22  Plaintiff Mojave Canyon, Inc., and other direct lenders to approve the 90% payoff. In response

23  to the false and inequitable terms proposed in Compass's letter, many of the Standard Property

24  direct lenders rejected the payoff proposal and sent a letter to Compass demanding that it accept

25  the Standard Property Borrower's offer to pay of 100% of their principal investment. The direct

26  lenders' letter also informed Compass that they waived all other fees.

27   118.  On or about March 7, 2007, Compass knowingly and intentionally and in

28  furtherance of the conspiracy to defraud direct lenders, sent a false and fraudulent letter through

1   the United States mail to certain members of Plaintiff Standard Property, LLC, Plaintiff Mojave

2   Canyon, Inc., and all other direct lenders in the Standard Property Loan, which sought the

3   approval of 100% of the direct lenders in the Standard Property Loan to an agreement Compass

4   reached with the Standard Property Borrower to pay off the Standard Property Loan.  According

5   to that letter, the terms of the payoff included:

6         a.    The Direct lenders in the loan receive 100% of their unpaid Standard

7             Property Principal Balance;

8         b.    The Direct lenders do not receive any accrued interest; and

9         c.    Compass shall release the security interest against Standard Property's real

10            property.

11      119.  Compass, its managers, and Silar were fully aware of the false, fraudulent, and

12   misleading nature of this letter.  The letter was false, fraudulent, and misleading because

13   Compass, its managers, and Silar did not tell the Standard Property Loan direct lenders about

14   their continuing plan to take additional money from the Standard Property Borrower in a secret

15   "side deal."  Compass, its managers, and Silar knowingly made this side deal in order to avoid

16   paying this money to Plaintiffs and other direct lenders, which was due and owing to them

17   pursuant to the requirement in Section 4 of the Standard Property Note that all payment are to

18   first be applied toward the payment of accrued interest.  This letter was also false, fraudulent,

19   and misleading because Compass, its managers, and Silar did not tell the Standard Property Loan

20   direct lenders that, as part of its side deal, Compass, its managers, and Silar had agreed,

21   collaborated, and conspired to have the Standard Property Borrrower wire the additional, non-

22   disclosed money directly to Silar.   Silar knowingly and intentionally participated in this

23   fraudulent scheme (as part of the conspiracy to defraud direct lenders) in order to avoid Standard

24   Property, LLC's, Plaintiff Mojave Canyon, Inc.'s,  and other direct lenders' rights to these funds

25   and to collect money from the Standard Property Loan behind direct lenders' backs.  Compass,

26   its managers, and Silar knowingly hid this information from members of Standard Property,

27   LLC, Plaintiff Mojave Canyon, Inc., and other direct lenders in order to induce them to agree to

28   the payoff.

120.    In reliance on Compass's misrepresentations in the March 7, 2007 letter, members of Plaintiff Standard Property, LLC and other direct lenders constituting 100% of the beneficial interest in the Standard Property Loan approved the payoff in accordance with the specific terms of the March 7, 2007 letter, *i.e.,* the letter that did not disclose the side payment.  Members of Plaintiff Standard Property, LLC and other direct lenders did not agree to charging the Standard Property Borrower any other fees, including default fees, and did not know that Compass was planning on taking and Silar was planning on collecting these monies through a separate side deal with the Standard Property Borrower.

121.    On or about March 13, 2007, USACM, Compass knowingly issued a Payoff Statement letter to the Standard Property Borrower (the "Standard Property Payoff Statement"), which required the Standard Property Borrower to make a payoff, as of March 15, 2007, in the amount of $10,499,068.15 with a per diem interest accrual of $2,205.74 for every day after March 15, 2007.  The $10,499,068.15 payoff consisted of:

|  |  |  |
|---|---|---|
| a. | Standard Property Principal Balance: | $9,640,000.00 |
| b. | Late Fees: | $47,394.43 |
| c. | Other Fees: | $267,164.11 |
| d. | Default Interest | $544,509.60 |

122.    The Standard Property Payoff Statement revealed that Compass had entered into a secret agreement with the Standard Property Borrower, undisclosed to the Standard Property Loan direct lenders, whereby Compass (and ultimately Silar) received late fees, other fees and default interest from the Standard Property Borrower, without collecting or distributing accrued regular contractual interest due and owing to the direct lenders.  This Payoff Statement also revealed that Compass, its managers, and Silar had agreed and conspired to direct the Standard Property Borrower to wire $859,068.14 directly to Silar.  The Payoff Statement showed the true nature of Compass's false, fraudulent, and misleading letter dated March 7, 2007.

123.    On or about March 15, 2007, the Standard Property Borrower paid off the Standard Property Loan pursuant to the terms of the Standard Property Payoff Statement.  The Standard Property Borrower complied with Compass's and Silar's direction and wired

1   $859,068.14 directly to Silar.  This wire transfer is fraudulent because the funds should have

2   been used to pay members of Plaintiff Standard Property, LLC, Plaintiff Mojave Canyon, Inc.,

3   and other direct lenders accrued interest pursuant to the loan documents and Loan Servicing

4   Agreements.  Compass did not pay the direct lenders any of the accrued interest they were owed,

5   but took the available funds for itself (and ultimately for Silar) as so-called default interest, late

6   fees and "other fees" totaling $859,368.14.

7           **(n)**   *The 60th Street Venture Loan.*

8           124.    In May 2007, the first lien holder on the 60th Street Venture property, Bank of

9   America, notified a 60th Street Venture Loan direct lender that it was Bank of America's

10  intention to foreclose on the property.  Because the 60th Street Venture Loan was in a second

11  lien position, foreclosure would effectively extinguish the loan and any direct lender's

12  investments.  Bank of America subsequently brought suit against all subordinate lien holders to

13  place itself in a position to foreclose.  On information and belief, Compass and its managers (and

14  Silar, as the true loan servicer) had full knowledge of the pending foreclosure and legal action,

15  but did not inform Plaintiff 60th Street Venture Lenders, LLC ("60th Street Venture, LLC") or

16  other direct lenders.

17          125.    Due to Compass's failure to respond to the 60th Street Venture Loan direct lender

18  requests, some direct lenders raised a legal defense fund of approximately $5,000 which they

19  used to acquire legal advice and representation.

20          126.    Although the Bank of America lien was bought out by Silver Point Capital, Silver

21  Point continued the litigation.  On June 6, 2007, a 60th Street Ventures Loan direct lender

22  received an email from a representative at Silver Point stating that it was his belief that Chicago

23  Title has been unable to secure any commitment from Compass to release the second mortgage

24  on ten units in the 60th Street Ventures Loan.  The Silver Point representative explained that

25  without such release, the sales of those ten units could not close, and therefore, the continuation

26  and completion of the already filed foreclosure action was necessary.  Once again, the direct

27  lender attempted to contact Compass and its managers.  Compass, in breach of its fiduciary

28  duties, never responded.

1        **(o)**    *The BarUSA Loan, Bay Pompano Loan, Castaic II Loan, Castaic III Loan,*
                                *Copper Sage Loan, Fiesta Murietta Loan, Palm Harbor I Loan, and Tapia*
2                                    *Ranch Loan.*

3       127.    In furtherance of their conspiracy to defraud the direct lenders, on information

4  and belief, Compass, its managers (Blatt and Piskun), and Silar conspired and agreed to have the

5  borrowers of the BarUSA Loan, Bay Pompano Loan, Castaic II Loan, Castaic III Loan, Copper

6  Sage Loan, Fiesta Murietta Loan, Palm Harbor I Loan, and Tapia Ranch Loan wire loan payoff

7  proceeds, portions of which are due and owing to Plaintiff BarUSA Lenders, LLC, Plaintiff Bay

8  Pompano Lenders, LLC, Plaintiff Castaic Partners II Lenders, LLC, Plaintiff Castaic Partners III

9  Lenders, LLC, Plaintiff Copper Sage II Lenders, LLC, Fiesta Murietta Lenders, LLC, Palm

10  Harbor I Lenders, LLC, and Tapia Ranch Lenders, LLC and other direct lenders, directly to the

11  Silar Account when these proceeds are paid out.  This Silar controlled account is an interest

12  bearing account.  This agreement was reached with the intent and plan that Silar will keep these

13  funds due and owing the Plaintiffs and other direct lenders for a period of time, enabling Silar to

14  earn interest on monies it does not own.  Compass, its managers (Blatt and Piskun), and Silar

15  have, upon information and belief, agreed that Silar will keep the interest earned for its own

16  benefit and with the intent to deprive Plaintiffs and other direct lenders of these funds.

17  **F.**      **Other Wrongful Acts of Defendants.**

18       128.    In addition to the many breaches of contract, fraud, breaches of fiduciary duty,

19  and violations of Nevada law committed by Compass, Silar, Blatt, and Piskun, some examples of

20  which are described above, upon information and belief, Compass and its managers have also

21  contacted one or more third parties, with whom many of the Plaintiffs have been engaged in

22  negotiations for prospective financing of Plaintiffs' legal and operating expenses in connection

23  with this matter.  Compass's and its managers' actions were for the sole and wrongful purpose of

24  interfering with such negotiations and damaging Plaintiffs' ability to secure such financing.

25  These communications are wholly unjustified, malicious, and can serve no legitimate purpose,

26  but are, in fact, an attempt to harm Plaintiffs.

27

28

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief Set Forth by All Plaintiffs Against Compass and Silar)

129.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 128 as though fully set forth herein.

130.    An actual, ripe, and justifiable controversy has arisen and now exists between Plaintiffs and Compass, as purported loan servicer, and between Plaintiffs and Silar, as actual loan servicer, as follows:

  a.    Plaintiffs contend that Silar is their actual loan servicer pursuant to Compass's sale, transfer, and conveyance of all rights title and interests in the Purchased Assets to Silar and that Compass is the **sub**-servicer of the loans.  Compass and Silar, however, contend that Compass is the ultimate servicer of the loans and that Silar is merely Compass's financier.

  b.    Plaintiffs contend, pursuant to the Promissory Notes executed by the respective borrowers in favor of Plaintiffs and other direct lenders, that payments made by borrowers are first to be applied to accrued non-default rate interest and then to principal, and then to post-bankruptcy default interest and late fees, and that this priority may only be altered by the direct lenders in each loan.  Compass, however, contends that all payments by borrowers are first applied to pay Compass default interest, late fees, and other fees.

  c.    Plaintiffs contend, pursuant to the Plan, that Compass is not entitled to default interest, late fees, or loan servicing fees that accrued prior to the sale of the Purchased Assets.  Compass, however, contends that it is entitled to default interest, late fees, and servicing fees, regardless of when accrued.

  d.    Plaintiffs contend, based upon Compass's breaches of Loan Servicing Agreements, that Compass is not entitled to any compensation provided

1    for in section 5 of the Loan Servicing Agreements.  Compass contends,

2    however, that it has an absolute right to collect all fees described in section

3    5, regardless of when accrued, and irrespective of any conduct by

4    Compass in breach of the Loan Servicing Agreements.

5  e.    Plaintiffs contend that a lender in a loan secured by real property has an

6    absolute right to modify the terms of their Promissory Note and Deed of

7    Trust to maximize their recovery, irrespective of the rights of any third-

8    party loan servicer.  Compass contends, however, that Plaintiffs have no

9    right to modify the terms of the Promissory Notes and Deeds of Trust with

10   the third-party borrower.

11  f.    Plaintiffs contend that Compass and Silar must comply with Nevada laws

12   pertaining to loan servicing.  Compass and Silar, however, contend that

13   they are not required to comply with Nevada laws pertaining to loan

14   servicing.

15  g.    Plaintiffs contend, pursuant to NEV. ADMIN. CODE § 645A.050, that

16   Compass and Silar must remit payment of payoff proceeds to Plaintiffs

17   within 30 days following the end of the month in which payment from the

18   Borrower was collected.  Compass and Silar, however, as evidenced by

19   the handling of the Clear Creek Plantation Loan and other loans, do not

20   agree and do not believe they need to comply with § 645A.050.

21  h.    Plaintiffs contend that Compass and Silar, through their joint efforts, have

22   violated NEV. REV. STAT. § 645B.175(4) by not depositing all money paid

23   in full or in partial payment of a loan secured by a lien on real property

24   into an account appropriately named to indicated that it does not belong to

25   Compass and controlled by a person who is independent of the parties,

26   Compass and Silar maintain, however, that they are under no obligation to

27   abide by the requirements of § 645B.175(4).

28

i.    Plaintiffs contend that Compass and Silar are not authorized to retain interest earned on monies due and owing Plaintiffs and other direct lenders. Compass and Silar, however, maintain that they are entitled to keep this interest even though it was earned on money that did not belong to either Compass or Silar.

j.    Plaintiffs contend, pursuant to NEV. REV. STAT. § 645B.185, that each direct lender was required to receive from Compass and Silar a Mortgage Investment Disclosure Form, approved by the NMLD. Plaintiffs have never received or signed a Mortgage Investment Disclosure Form, therefore, Plaintiffs have not received the required disclosures from Compass. Upon information and belief, Compass and Silar contend they are under no obligation to abide by the requirements of § 645B.185.

k.    Plaintiffs contend that Compass and Silar have violated NEV. REV. STAT. § 645B.260 by failing to make monthly reports to the NMLD Commissioner and to Plaintiffs regarding loan delinquencies as required under the statute. Upon information and belief, Compass and Silar contend that they are not required to comply with § 645B.260 and provide required monthly reports.

l.    Plaintiffs contend, pursuant to NEV. REV. STAT. § 645B.330, that as a result of the maturity of various loans in the USACM portfolio and the fact that a single power of attorney has improperly been used as a basis to act for more than one loan, Compass no longer has a valid power of attorney to act on behalf of Plaintiffs on such loans. Compass, however, maintains it still has the power and authority to act on Plaintiffs' behalf in serving their loans and continues to purport to act on Plaintiffs' behalf.

m.    Plaintiffs contend, pursuant to NEV. ADMIN. CODE § 645B.073, that Plaintiffs and other direct lenders have an absolute right to replace Compass and/or Silar as loan servicer in any loan, provided 51% of the beneficial interests of the Loan have made the decision to do so. Plaintiffs

further contend they terminated Compass as servicer pursuant to this statute and/or the Loan Servicing Agreements in May 2007. Compass contends, however, that it cannot be terminated as loan servicer based solely on NEV. ADMIN. CODE § 645B.073.

n.  Plaintiffs contend that they are entitled to terminate specific Loan Servicing Agreements with Compass by virtue of Compass's actions and/or inactions, which breached the Loan Servicing Agreements. Plaintiffs are informed and believe, however, that Compass contends Plaintiffs are not entitled to terminate the Loan Servicing Agreements.

o.  In the alternative, Plaintiffs contend that the Loan Servicing Agreements are void and/or voidable under Nevada law and/or general principles of contract law. Compass, however, contends the Loan Servicing Agreements are enforceable across multiple loans.

p.  Upon information and belief, Plaintiffs contend that Compass and/or Silar may have violated other sections of the Nevada Revised Statutes and Administrative Code, which discovery may reveal.

131.  A determination of the disputes set forth in paragraph 130 above is necessary and appropriate at this time in order to resolve the adverse interests of Plaintiffs, on the one hand, and Compass and Silar, on the other hand.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract Set Forth By All Plaintiffs Against Compass and Silar)

132.  Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 131 as though fully set forth herein.

133.  Plaintiffs have performed all of their obligations under the Loan Servicing Agreements, as well as all conditions precedent to the performance of Compass's and Silar's obligations thereunder.

134.  Compass, as purported loan servicer, and Silar, as actual loan servicer, have breached and continue to breach the Loan Servicing Agreements by:

a. failing to produce, keep, and maintain appropriate accounting records on each loan, as required by section 2(b) of the Loan Servicing Agreements;

b. failing to provide the direct lenders with regular statements setting forth the status of each loan, as required by section 2(d) of the Loan Servicing Agreements;

c. failing to pay accrued interest on loans to Plaintiffs as contractually required as and when collected from the borrowers;

d. failing to communicate certain offers made by borrowers to repay their loans to the direct lenders;

e. negotiating with borrowers on terms favorable to their own interests, and to the substantial detriment of Plaintiffs;

f. misrepresenting the status of loans to Plaintiffs;

g. taking funds from borrowers that were available to pay accrued interest on loans to Plaintiffs, to pay to themselves default interest, late fees and other fees instead;

h. applying principal and interest payments made by borrowers to pay themselves so-called "loan origination" fees;

i. striking secret deals with borrowers, pursuant to which Compass and/or Silar have received undisclosed payments from borrowers, when Plaintiffs and other direct lenders have not first received payment in face of principal and accrued regular interest from borrowers;

j. failing to diligently collect all payments due, as required by section 2(c)(i) of the Loan Servicing Agreements;

k. failing to promptly pay Plaintiffs principal and accrued regular interest, as required by section 2(c)(i) of the Loan Servicing Agreements;

l. failing to use their business judgment to fully protect the interest of the direct lenders, as required by section 2(c)(ii) of the Loan Servicing Agreements;

1    m.  failing to protect the direct lenders' interests, as required by Section 11 of

2       the Loan Servicing Agreements;

3    n.  failing to insure ad valorem property taxes are paid current on property

4       securing the respective loans; and

5    o.  failing to comply with Nevada law as set forth herein.

6  135.  Compass and Silar have also breached, and continue to breach, the Loan

7 Servicing Agreements, which are expressly governed by Nevada law, because neither Compass

8 nor Silar is licensed as a mortgage broker/agent in Nevada in fact and Compass has been ordered

9 by the State of Nevada to cease and desist the performance of its obligations under the Loan

10 Servicing Agreements.   Therefore, Compass and Silar are unable lawfully to perform their

11 required services under the Loan Servicing Agreements, which inability and failure are also

12 breaches of the Agreements.

13  136.  As a result of Compass's and Silar's breaches of the Loan Servicing Agreements

14 enumerated above, each of the Plaintiffs seeks damages for the breach(es) of the specific Loan

15 Servicing Agreement(s) applicable to each Plaintiff with respect to such Plaintiff's loan in an

16 amount to be proven at trial.

17         **THIRD CLAIM FOR RELIEF**

18  **(Breach of Fiduciary Duty Set Forth by All Plaintiffs Against All Defendants)**

19  137.  Plaintiffs reallege and incorporate by reference each and every allegation

20 contained in paragraphs 1 through 136 as though fully set forth herein.

21  138.  Compass, as purported loan servicer, its managers (Blatt and Piskun) and Silar, as

22 actual loan servicer, owe a fiduciary duty to Plaintiffs under the Loan Servicing Agreements.

23  139.  Compass, Blatt, Piskun, and Silar breached their fiduciary duties to Plaintiffs by:

24    a.  failing to produce, keep, and maintain appropriate accounting records on

25       each loan;

26    b.  failing to provide the direct lenders with regular statements setting forth

27       the status of each loan;

28

1    c.   failing to pay accrued interest on loans to Plaintiffs as contractually

2         required as and when collected from the borrowers;

3    d.   failing to communicate certain offers made by borrowers to repay their

4         loans to the direct lenders;

5    e.   negotiating with borrowers on terms favorable to their own interests, and

6         to the substantial detriment of Plaintiffs;

7    f.   misrepresenting the status of loans to Plaintiffs;

8    g.   taking funds from borrowers that were available to pay accrued interest on

9         loans to Plaintiffs, to pay to themselves default interest, late fees and other

10        fees instead;

11   h.   applying principal and interest payments made by borrowers to pay

12        themselves so-called "loan origination" fees;

13   i.   striking secret deals with borrowers, pursuant to which Compass and/or

14        Silar have received undisclosed payments from borrowers, when Plaintiffs

15        and other direct lenders have not first received payment in face of

16        principal and accrued regular interest from borrowers;

17   j.   failing to diligently collect all payments due;

18   k.   failing to promptly pay Plaintiffs principal and accrued regular interest;

19   l.   failing to use their business judgment to fully protect the interest of the

20        direct lenders;

21   m.   failing to protect the direct lenders' interests;

22   n.   failing to insure ad valorem property taxes are paid current on property

23        securing the respective loans;

24   o.   claiming entitlement to pre-bankruptcy interest and fees which it did not

25        receive from USACM or FTDF; and

26   p.   failing to comply with Nevada law as set forth herein.

27   140.   As a result of Compass, its managers (Blatt and Piskun), and Silar breaching their

28   fiduciary duties to Plaintiffs, each of the Plaintiffs seek redress in connection with the specific

breach(es) of fiduciary duty applicable to each Plaintiff with respect to such Plaintiff's loan in an amount to be proven at trial in this matter.

### FOURTH CLAIM FOR RELIEF

**(Breach of the Implied Covenants of Good Faith and Fair Dealing Set Forth by All Plaintiffs Against Compass and Silar)**

141.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 140 as though fully set forth herein.

142.    Compass, as purported loan servicer, and Silar, as actual loan servicer, owed Plaintiffs a duty of good faith and fair dealing arising from the Loan Servicing Agreement.

143.    Plaintiffs imposed a special element of reliance on Compass and Silar as their loan servicer.  Compass and Silar stand in a superior and entrusted position, particularly when negotiating the payoff of the loans and in performing all other services under the Loan Servicing Agreements.

144.    Compass and Silar breached the duty of good faith and fair dealing they owed to Plaintiffs by:

a.    failing to produce, keep, and maintain appropriate accounting records on each loan;

b.    failing to provide the direct lenders with regular statements setting forth the status of each loan;

c.    failing to pay accrued interest on loans to Plaintiffs as contractually required as and when collected from the borrowers;

d.    failing to communicate certain offers made by borrowers to repay their loans to the direct lenders;

e.    negotiating with borrowers on terms favorable to their own interests, and to the substantial detriment of Plaintiffs;

f.    misrepresenting the status of loans to Plaintiffs;

g.  taking funds from borrowers that were available to pay accrued interest on loans to Plaintiffs, to pay to themselves default interest, late fees and other fees instead;

h.  applying principal and interest payments made by borrowers to pay themselves so-called "loan origination" fees;

i.  striking secret deals with borrowers, pursuant to which Compass and/or Silar have received undisclosed payments from borrowers, when Plaintiffs and other direct lenders have not first received payment in face of principal and accrued regular interest from borrowers;

j.  failing to diligently collect all payments due;

k.  failing to promptly pay Plaintiffs principal and accrued regular interest;

l.  failing to use their business judgment to fully protect the interest of the direct lenders;

m.  failing to protect the direct lenders' interests;

n.  failing to insure ad valorem property taxes are paid current on property securing the respective loans;

o.  claiming entitlement to pre-bankruptcy interest and fees which it did not receive from USACM or FTDF; and

p.  failing to comply with Nevada law as set forth herein.

145.  As a result of Compass's and Silar's breaches of the implied covenants of good faith and fair dealing, each of the Plaintiffs seek redress in connection with the specific breach(es) applicable to each Plaintiff with respect to such Plaintiff's loan in an amount to be proven at trial as a result of Compass and Silar breaching the duty of good faith and fair dealing.

## FIFTH CLAIM FOR RELIEF

**(Constructive Fraud Set Forth by Cabernet Highlands Lenders, LLC, Clear Creek Plantation Lenders, LLC, The Gardens Timeshare Lenders, LLC, La Hacienda Lenders, LLC, Lerin Hills Lenders, LLC, Shamrock Tower Lenders, LLC, Standard Property Holdings Lenders, LLC, Mojave Canyon Inc., and Robert J. Kehl & Ruth Ann Kehl)**

146.    Plaintiffs reallege and incorporates by reference each and every allegation contained in paragraphs 1 through 145 as though fully set forth herein.

147.    Compass, as purported loan servicer, its managers (Blatt and Piskun), and Silar, as actual loan servicer, owed Plaintiffs legal and equitable duties arising from their fiduciary and confidential relationship.

148.    Compass, its managers (Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer Compass) breached their duties to Plaintiffs by misrepresenting the actual negotiated terms of loan payoffs and by misrepresenting their entitlement to receive a calculated portion thereof.

149.    Compass, its managers (Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer Compass) breached their duties to Plaintiffs by concealing or misrepresenting material terms of the loan payoffs from Plaintiffs .

150.    Compass, its managers (Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer Compass) breached its duties to Plaintiffs by misrepresenting the terms and/or amounts of payoff offers made by borrowers and third party buyers.

151.    Compass, its managers (Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer Compass) breached their duties to Plaintiffs by concealing or misrepresenting the terms and/or amounts of payoff offers made by borrowers and third party buyers.

152.    Compass and Silar breached their duties to Plaintiffs by concealing the fact that they have earned and kept for themselves interest on monies due and owing to Plaintiffs while such monies are in the possession of Compass and Silar.

153.    Plaintiffs have suffered damages in an amount to be proven at trial as a result of the constructive fraud by Compass, its managers, and Silar as set forth herein.

## SIXTH CLAIM FOR RELIEF

**(Fraudulent Misrepresentation Set Forth by Clear Creek Plantation Lenders, LLC, Fox Hills 216 Lenders, LLC, Shamrock Tower Lenders, LLC, Standard Property Holdings Lenders, LLC, Mojave Canyon Inc., Robert A. Kehl & Tina M. Kehl, Robert J. Kehl & Ruth Ann Kehl, and Kevin McKee Against All Defendants)**

154.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 153 as though fully set forth herein.

155.    Compass, as purported loan servicer, its managers (Blatt and Piskun), and Silar, as actual loan servicer, have made material false representations to Plaintiffs and/or have failed to disclose material facts as set forth above in connection with proposed resolutions of the Standard Property Loan, the Clear Creek Plantation Loan, the Shamrock Tower Loan, and the Fox Hills 216 Loan.

156.    Compass, its managers (Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer Compass) knew or believed that their representations regarding the negotiated terms of settlement proposals and third party buyout offers referenced above were false.

157.    Compass, its managers (Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer Compass) intended to induce Plaintiffs to act upon their misrepresentations by approving the settlement proposals or accepting the third party buyout offers.

158.    Plaintiffs justifiably relied on these misrepresentations and/or nondisclosures and, in some cases, approved settlement proposals or buyout offers, such as the Standard Property Loan settlement proposal and Shamrock Tower Loan buyout offer, in reliance upon such misrepresentations and/or nondisclosures.

159.    As a result of Compass's, its managers' (Blatt and Piskun), and Silar's fraudulent misrepresentations and/or nondisclosures, Plaintiffs have suffered damages in an amount to be proven at trial.

1

### SEVENTH CLAIM FOR RELIEF

2

**(Conversion Set Forth by Cabernet Highlands Lenders, LLC, Clear Creek Plantation Lenders, LLC, La Hacienda Lenders, LLC, Standard Property Holdings Lenders, LLC, Mojave Canyon Inc., Robert J. Kehl & Ruth Ann Kehl)**

3

4

160.　Plaintiffs reallege and incorporate by reference each and every allegation

5

contained in paragraphs 1 through 159 as though fully set forth herein.

6

161.　Compass and Silar have wrongfully and knowingly exerted dominion and control

7

over loan proceeds which belong to Plaintiffs and other direct lenders, including, but not limited

8

to the proceeds from borrower payments involving the Standard Property Loan, Clear Creek

9

Plantation Loan, La Hacienda Loan, Cabernet Highlands LLC Loan.

10

162.　For example, Compass and Silar agreed to have the borrowers of these and other

11

loans wire payoff proceeds, portions of which were due and owing to Plaintiffs and other direct

12

lenders, directly to the Silar Account.  Silar kept these funds due and owing Plaintiffs, and other

13

direct lenders, for substantial periods of time, earning interest on monies it did not own.  On

14

more than one occasion, Silar transferred such funds to the Compass-controlled Maximizer

15

Account which Silar knew also earned interest.  Compass retained these funds in the Maximizer

16

Account for a period of time, and then transferred monies due and owing Plaintiffs and other

17

direct lenders (sans interest earned) to the Disbursement Account.  Compass then remitted

18

payment to Plaintiffs and other direct lenders from the Disbursement Account.  Both Compass

19

and Silar kept the interest earned on the monies due and owing Plaintiffs and other direct lenders

20

for their own benefit with the intent to deprive Plaintiffs of these funds all without the knowledge

21

or consent of the adversely affected Plaintiffs.

22

163.　Compass's and Silar's taking of Plaintiffs' loan proceeds and interest earned on

23

money belonging to Plaintiffs is inconsistent with, and in derogation, exclusion and defiance of,

24

Plaintiffs' right, title and interest in those proceeds and earned interest.

25

164.　As a result of Compass's and Silar's conversion of Plaintiffs loan proceeds and

26

interest earned, Plaintiffs have suffered damages in an amount to be proven at trial.

27

28

## EIGHTH CLAIM FOR RELIEF

**(Civil Conspiracy Set Forth by BarUSA Lenders, LLC, Bay Pompano Lenders, LLC, Cabernet Highlands Lenders, LLC, Castaic Partners II Lenders, LLC, Castaic Partners III Lenders, LLC, Clear Creek Plantation Lenders, LLC, Copper Sage II Lenders, LLC, Fiesta Murrieta Lenders, LLC, La Hacienda Lenders, LLC, Palm Harbor One Lenders, LLC, Shamrock Towers Lenders, LLC, Standard Property Holdings Lenders, LLC, Tapia Ranch Lenders, LLC, Charles B. Anderson Trust, Rita O. Anderson Trust, Mojave Canyon Inc., Warren Hoffman Family Investments, LP, Patrick J. Anglin, Judy Bonnet, Christina M. Kehl, Daniel J. Kehl, Robert J. Kehl & Ruth Ann Kehl, Robert A. Kehl & Tina M. Kehl, Kevin Kehl, Kevin Kehl as Guardian of Andrew Kehl, Kevin Kehl as Guardian of Susan Kehl, Krystina L. Kehl, and Cynthia Winter Against All Defendants)**

165.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 164 as though fully set forth herein.

166.   Upon information and belief, Silar had knowledge of and participated in the formation of Compass's business plan and objective to maximize loan fees, despite any harm to Plaintiffs, when it financed Compass's purchase of the USACM assets and rights (which were subsequently sold to Silar).

167.   Compass, its managers (Blatt and Piskun), and Silar had knowledge of Plaintiffs' rights to loan proceeds paid by borrowers per their obligations under the Promissory Notes when default interest, late fees, and other fees were charged to lenders and when they directed the loan proceeds to themselves and away from Plaintiffs.

168.   Additionally, Compass, its managers (Blatt and Piskun), and Silar had knowledge of and agreed to have borrowers of certain loans wire payoff proceeds, portions of which were due and owing to certain Plaintiffs and other direct lenders, directly to the Silar Account.  At times, Silar would transfer these funds to the Compass-controlled Maximizer Account which Silar knew also earned interest.  Both Compass and Silar kept the interest earned on the monies due and owing Plaintiffs, and other direct lenders, with the intent to deprive them of these funds.

169.   Compass, through its managers (Blatt and Piskun), and together with Silar, worked in concert and with the intent to deprive Plaintiffs of proceeds from certain loan payoffs, as well as to deprive Plaintiffs of other loan payments and interest earned, contrary to the rights of Plaintiffs.

170.     Blatt and Piskun, the principals and beneficiaries of Compass, formed and operate Compass, facilitated by the financing provided by Silar, for the purpose of conducting activities prohibited by Nevada law and detrimental to Plaintiffs.

171.     Compass, Piskun, Blatt, and Silar, by acting in concert, knowingly intended to accomplish Compass's business plan, including unlawful objectives (as detailed above and incorporated herein), for the purpose of benefiting themselves, individually and collectively, and with the knowledge of, and disregard for, the fact that they were harming Plaintiffs.

172.     Plaintiffs have suffered damages, in an amount to be proven at trial, resulting from the concerted acts of Compass, Blatt, Piskun, and Silar.

## REQUEST FOR RELIEF

### (Constructive Trust Requested by All Plaintiffs Against Compass and Silar)

173.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 172 as though fully set forth herein.

174.     Compass, as purported loan servicer, and Silar, as actual loan servicer, owes fiduciary and other duties constituting a confidential relationship with Plaintiffs.  Additionally, Silar has knowledge of Compass's heightened relationship with Plaintiffs and, by obtaining, controlling, and retaining loan proceeds due and owing to Plaintiffs, Silar has placed itself in a position of trust and confidence with Plaintiffs.

175.     Compass and Silar have inequitably taken, retained, and/or controlled loan proceeds belonging to Plaintiffs.  These actions are against Plaintiffs' rights.

176.     Plaintiffs have suffered damages resulting from Compass and Silar improperly taking, retaining, and controlling loan proceeds belonging to Plaintiffs.

177.     To the extent that Compass and Silar have received loan proceeds or other funds rightfully belonging to Plaintiffs, their retention of the loan proceeds would be inequitable and the imposition of a constructive trust is essential to effectuate justice and to ensure the protection of Plaintiffs' rights in and to those proceeds.

## DEMAND FOR JURY TRIAL

178.    Plaintiffs assert their right under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

WHEREFORE, Plaintiffs respectfully request judgment as follows:

a.    For a declaration by this Court that Silar is the actual servicer of the Loans and that Compass is, in fact, Silar's subservicer of the Loans;

b.    For a declaration by this Court that payments made by borrowers on loans shall first be applied to accrued, non-default interest, then to principal, and then to accrued, post-bankruptcy default interest and late fees (pre-bankruptcy default interest and late fees were waived in the Confirmation Order) if collected, subject only to the rights of the direct lenders on a specific loan to designate a different sequence of payment;

c.    For a declaration by this Court that Compass is not entitled to default interest, late fees, and servicing fees prior to the sale of the Purchased Assets;

d.    For a declaration by this Court that Compass is not entitled to any compensation under section 5 of the Loan Servicing Agreements;

e.    For a declaration by this Court that Plaintiffs and other direct lenders have an absolute right to modify the terms of their Promissory Notes and Deeds of Trust with borrowers to maximize their recovery;

f.    For a declaration by this Court that Compass and Silar must comply with Nevada laws pertaining to loan servicing.

g.    For a declaration by this Court that Compass and Silar must remit payment of payoff proceeds to Plaintiffs within 30 days following the end of the month in which payment from the Borrower was collected as required by NEV. REV. STAT. § 645A.050.

h.    For a declaration by this Court that Compass and Silar must deposit all money paid in full or partial payment of a loan secured by a lien on real property into an account appropriately named to indicate that it does not belong to Compass or Silar as required by NEV. REV. STAT. § 645B.175(4).

i.    For a declaration that Compass and Silar may not retain interest earned on monies due and owing to Plaintiffs and direct lenders, but must distribute this money on a pro rata basis to the Plaintiffs and direct lenders to whom it is owed.

j.    For a declaration by this Court that Compass and Silar must make the disclosures required by NEV. REV. STAT. § 645B.185;

k.    For a declaration that Compass and Silar have failed to make monthly reports to the NMLD Commissioner and Plaintiffs and other direct lenders regarding loan delinquencies as required by NEV. REV. STAT. § 465B.260.

l.    For a declaration by this Court that Compass does not have a valid power of attorney to act on behalf of Plaintiffs on such Loans;

m.    For a declaration by this Court that Plaintiffs, together with other direct lenders making up 51% of the beneficial interests of any loan, have the absolute right under NEV. ADMIN. CODE § 645B.073 and the Loan Servicing Agreements to terminate Compass as loan servicer for each loan to designate a new loan servicer or loan servicers to service the loans and properly exercised that right in May 2007;

n.    For a declaration by this Court that Compass's actions and omissions described above constitute breaches of the Loan Servicing Agreements and violations of Compass's fiduciary duty to Plaintiffs so as to render the Loan Servicing Agreements terminated with respect to Compass's rights pertaining to all loans in which Plaintiffs are direct lenders;

o.   In the alternative, for a declaration by this Court that all Loan Servicing Agreements provisions specifically relating to Compass's right to service the loans are void and/or voidable under Nevada law and/or general principles of contract enforcement;

p.   For an award of actual damages against Compass in an amount in excess of $75,000, to be proven at trial in this matter;

q.   For an award of actual damages against Silar in an amount in excess of $75,000, to be proven at trial in this matter;

r.   For an award of actual damages against Blatt in an amount in excess of $75,000, to be proven at trial in this matter;

s.   For an award of actual damages against Piskun in an amount in excess of $75,000, to be proven at trial in this matter;

t.   For an award of punitive damages against all Defendants in an amount to be determined by the jury;

u.   For the imposition of a constructive trust on funds received by either Compass or Silar to which they are not so entitled;

v.   For an award of Plaintiffs' reasonable attorneys' fees;

w.   For costs of suit incurred herein; and

x.   For such other and further relief, whether at law or in equity, as this Court deems just and proper.

-------------------

[1] Edwin E. Arnold
Harriet Bender, Trustee
Robert B. and Paula S. Bender
Peter & Deidre Capone, JTWROS
Tracy Cavin Family Trust
Bernard Cohen
Gareth A.R. Craner Trustee of the Gareth A.R. Craner Trust
George A. DiGioio
Doyle Family Trust
Charles B. Dunn, IV Trustee
William F. Dupin
Ellis L. Elgart & Sivia V. Elgart Trustees for the
    Ellis L. Elgart Revocable Living Trust dated 7/08/02

1    Sagrario  T. Evers
     Farrah Family Trust 9/17/03
2    Seymour Frank
     Ronald G. Gardner
3    Hartmann Trust 1997
     Diane H. Higgins
4    Milton P. Kaplan M.D. Profit Sharing Plan
     G. Robert & Christina G. Knoles
5    Reneé Leff-Kaplan
     Jospeh E. Mele
6    Don D. Meyer and Dennis E. Hein
     Wesley L. & Jeannie M. Monroe, JTWROS
7    Daniel D. Newman
     Robert L. Ogren Trust
8    Robert A. Schell
     Michael Shubic
9    Robert Speckert
     Robert and Nancy Turner
10   Nancy and Kenneth Zawacki

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DATED** this 7th day of February, 2008.

FULBRIGHT & JAWORSKI L.L.P.


By:   /s/ Walter A. Herring                    .
    Walter A. Herring, Esq.
    Norlynn B. Price, Esq.


BALLARD SPAHR ANDREWS &
INGERSOLL, LLP

    Stanley W. Parry, Esq.

Attorneys for all Plaintiff LLCs [with the exception of Hesperia Lenders, LLC]

JONES VARGAS


By: _____   /s/ Janet L. Chubb                    .
    Janet L. Chubb, Esq.

Attorney for Mojave Canyon, Inc., Charles B. Anderson Trust, Rita P. Anderson Trust, Baltes Company, Robert J. Kehl and Ruth Ann Kehl, Daniel J. Kehl, Kehl Development Corporation, Kevin A. Kehl, Kevin Kehl as Guardian of Susan L. Kehl, Kevin Kehl as Guardian of Andrew Kehl, Robert  A. Kehl and Tina M. Kehl, Krystina L. Kehl, Christina M. Kehl, Warren Hoffman Family Investments, LP, Judy A. Bonnet, Kevin McKee, Patrick J. Anglin, and Cynthia Winter

LAW OFFICES OF ALAN R. SMITH


By:   /s/ Kevin Darby                    .
    Alan R. Smith, Esq.
    Kevin Darby, Esq.

Attorneys for Hesperia Lenders, LLC

1

**CERTIFICATE OF SERVICE**

2       This certifies that, pursuant to Rule 5 of the FEDERAL RULES OF CIVIL PROCEDURE, on the

3  7th day of February 2008, a true and correct copy of the *Second Amended Complaint for*

4  *Declaratory Relief and Damages* and *Jury Demand* was served on all counsel of record via the

5  Court's Electronic Case Filing system and to the following attorney of record by first class

6  United States mail, postage prepaid:

7               Christine M. Pajak
                Stutman Treister & Glatt
8               1901 Avenue of the Stars, 12th Floor
                Los Angeles, CA 90067
9               Email: cpajak@stutman.com

10

11               /s/ Walter A. Herring                .
                 Walter A. Herring

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28