JANET L. CHUBB, ESQ.
Nevada State Bar No. 176
LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
JONES VARGAS
100 W. Liberty St, 12th Floor
P.O. Box 281
Reno, NV 89504-0281
Telephone: 775-786-5000
Fax: 775-786-1177
Email: jlc@jonesvargas.com
   and   tbw@jonesvargas.com
   and   lbubala@jonesvargas.com

LISA A. RASMUSSEN, ESQ.
Nevada State Bar No. 7491
616 S.8th Street
Las Vegas, NV 89101
Telephone: 702-471-1436
Fax: 702-471-6540
Email: Lisa@lrasmussenlaw.com

WILLIAM A. BREWER III, ESQ.
Texas State Bar No. 02967035
*Admitted Pro Hac Vice*
MICHAEL J. COLLINS, ESQ.
Texas State Bar No. 00785495
*Admitted Pro Hac Vice*
KENNETH N. HICKOX, JR., ESQ.
Texas State Bar No. 24045194
*Admitted Pro Hac Vice*
ROBERT M. MILLIMET, ESQ.
Texas State Bar No. 24025538
*Admitted Pro Hac Vice*
BICKEL & BREWER
1717 Main Street, Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**Electronically Filed on
September 26, 2009**

Attorneys for:
Robert J. Kehl; Ruth Ann Kehl; Robert A. Kehl;
Christina "Tina" M. Kehl; Krystina L. Kehl;
Daniel J. Kehl; Kevin A. Kehl, individually and
on behalf of Susan L. Kehl and Andrew R. Kehl;
Christina M. Kehl; Patrick J. Anglin; Cynthia A.
Winter; Kehl Development Corporation; Judy A.
Bonnet; Kevin A. McKee; Pamela J. McKee;
Warren Hoffman Family Investments, LP;
Charles B. Anderson, as trustee of the Charles
B. Anderson Trust; Rita P. Anderson, as trustee, of
the Rita P. Anderson Trust; Baltes Company;
Mojave Canyon, Inc.; Richard R. Tracy and
Ursula W. Tracy; Reno Aeronautical Corporation
Defined Benefit Pension Plan; Donna Cangelosi,
Tito Castillo,Tony Chaudhry, Jonathan Eller,
Robin Graham, Don Hess, Christina Knoles,
Arthur Kriss, Joe LaFayette, Janice Lucas,
Charles Maraden, Carol Mortenson, Daniel
Newman, Edward Schoonover, Carol Simon,
Lawrence Tengan, Connie Westbrook, Ken
Zawacki, Alfie Fujitani, Walt Musso, Cyril
Tammadge, and Robert Fuller (collectively, the
"Direct Lenders")

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: | CASE NO.    2:07-CV-00892-RCJ-GWF |
| USA COMMERCIAL MORTGAGE COMPANY, | *Bankr. Case No.* 06-10725-LBR |
| DEBTOR. | |
| 3685 SAN FERNANDO LENDERS, LLC, ET AL., | **THIRD AMENDED COMPLAINT AND JURY DEMAND** |
| PLAINTIFFS, | |
| VS. | |
| COMPASS USA SPE LLC, ET AL., | |
| DEFENDANTS. | |

1    Plaintiffs, through their respective counsel, Bickel & Brewer, Jones Vargas, and the Law

2  Office of Lisa Rasmussen, hereby aver and seek relief as set forth below:

3                                          **I.**

4                              **GENERAL AVERMENTS**

5  **A.      Jurisdiction and Venue.**

6        1.     The United States District Court has subject matter jurisdiction over this action

7  pursuant to 28 U.S.C. §§ 1331 and 1332(a).

8        2.     Pursuant to 28 U.S.C. § 2201, *et seq.* (the Federal Declaratory Judgment Act), this

9  Court has jurisdiction to declare the rights and legal obligations of the interested parties.

10        3.     Venue for this case in this district is proper pursuant to 28 U.S.C. § 1391.

11  **B.      The Parties.**

12        4.     Plaintiffs are, respectively, Nevada limited liability companies ("LLCs"), individuals,

13  trust funds created in Michigan, companies incorporated in Michigan and Nevada, a corporation

14  incorporated in Iowa, and a limited partnership formed in Iowa.    All Plaintiffs are direct

15  lenders/investors in certain investments made through USA Commercial Mortgage Company

16  ("USACM").  These investments were in the nature of direct loans to third-party borrowers secured

17  by real property and, sometimes, improvements.  These loans were brokered by USA Commercial

18  Mortgage Company ("USACM").    The members of the Plaintiff LLCs are all direct

19  lenders/investors who originally invested with USACM, but assigned their interest in the loans to

20  the LLCs in order to consolidate and unite to protect themselves and their investments from the

21  actions of Defendants as alleged herein.  The members of the Plaintiff LLCs, or their predecessors in

22  interest, are named as payees on certain Promissory Notes and Deeds of Trust evidencing and

23  perfecting the secured loans brokered by USACM.  Each Plaintiff LLC is a direct lender/investor in

24  a separate and distinct loan.  (As used herein, the term "Plaintiff" or "Plaintiffs" shall refer to the

25  named Plaintiffs in this case, including the LLCs, and the direct lender individuals or entity

26  Plaintiffs, as contextually appropriate.)

27

28

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

5.      Plaintiffs Richard R. Tracy and Ursula W. Tracy, husband and wife with rights of survivorship, and Richard R. Tracy, as Trustee of Reno Aeronautical Corporation Defined Benefit Pension Plan, are residents of the State of Nevada.

6.      Plaintiff LeAnn Apigian is a resident of the State of Washington.

7.      Plaintiff Ed Burgess is a resident of the State of Arizona.

8.      Plaintiff Donna Cangelosi is a resident of the State of Nevada.

9.      Plaintiff Tito Castillo is a resident of the State of Florida.

10.     Plaintiff Tony Chaudhry is a resident of the State of Washington.

11.     Plaintiff Victoria Conway is a resident of the State of California.

12.     Plaintiff Jonathan Eller is a resident of the State of California.

13.     Plaintiff Alfie Fujitani is a resident of the State of Nevada.

14.     Plaintiff Robert Fuller is a resident of the State of Nevada.

15.     Plaintiff Robin Graham is a resident of the State of California.

16.     Plaintiff Don Hess is a resident of the State of Florida.

17.     Plaintiff Brigitte Kaneda is a resident of the State of California.

18.     Plaintiff Christina Knoles is a resident of the State of Colorado.

19.     Plaintiff Arthur Kriss is a resident of the State of Utah.

20.     Plaintiff Joe LaFayette is a resident of the State of California.

21.     Plaintiff Janice Lucas is a resident of the State of California.

22.     Plaintiff Charles Maraden is a resident of the State of Nevada.

23.     Plaintiff Carol Mortensen (f/k/a Kesler) is a resident of the State of Utah.

24.     Plaintiff Walt Musso is a resident of the State of California.

25.     Plaintiff Daniel Newman is a resident of the State of Arizona.

26.     Plaintiff Kevin Olson is a resident of the State of Nevada.

27.     Plaintiff Edward Schoonover is a resident of the State of Washington.

28.     Plaintiff Carol Simon is a resident of the State of Nevada.

29.     Plaintiff Rodger Stubbs is a resident of the State of Florida.

30.     Plaintiff Cyril Tammadge is a resident of the State of California.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

31.     Plaintiff Stan Tara is a resident of the State of Nevada.

32.     Plaintiff Lawrence Tengan is a resident of the State of Nevada.

33.     Plaintiff Buck Wahl is a resident of the State of California.

34.     Plaintiff Connie Westbrook is a resident of the State of Washington.

35.     Plaintiff Craig Wisch is a resident of the State of Connecticut.

36.     Plaintiff Ken Zawacki is a resident of the State of California.

37.     Defendant Compass USA SPE, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

38.     Defendant Compass Partners, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.   (Compass USA SPE, LLC and Compass Partners, LLC are collectively referred to herein as "Compass").

39.     Defendant David Blatt ("Blatt") is a resident of the State of New York and is a member and manager of Compass.

40.     Defendant Boris Piskun ("Piskun") is a resident of the State of New York and is a member and manager of Compass.

41.     Defendant Silar Advisors, LP is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

42.     Defendant Silar Special Opportunities Fund, LP is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York (hereafter, Silar Advisors, LP, and Silar Special Opportunities Fund, LP shall collectively be referred to as "Silar").

43.     Defendant Asset Resolution, LLC ("Asset Resolution") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

C.      **General Background**.

44.     USA Commercial Mortgage Company, defined above as USACM, which sometimes did business under the name "USA Capital," was formed as a Nevada corporation in 1989 and was in the business of underwriting, originating, brokering, funding and servicing short term (typically one year or less) commercial loans primarily secured by residential and commercial developments, on behalf of private investors/direct lenders.

45.     On January 11, 1990, USACM obtained a license to act as a mortgage broker/agent in the State of Nevada under NEVADA REVISED STATUTES Chapter 645B (2005) and NEVADA ADMINISTRATIVE CODE Chapter 645B (2007).

46.     USACM routinely advertised and promoted, through sales and marketing literature, high-yield secured investments and represented that no investors had ever lost money in their investments with USACM.

47.     On April 13, 2006, USACM filed a Chapter 11 Petition for bankruptcy in the Bankruptcy Court for the District of Nevada, Las Vegas, together with four other entities related to USACM (hereinafter collectively referred to as the "USA Bankruptcy Cases").

48.     At the time USACM filed its bankruptcy petition, approximately 3,600 investors were "lenders" in one or more loans originated and serviced by USACM.  These 3,600 investors are commonly referred to as "direct lenders."

49.     The loans brokered by USACM on behalf of the direct lenders are each evidenced by a "Promissory Note Secured By a Deed of Trust" or a "Promissory Note Secured By a Mortgage" (respectively, the "Promissory Note"), which were executed by third-party borrowers in favor of the direct lenders (or their predecessors in interest) in each loan.  All loan documents, including the Promissory Notes, expressly provide that they are governed by Nevada law.

50.     At the time USACM brokered direct loans, each lender/investor and USACM entered into various Loan Servicing Agreements ("Loan Servicing Agreements" or "LSAs") pursuant to which USACM would service the loans it brokered on behalf of direct lenders.  Per USACM's requirements, each direct lender was supposed to execute a single Loan Servicing Agreement that covered, or purported to cover, every investment made by that direct lender with

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

USACM over time.  All Loan Servicing Agreements expressly provide that they are governed by Nevada law.  However, on information and belief, and based upon an audit conducted by the State of Nevada, Department of Business and Industry, Division of Mortgage Lending ("NMLD"), a substantial number of direct lenders never executed Loan Servicing Agreements.  Additionally, there are various forms of the Loan Servicing Agreements, which include differences in several key provisions (such as servicing fees ranging from 0% to 4%).  The consequence of USACM's documentation was that most or all of the loans were serviced by a single servicer operating under multiple, inconsistent Loan Servicing Agreements.

51.    At the time USACM filed its bankruptcy petition, the loan portfolio it was servicing pursuant to the Loan Servicing Agreements consisted of approximately 115 loans having a combined outstanding principal balance of approximately $960 million.  Most of the original direct lenders invested in more than one of the serviced loans, with there being an average of approximately three to four loans for each direct lender.

52.    During the course of the USA Bankruptcy Cases, USACM admitted that it had breached the Loan Servicing Agreements, breached its fiduciary duties and violated Nevada state law prior to filing its bankruptcy petition.

53.    As a result of USACM's fraudulent misrepresentations and conduct, 100% of the portfolio of loans USACM brokered are in default.  This fact is in stark contrast to the national default rate for commercial loans, which is approximately 1.5%.

54.    On or about September 22, 2006, USACM filed its Motion for Order Scheduling an Auction for the Sale of Certain Assets, Appointing SPCP Group, LLC, as Lead Bidder, and Approving Bid Procedures and Protections in the Bankruptcy Case, in which USACM sought to establish the parameters for the sale of certain assets in the USA Bankruptcy Cases, primarily consisting of valuable assets of a related debtor, the First Trust Deed Fund.  The Bankruptcy Court entered an Order: (A) Scheduling an Auction for the Sale of Certain Assets; (B) Appointing SPCP Group, LLC, as Lead Bidder; and (C) Approving Bid Procedures and Protections, Approving Bidding Procedures ("Order Scheduling Auction") on November 8, 2006.  The stalking horse bidder

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

agreed to honor the obligations of USACM under the Loan Servicing Agreements as part of the sale, but did not attribute any of its initial bid price to the Agreements.

55.     After the Order Scheduling Auction was entered, but prior to the auction's being conducted, Mesirow Financial Interim Management ("MFIM"), the Bankruptcy Court's appointed manager for USACM, prepared calculations of the potential default interest under the loans.

56.     Upon information and belief, USACM did not collect default interest (which, according to the majority of the Loan Servicing Agreements, is waivable at the option of the direct lenders) upon discounted settlement of a loan – *i.e.*, where less than 100% of principal and interest was paid by the borrower.  USACM's pattern and practice of not collecting default interest upon discounted loan settlements conform with industry standards.

57.     Upon information and belief, Compass became aware of the opportunity to purchase the USACM assets through its business dealings with direct lenders whereby Compass bought certain direct lenders' loan interests at discounted rates.

58.     The Bankruptcy Court conducted an auction of various assets of the USA Bankruptcy Cases on December 7, 2006.

59.     Compass was the successful bidder at the auction and, on February 16, 2007 (the "Closing Date"), acquired substantially all of the assets of USACM and its related debtor, the First Trust Deed Fund ("FTDF"), in exchange for approximately $67 Million.  The Compass bid was apparently broken down by an initial bid of $48 million for the FTDF assets and $8 million for the loan servicing rights under the Loan Servicing Agreements and other fees ("Purchased Assets"). The remaining amounts were to be allocated by an over-bid agreement between FTDF and USACM, which was filed under seal, and a break-up fee of $1.5 million to the stalking horse bidder.   The sale was expressly conditioned upon confirmation of the USACM's Chapter 11 Plan of Reorganization (the "Plan"), which was confirmed by an order of the Bankruptcy Court entered on January 8, 2007 (the "Confirmation Order").

60.     The USACM Plan effectively compromised[1] and released all claims of USACM and its affiliated debtors against the direct lenders, which would include all fees (*e.g.*, loan servicing

---

[1]     The compromise required the class of direct lenders to surrender their rights to "prepaid

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

1  fees, success fees) and/or claims for default interest under the various Loan Servicing Agreements

2  accrued but unpaid as of the Effective Date of the Plan.   Consequently, such released or waived

3  rights to claim and collect pre-Effective Date fees and interest were not conveyed to Compass when

4  it purchased USACM's surviving compensation rights under the Loan Servicing Agreements, and

5  the only such fees and default interest claims purchased by Compass were those accruing **after** the

6  Effective Date of the Plan.

7         61.     On information and belief, Compass subsequently sold, transferred and conveyed all

8  right, title, and interest in the Purchased Assets to Silar.   Such transfer of interest had the effect of

9  passing to Silar all benefits and burdens, and all rights and obligations, of the "Servicer" under the

10  Loan Servicing Agreements.   Compass has subsequently acted as subservicer for Silar pursuant to

11  such engagement, although Compass has always identified itself as "the servicer."   Accordingly, any

12  and all allegations of breaches of duty and other claims and causes of action contained in this Third

13  Amended Complaint against Compass apply to Silar with equal force and effect, and Silar is liable

14  to Plaintiffs to the same extent and upon the same grounds as Compass is liable, either directly,

15  under the doctrine of *respondeat superior,* or pursuant to principles of agency.

16         62.     Other than certain conditions not germane to this action, the Loan Servicing

17  Agreements were transferred to Compass and Silar without any modification whatsoever, a fact

18  frequently affirmed by the presiding bankruptcy judge.

19         63.     Compass was not able to obtain a mortgage broker/agent license from the State of

20  Nevada, Mortgage Lending Division, as required by the Asset Purchase Agreement.   As a result, in

21  February 2007, Compass entered into a sub-servicing agreement with USACM.   The sub-servicing

22  agreement, among other things, allowed for USACM to provide administrative functions, while

23  negotiations with borrowers, foreclosures, or other legal proceeding were left to Compass.   As

24  acting servicer, Compass was responsible for the actions of its sub-servicer USACM.

25

26  ───────────────────────

interest" back to the USACM bankruptcy estate in exchange for the debtor's releases of all other
claims against the direct lenders pursuant to the Loan Servicing Agreements.  *See* Debtor's Third
27  Amended Joint Chapter 11 Plan of Reorganization, Case No. BK-S-06-10725 LBR, Doc. No.
1799, II(C)(1)(e)(ii); *see also* Debtor's First Amended Disclosure Statement for Debtor's Third
28  Amended Joint Plan of Reorganization (Affects All Debtors), Case No. BK-S-06-10725 LBR,
Doc. No. 1798, IX(B)(2)(a)(v).

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

64. In May 2007, the NMLD entered a formal *Order Revoking Mortgage Broker License And Notice of Right To Request Hearing*, pursuant to which USACM's license to act as a mortgage broker/agent in Nevada was revoked and in which the State described USACM as having instituted "a calculated, self-serving deceptive scheme that was enacted to allow the Principals to potentially profit with no risk, while astronomical risk inured to the unsuspecting lenders." On May 9, 2007, a formal *Order Imposing Fine And Order To Cease And Desist And Notice of Right To Request Hearing* was entered. Pursuant to this Order, Compass was ordered to cease and desist all mortgage lending/agent activities in Nevada.

65. Also in May 2007, and pursuant to Nev. Admin. Code § 645B.073, direct lenders owning more than 51% of the beneficial interests in certain loans exercised their right to replace Compass and/or Silar as loan servicer to their respective loans.

66. On or about September 26, 2008, Silar purported to foreclose on the assets of Compass. To accomplish the foreclosure, Silar created Asset Resolution and conveyed all of its interest in USACM's assets to Asset Resolution. As a result, Asset Resolution expressly assumed all responsibilities and obligations to service USACM's loan portfolio. Accordingly, any and all allegations of breaches of duty, or other claims and causes of action contained in this Third Amended Complaint against Asset Resolution, apply to Silar with equal force and effect, and Silar is liable to Plaintiffs to the same extent and upon the same grounds as Asset Resolution is liable, either directly, under the doctrine of *respondeat superior,* or pursuant to principles of agency.

**D. Facts Relating To Compass's Conduct As Servicer And Involvement Of Other Defendants.**

**1. Compass, its Managers, and Silar Owe Fiduciary Duties to Plaintiffs.**

67. Compass has represented in a declaration submitted by Blatt that it is a national firm with over 200 employees which acquires over $100 million in loan interests every year. Blatt and Piskun, as managers of Compass, control and direct Compass's actions, policies, and strategies.

68. Silar, together with its principals, has a substantial background in the lending industry in numerous asset classes, including consumer, residential and commercial assets. Silar provided financing to Compass for the Purchased Assets, and, upon information and belief,

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   provided guidance, oversight, and conducted due diligence in connection with the financing.

2   Additionally, as stated above upon information and belief, Silar bought all rights, titles and interests

3   in the Purchased Assets from Compass, thereby becoming the true "Servicer" of the USACM loans.

4   Silar subsequently engaged Compass as its subservicer for the loans, although Compass has always

5   identified itself as "the servicer."

6       69.     Compass completed extensive due diligence on the loans in order to formulate its bid

7   for the FTDF assets.  Upon information and belief, Silar was aware of the results of such due

8   diligence and loaned substantial funds to Compass for the purpose of entering into the Asset

9   Purchase Agreement.

10      70.     On February 16, 2007, Compass issued a press release in which it stated that the

11   actual value of the assets purchased from USACM and FTDF was more than $150 million.  Based

12   on the full note value of $62,652,742 for the FTDF assets, not allowing for any borrower defaults, it

13   can be deduced that Compass expected at that time well in excess of $87 million in profit to be

14   realized from the loan servicing rights alone (for which Compass had paid a mere $8 million).

15   However, documents produced by Compass indicate that Compass hopes to extract for itself (and

16   Silar) more than $130 million in profit from those same loan servicing rights.

17      71.     As a purported loan servicer, Compass's capabilities and experience directly affect

18   the underlying performance of the loans.  Further, as a purported loan servicer, Compass acts as an

19   agent to Plaintiffs and other direct lenders and, therefore, assumes fiduciary responsibilities owed to

20   Plaintiffs and other direct lenders.  These fiduciary duties are also assumed by Blatt and Piskun as

21   managers of Compass, as well as by Silar, the true loan servicer.

22      72.     Compass's strategy and approach for servicing the loans (and extracting its projected

23   "profit" noted above) has created a distinct and substantial conflict of interest between and among

24   Compass, Blatt, Piskun, on the one hand, and Plaintiffs, on the other hand, as well as between and

25   among Silar, on the one hand, and Plaintiffs, on the other hand.

26      73.     Blatt and Piskun have controlled and authorized the objectives of Compass, directed

27   its conduct, and participated in its actions (including Compass's inappropriate acts and conspiracy

28   participation) in their official capacity as managers and directors of the company.  In this way, Blatt

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

and Piskun have understood, developed, and agreed to the objectives of the conspiracy, as well as Compass's role and their own personal roles in it.  Blatt and Piskun have worked through Compass with the purpose and goal of harming Plaintiffs and depriving them of loan proceeds, in violation of their fiduciary duties to Plaintiffs.

74.     Blatt and Piskun have also acted outside of the scope and authority of their employment for their own advantage by spreading false, fraudulent, and misleading information amongst direct lenders through internet sites, chat rooms, telephone conference calls, and email and by generally "spying" on direct lenders.   To facilitate their spying and distribution of false, fraudulent, and misleading information Blatt and Piskun have used false IDs and email addresses. Such actions are clearly outside of the course and scope of Blatt's and Piskun's employment and are in violation of their fiduciary duties to Plaintiffs.

**2.     Compass and Silar's business strategy to collect fees.**

75.     Compass, its individual managers (Blatt and Piskun), and Silar have formed an association-in-fact through which they have agreed and conspired to participate in a series of concerted activities with the intent to defraud and harm Plaintiffs, thereby gaining a substantial monetary windfall for themselves.  In order to effectuate this plan and conspiracy, Compass and its individual managers (Blatt and Piskun), with full knowledge, support, and agreement of the true loan servicer, Silar, has put into action a business strategy to extract value from the collateral pledged by third-party borrowers to Plaintiffs and other direct lenders by attempting to deduct default interest, late fees, loan origination fees, and other fees (including pre-petition interest and fees which it did **not** acquire in its purchase from USACM and FTDF) from loan payoffs and/or collateral proceeds **before** remitting amounts due to all Plaintiffs and other direct lenders.  This practice is in direct conflict with: (a) the loan documents (Promissory Notes, Deeds of Trust, and Loan Agreements); (b) the Loan Servicing Agreements; (c) the intent of the parties to the loans, (d) various other agreements; (e) the historical practices of USACM both prior to and during its bankruptcy; (f) the current practices of the USACM post-bankruptcy trust; (g) long established lending industry standards and practices; and (h) Compass's, its managers', and Silar's fiduciary duties and obligations to Plaintiffs.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

76.     Pursuant to Section 5 of some, but not all, of the Loan Servicing Agreements, the loan servicer may retain, as compensation for servicing loans (depending on which form of the Loan Servicing Agreement was executed by those direct lenders): (a) a servicing fee varying between 0-4% per annum; and (b) any late charges and default interest collected from the borrower.  However, late charges and default interest may be collected **only** if the direct lenders exercise their option to charge default interest and/or late fees, and then only if default interest and/or late fees are actually collected from the borrower over and above principal and accrued interest.  No Loan Servicing Agreement provides for the recovery of certain of the fees now claimed by Compass (*e.g.,* "success" or "exit" fees).  Further, pursuant to Section 4 of most of the Promissory Notes, all payments on the Promissory Notes are to be applied **first** toward the payment of regular accrued interest and then to principal.

77.     The cumulative unpaid principal balance on the loans in which Plaintiffs are direct lenders is currently in excess of $485 million.  The servicing fees and default interest fees, to which Compass claims it is entitled, accrues at approximately 10% or more per annum.  With this financial windfall in mind and upon information and belief, Compass and its managers (and Silar, as the true loan servicer) choose, to the substantial detriment of Plaintiffs and other direct lenders, to either do nothing to collect loan payments or to delay resolution of loans in order to allow greater default interest and late fees to accrue.  A number of the loans in which Plaintiffs are direct lenders are currently, or have been in the past, in this untenable position.  There appear to have been several times in which borrowers have attempted, or have offered, to pay in full or otherwise resolve loans, but Compass and its managers (and Silar, as the true loan servicer) have failed and refused to negotiate resolutions of such loans with the borrowers.  Compass's and its managers' (and Silar's, as the true loan servicer) apparent failure and refusal to work with borrowers to resolve defaulted loans further injures Plaintiffs because such behavior exposes Plaintiffs and other direct lenders to lender liability claims and litigation.  Some borrowers have already filed such suits against Plaintiffs and other direct lenders on certain loans and additional suits have been threatened against Plaintiffs.

78.     Additionally, in order to continue accruing default interest and other fees for their own benefit, Compass and its managers (and Silar, as the true loan servicer) have failed to timely

communicate to Plaintiffs and other direct lenders certain offers made by borrowers to repay their debts to the direct lenders. Additionally, Compass and its managers (and Silar, as the true loan servicer) have misrepresented the status of loans to Plaintiffs and other direct lenders for the purpose of coercing the Plaintiffs and other direct lenders to agree to modifications to loan documents, resulting in additional, undisclosed fees to Compass, its managers, and Silar. Further, Compass and its managers (and Silar, as the true loan servicer) have refused to process previously achieved direct lender/borrower settlement agreements.

79.     Upon information and belief, Compass, its managers, and/or Silar have knowingly made advances to borrowers and other third parties on certain loans on behalf of Plaintiffs and other direct lenders, which it was not authorized to make.

80.     Compass and its managers (and Silar, as the true loan servicer) have also demanded immediate payment of servicer advances from Plaintiffs and other direct lenders without providing a full explanation or an accounting for the service advances.

81.     Further, Compass and its managers (and Silar, as the true loan servicer) have subjected some Plaintiffs and other direct lenders to foreclosures upon their collateral, unapproved default interest, and other fees and expenses without the express authorization of Plaintiffs and other direct lenders. These, and other, self-interested actions have placed Plaintiffs' and other direct lenders' principal investments/loans at substantial risk.

82.     Additionally, Compass, its managers, and Silar are aware of Nev. Admin. Code § 645B.073 (2007) and have attempted to take advantage of its provisions by acquiring or seeking to acquire 51% of the beneficial interests in certain loans to prevent Plaintiffs and other direct lenders from removing Compass as loan servicer. These actions violate Compass's fiduciary duties to Plaintiffs and other direct lenders.

83.     Since taking over as loan servicer, Compass and its managers (and Silar, as the true loan servicer) appear to have knowingly used to their benefit, and to the detriment of Plaintiffs and other direct lenders, a three-day deadline and other very short deadlines for direct lender responses to loan resolution offers, even when substantially more time was feasible, in breach of the Loan

Jones Vargas
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   Servicing Agreements.  This action violates Compass's, its managers', and Silar's fiduciary duties

2   to Plaintiffs and other direct lenders.

3       **3.        Borrower payments and interest earning accounts.**

4       84.        Upon information and belief, Compass, its managers, and/or Silar have negotiated

5   with borrowers for their own benefit, pursuant to which Compass, its managers, and Silar

6   knowingly, and in collaboration with one another, would receive loan payoff proceeds from

7   borrowers when Plaintiffs and other direct lenders were not receiving full principal and interest

8   payments from the borrowers.  These proceeds are rightfully due and owing to Plaintiffs and other

9   direct lenders.

10      85.        Upon information and belief, Compass, its managers, and Silar have collaborated on

11  the formation of Compass's business plan, as well as the development of a strategy whereby

12  Compass and Silar would work together to receive loan payoff proceeds from borrowers (which are

13  due and owing to Plaintiffs and other direct lenders) and direct them instead to Silar in payment of

14  Silar's financing of Compass's acquisition of the Purchased Assets.  Despite knowledge that their

15  actions harm Plaintiffs and other direct lenders, Compass, its managers, and Silar have put this

16  business plan/strategy into action by working together to direct borrowers to transmit any and all

17  loan payments (including payments of principal, regular accrued interest, default interest, late fees,

18  and other fees) directly to an account held and controlled by Silar (the "Silar Account").  These loan

19  payments are specifically identifiable funds paid by borrowers in satisfaction of the requirements in

20  the Promissory Notes underlying specific loans.  The Silar Account is an interest bearing account in

21  which Silar earns money on funds due and owing to Plaintiffs and other direct lenders.  Silar retains

22  the interest earned on these funds.

23      86.        Additionally, the loan proceeds improperly held by Silar have been knowingly and

24  improperly commingled with Silar's and Compass's own monies.  Upon information and belief,

25  Silar transfers money from the Silar Account directly to Silar's own investors.  Further, certain

26  monies commingled in this account do not come from borrower payments but instead from deposits

27  made by third-parties unaffiliated with Plaintiffs and other direct lenders.  Although the account is

28  controlled by Silar, Compass and its managers have knowingly allowed commingling to occur and,

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

in fact, supported and enabled the commingling.  These actions have been done with the specific intent to deprive Plaintiffs of their right to and security in their funds.

87.     Upon information and belief, at the request of Compass and its managers and at various intervals, Silar transfers money from the Silar Account into an interest bearing account (the "Maximizer Account") controlled by Compass and Compass holds these funds due and owing to Plaintiffs and other direct lenders for an unspecified period of time solely to earn interest.  For example, on or about July 18, 2007, Silar made a wire transfer of $3,216,204.61 to Compass's Maximizer Account.  Upon information and belief, Silar knows that this Maximizer Account is solely used to earn interest on funds not belonging to Silar or Compass.  Compass later transfers monies due and owing to Plaintiffs and other direct lenders to its self-described "Disbursement Account," but retains all interest earned on Plaintiffs' and other direct lenders' funds while in the Maximizer Account.  Compass eventually remits the funds in the Disbursement Account to Plaintiffs and other direct lenders, sometimes after the time required by Nevada law.  This practice is in violation of Nevada law and Compass's, its managers', and Silar's fiduciary duties, and has injured Plaintiffs and will continue to injure Plaintiffs until judicial relief is obtained.

88.     In addition, upon information and belief, many of the fund transfers requested by Compass from the Silar Account (in which the loan proceeds belonging to the Plaintiffs are held and controlled by Silar) do not correlate by time or amount with loan payments made by the borrower.  These specific loan payments are due and owing to the direct lenders.  Through Compass's, its managers', and Silar's actions, Plaintiffs are deprived of the actual borrower payments to which they are entitled and/or do not receive such payments in a timely manner.

### 4.    Compass's failure to provide legally required information and Compass's dissemination of materially false and misleading information.

89.     Pursuant to NEV. REV. STAT. § 645B.185, each investor in USACM was required to receive and sign a Mortgage Investment Disclosure Form, approved by the NMLD.  As detailed in

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   the Mortgage Investment Disclosure Form, a mortgage broker/agent operating in Nevada is required

2   to inform investors, among other things, that:

a.   "You are entitled to receive information regarding the mortgage broker you are dealing with," including the most recent financial statements.

b.   "A Mortgage Broker performing loan servicing has an obligation to account to the borrower and every investor for money collected and disbursed in the exercise of that function."

c.   "When the borrower on a mortgage loan fails to make required payments, the actions an investor can take, or that a servicing agent can take on behalf of an investor, are determined by provisions of Nevada Law and the documents and instruments evidencing the mortgage loan."

90.   Plaintiffs and other direct lenders did not receive the benefit of the Mortgage Investment Disclosure Form as it relates to Compass (or to Silar, as the true loan servicer), nor have they received the required disclosures from Compass (or Silar).  Non-exclusive examples of this include:

a.   Upon request, Compass and its managers have refused to disclose to Plaintiffs and other direct lenders, or to provide an accounting of, any compensation they (or Silar) are receiving, including the amount of default interest, late fees and other fees they have received in connection with loan payoffs;

b.   Plaintiffs and other direct lenders have been provided with limited information regarding Compass (and none at all regarding Silar) since Compass began servicing the loans, and Compass and its managers have refused requests for information about Compass or its practices;

c.   Plaintiffs and other direct lenders have not been able to obtain any financial information concerning Compass, yet Compass was entrusted with nearly $750 million dollars of direct lenders' money;

91.   Despite the fact that many of the loans in the USACM loan portfolio were in term default, and others have gone into term default since Compass has taken over as loan servicer, Compass (and Silar, as the true loan servicer) has failed to make monthly reports to the NMLD and to Plaintiffs regarding loan delinquencies as required under NEV. REV. STAT. § 645B.260.  In addition, Compass (and Silar, as the true loan servicer) appears to have failed to produce, keep and

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1    maintain records and reports required by NEVADA REVISED STATUTES Chapter 645B and the Loan

2    Servicing Agreements.

3         92.    Upon information and belief, Compass and its managers have circulated self-

4    interested offers to purchase Plaintiffs' and other direct lenders' interests, at substantial discounts,

5    but have not provided Plaintiffs and other direct lenders with all of the material terms of the offers

6    nor all of the loan information necessary to make an informed decision, including sufficient loan

7    status reports.

8         93.    Upon information and belief, Compass and its managers have knowingly circulated

9    to Plaintiffs and other direct lenders, both directly through the United States mail and through

10   Compass's website, misleading and materially incomplete information outside of the ordinary

11   course and scope of business, purportedly for the purpose of reporting on legal proceedings in this

12   matter, but in reality and in effect for the purpose of and with the intent to cause confusion, fear,

13   distrust, dissension, and conflict among the direct lenders and to cause disruption of their

14   organization, communications, and legal actions in this case.

15        **5.    Power of attorney.**

16        94.    Each direct lender (or predecessor in interest of each direct lender) executed a power

17   of attorney in favor of USACM when making their investments/loans.  Those powers of attorney

18   expressly expire on the **maturity date of each related loan.**  Furthermore, at the time the Loan

19   Servicing Agreements were transferred to Compass, many of the loans in the USACM loan portfolio

20   were in term default, and others have since gone into term default.  As a result of the term default of

21   various loans in the USACM portfolio, Compass no longer has a valid power of attorney to act on

22   behalf of direct lenders as required under NEV. REV. STAT. § 645B.330.  Compass has not executed

23   any written extension of any of the Powers of Attorney.

24        95.    Despite the fact no valid power of attorney exists authorizing Compass to act on

25   behalf of Plaintiffs and other direct lenders, Compass continues to hold itself out as a

26   representative/agent of Plaintiffs (and other direct lenders) to borrowers, title companies and others.

27   Upon information and belief, Compass and its managers, without the power to do so, have

28   negotiated payoffs, filed lawsuits and executed satisfactions and releases on behalf of Plaintiffs and

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   other direct lenders.  Moreover, Compass has allegedly acted or purported to act on multiple loans

2   pursuant to a single power of attorney per direct lender in direct violation of § 645B.330.

3   96.   The practices of Compass and its managers (and Silar, as the true loan servicer), as

4   exemplified above, are in direct conflict with Nevada state laws, loan documentation (Promissory

5   Notes, Deeds of Trust, and Loan Agreements), Loan Servicing Agreements, intent of the parties to

6   the loans, various other agreements, long established industry standards and practices, and their

7   fiduciary duties and obligations.

8   **E.   Representative Examples of Breaches On Selected Loans.**

9   97.   The following are ***non-exclusive examples*** of breaches committed in connection

10   with specific loans.  These breaches (set forth in alphabetical order) typify those committed by the

11   Defendants on other, similarly situated loans.

12   **1.   The Bay Pompano Loan.**

13   98.   On or about April 4, 2007, a Bay Pompano Loan direct lender received a copy of an

14   offer from the Bay Pompano Borrower which offered to pay the full principal and the full interest

15   amount due and owing on the Bay Pompano Loan, as well as an "exit fee" of $325,000, to Compass.

16   On or about April 13, 2007, the Bay Pompano direct lender sent a certified letter to Compass

17   requesting that Compass, as loan servicer, accept the offer on behalf of the Bay Pompano direct

18   lenders.  Compass never replied and never communicated this offer to other Bay Pompano Loan

19   direct lenders.

20   99.   In a progress report from Compass, Compass stated that it would send an offer to the

21   Bay Pompano Loan direct lenders in response to an offer made by the Bay Pompano Borrower on

22   May 17, 2007.  Compass's letter requested that the Bay Pompano direct lenders accept payment of

23   90% of the principal amount due and owing on the loan and no accrued interest.  However, a

24   comparison of the Bay Pompano Borrower's May 17, 2007 offer to Compass's proposed settlement

25   payout showed that Compass, in furtherance of the conspiracy to defraud Plaintiffs, was attempting

26   to take over $2,000,000.00 in fees for itself (and/or for Silar), while the direct lenders would <u>not</u> be

27   paid in full.

28

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

100.    Later, the Bay Pompano Borrower made a revised offer of $16,743.553.46.  Again, Compass never communicated this offer to the Bay Pompano Loan direct lenders.  Instead of countering or communicating this offer, Compass informed Bay Pompano Loan direct lenders that it would foreclose on the loan collateral.  When one Bay Pompano Loan direct lender emailed Compass inquiring about these developments, Compass responded that the Bay Pompano Borrower was not willing to make a full repayment of the loan – *i.e.*, could not pay Compass all of the extra fees it sought for itself – therefore, Compass would foreclose on the loan.  Compass refused requests to contact this direct lender by phone to discuss these issues.

101.    Compass (and Silar, as the true loan servicer) has failed to meet its fiduciary duties and obligations under the Loan Servicing Agreements by not readily communicating with Plaintiff Bay Pompano, LLC and other direct lenders.  While Compass has scheduled status conference calls, often it does not allow the direct lenders to talk to Compass on these calls.  Sometimes Compass does not even participate in lender conference calls it has scheduled, which are purportedly for the benefit of the direct lenders and for the purpose of advising and communicating with direct lenders regarding loan status.  For example, on or about August 16, 2007, a conference call was scheduled on the Bay Pompano Loan.  One Bay Pompano direct lender waited on the call line for 15 minutes without a representative from Compass appearing.  In addition, Bay Pompano direct lenders have left numerous messages and sent emails to Compass without receiving responses.  These actions clearly violate Compass fiduciary duties and obligations under the Loan Servicing Agreements.

### 2.    **The Binford Medical Loan.**

102.    On information and belief, Compass and its managers (and Silar, as the true loan servicer), in violation of their fiduciary duties, wrongfully pursued foreclosure adverse to Plaintiff Binford Lenders, LLC's ("Binford, LLC") and other direct lenders' best interests on the Binford Medical Loan.

103.    Notwithstanding the near completeness of the project and the potential for the Binford Medical Borrower to fully satisfy its loan obligations, Compass and its managers (and Silar, as the true loan servicer) recklessly and irresponsibly chose to pursue foreclosure proceedings and risk financial devastation for Plaintiff Binford, LLC and other direct lenders.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

104.   Additionally, since Compass took over the USACM loan portfolio, it has consistently ignored communications from Plaintiff Binford, LLC and other direct lenders and failed to provide timely information about the status of the Binford Medical Loan, including accounting information. Because the Binford Medical Loan has been in default for more than two consecutive payments, Compass was required to provide monthly accounting, under Nev. Rev. Stat. § 645B.260(1)(b), but has failed to do so.   This also violates Section 2(d) of the Loan Servicing Agreements.   These actions (or lack thereof) are in violation of Compass's and Silar's fiduciary duties.

105.   As an example, at least one direct lender in the Binford Medical loan sent several emails and letters (including a certified letter) to Compass and its managers requesting loan and accounting information.   Compass did not respond.   Instead, several members of Plaintiff Binford, LLC and other direct lenders received cease and desist letters from Compass's legal counsel threatening litigation.   On information and belief, members of Plaintiff Binford, LLC and other direct lenders received their first communication containing information about the Binford Medical Loan from Compass in a non-loan specific report dated May 18, 2007, 91 days after Compass took over as purported loan servicer.   This report stated for the first time that Compass was pursuing foreclosure on the Binford Medical Loan.   Members of Plaintiff Binford, LLC and other direct lenders received their first Binford Medical Loan specific correspondence *over five months* after Compass purportedly acquired the servicing rights.   This Binford Medical Loan specific correspondence stated that Compass had commenced litigation over an internal dispute with the borrower and developer.

106.   Compass, as sub-servicer for Silar and in violation of its fiduciary duties and the Loan Servicing Agreements, has also refused to share critical loan and accounting information with Plaintiff Binford, LLC and other direct lenders so that they can make an informed decision on a proposed discounted payoff negotiated during mediation.   Because Plaintiff Binford, LLC and other direct lenders were refused material information, certain Binford Medical Loan direct lenders were forced to reject the proposal.

**3.      The Cabernet Highlands LLC Loan.**

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

107.   On information and belief, Compass and Silar agreed and conspired to have the borrower of the Cabernet Highlands LLC Loan wire loan payoff proceeds, portions of which were due and owing to Plaintiff Cabernet Highlands Lenders, LLC ("Cabernet, LLC") and other direct lenders, directly to the Silar Account.   For instance, on or about July 9, 2007, Compass and Silar fraudulently induced the Cabernet Highlands Borrower to make a wire transfer of $150,246.49 to Silar.   Also, on or about August 9, 2007, Compass and Silar fraudulently induced the Cabernet Highlands Borrower to make a wire transfer of $37,589.35 to Silar.   Additionally, on or about September 21, 2007, Compass and Silar fraudulently induced the Cabernet Highlands Borrower to make a wire transfer of $129,482.73 to Silar.   Furthermore, on or about October 12, 2007, Compass and Silar fraudulently induced the Cabernet Highlands Borrower to make a wire transfer of $36,337.50 to Silar.   This Silar controlled account is an interest bearing account.

108.   Certain portions of the transferred funds were due and owing to direct lenders in the Cabernet Highlands Loan, including Plaintiff Cabernet, LLC.   Subsequently, Silar kept the funds due and owing Plaintiff Cabernet, LLC direct lenders for a period of time, earning interest on monies it did not own.   Compass, its managers (Blatt and Piskun), and Silar agreed that Silar would keep the interest earned with the intent to deprive Plaintiff Cabernet, LLC and other direct lenders of the earned interest due and owing to them.   Silar then transferred these funds to certain Compass-controlled bank accounts, including the Compass-controlled Maximizer Account, which Silar knew also earned interest.   Compass retained these funds in the Maximizer Account for a period of time earning interest on monies due and owing Plaintiffs and other direct lenders.   Both Compass and Silar kept the interest earned for their own benefit, with the intent to deprive Plaintiff Cabernet, LLC, and other direct lenders, of these funds.

### 4.   The Charlevoix Loan.

109.   The Charlevoix Homes loan went into interest default and maturity default on April 4, 2007.   On information and belief, Compass and its managers (and Silar, as the true loan servicer) have made no effort either to negotiate an extension, an act required by the original loan documents, or to send a Notice of Default to Charlevoix Homes.

Jones Vargas
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1    110.    Additionally, Compass and its managers (and Silar, as the true loan servicer) have

2    failed to provide timely information to Plaintiffs and other direct lenders.  For example, on or about

3    August 5, 2007, one direct lender sent Compass an e-mail requesting why no status report had been

4    given to the lenders in this loan since the maturity date.  On information and belief, Compass did

5    not respond and to this date has taken no action to resolve the defaulted Charlevoix loan.

6    **5.    The Clear Creek Plantation Loan.**

7    111.    On March 23, 2007, Compass and its managers, in furtherance of the conspiracy to

8    defraud direct lenders, knowingly and intentionally sent a false, fraudulent, and misleading letter

9    through the United States mail to the direct lenders of the Clear Creek Plantation Loan, which

10   requested their approval of a settlement proposal.  Through the proposed settlement, the direct

11   lenders would receive 100% of principal, but *no accrued, unpaid interest*.  The letter falsely led the

12   direct lenders to believe that the Clear Creek Borrower could not pay accrued interest.  This letter

13   was false, fraudulent, and misleading because the members of Plaintiff Clear Creek, LLC and other

14   direct lenders subsequently learned that the Clear Creek Borrower had, in fact, expressly told

15   Compass that it would pay not only the full amount of principal owing on the loan, but also a

16   substantial portion of the accrued, but unpaid interest.  Compass gave the Clear Creek Plantation

17   Loan direct lenders only one week in which to respond, to the settlement proposal Compass offered.

18   112.    Certain direct lenders contacted Compass and its managers for information

19   concerning the loan, including the status of the loan, status of the negotiations, and reasons why the

20   Clear Creek Plantation Borrower was unable to pay off the accrued interest due and owing to the

21   direct lenders.  Compass and its managers, in clear violation of their fiduciary duties and in

22   furtherance of the conspiracy to defraud direct lenders, never responded.  Desperate for information,

23   one day before the deadline imposed by Compass to lodge any objections against the settlement

24   deal, certain direct lenders held a conference call with Clear Creek Plantation Borrower.

25   113.    During this conference call, the direct lenders learned that Compass and its managers

26   had misrepresented the terms of the settlement proposal to the direct lenders and that the Clear

27   Creek Plantation Borrower had expressly offered and was willing to pay off the full unpaid principal

28   balance, *as well as a substantial portion of the accrued interest*.  In fact, the Clear Creek Plantation

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  Borrower had already secured financing specifically intended to pay off all principal and a

2  significant portion of the accrued interest due and owing to the direct lenders of the Clear Creek

3  Plantation Loan.

4       114.    Furthermore, on or about July 2, 2007, Compass, through Mark Olson, spoke by

5  telephone to one or more direct lenders in the Clear Creek Plantation Loan and stated that a recent

6  appraisal of the property showed that there was not enough value in the property to cover the full

7  amount due and owing on the loan and that the value of the property would only cover the principal

8  amount of the Clear Creek Plantation Loan and Compass's default interest and other fees, but not

9  the direct lenders' accrued, but unpaid interest.  This statement was apparently false, fraudulent, and

10  misleading because the "recent appraisal," dated December 29, 2006, showed the "as is" value of

11  the property as $6,415,000.00 – *i.e.,* more than the total payoff of the Clear Creek Plantation Loan

12  (including Compass's alleged fees).  Also, the appraisal showed the projected market value of the

13  property as of July 1, 2007 as $9,625,000.00, far more than the value of the Clear Creek Plantation

14  Loan.

15       115.    On or about July 11, 2007, the Clear Creek Plantation Borrower paid off the Clear

16  Creek Plantation Loan in its entirety.  At that time and in furtherance of the conspiracy to defraud

17  direct lenders, Compass and Silar agreed and conspired to have the Clear Creek Plantation Borrower

18  wire the payoff proceeds in the amount of $3,923,771.68, portions of which were due and owing to

19  Plaintiff Clear Creek, LLC and other direct lenders, directly to the Silar Account thereby converting

20  Plaintiff Clear Creek, LLC's funds.  Silar earned interest on the converted funds in the Silar

21  controlled account which were due and owing to Plaintiff Clear Creek, LLC.  Silar has improperly

22  kept this earned interest for itself, instead of distributing it to Plaintiff Clear Creek, LLC and other

23  direct lenders, to whom it is owed and belongs.

24       116.    On or about July 18, 2007, Silar, in furtherance of the conspiracy to defraud direct

25  lenders, wired $3,216,204.61 of the Clear Creek Plantation payoff funds (minus the earned interest

26  and certain other monies, which Silar converted and kept for itself) to the Compass-controlled

27  Maximizer Account which Silar knew also earned interest.  Compass retained these funds in the

28  Maximizer Account until on or about August 31, 2007, in violation of NEV. ADMIN. CODE §

645A.050(2), and then transferred monies due and owing to Plaintiff Clear Creek, LLC, and other direct lenders (minus the earned interest, which Compass converted and kept for itself) to the Disbursement Account.  Compass remitted payment, but no earned interest to Plaintiff Clear Creek, LLC, and other direct lenders, on or about August 31, 2007.

117.    Both Compass and Silar knowingly converted and kept the interest earned on the monies due and owing the Direct Lenders for their own benefit with the intent to deprive Plaintiff Clear Creek, LLC, and other direct lenders, of the funds which belong to them.

### 6.    The Fox Hills 216 and Eagle Meadows Loan.

118.    In November 2006, the Fox Hills 216/Eagle Meadows Borrower met with representatives of Compass, including Piskun, to discuss payoff of the current balance due and owing to the direct lenders on the Fox Hills 216 Loan which was approximately $58 million.  The Fox Hills 216 Loan and the Eagle Meadows Loan stem from the same real estate development project in Los Banos, California.

119.    Compass, through Piskun, misrepresented to the Fox Hills 216/Eagle Meadows Borrower that it controlled the Fox Hills 216 Loan, even though at that time the Asset Purchase Agreement had not yet been signed, and stated that decisions regarding the payoff of the loan would be made by Compass.  Compass, through Piskun, requested the Fox Hills 216/Eagle Meadows Borrower present a proposal for resolving the Fox Hills 216 Loan.

120.    The Fox Hills 216/Eagle Meadows Borrower presented two alternative payoff proposals to Compass in early December 2006.  Compass did not respond to the two payoff proposals sent by the Fox Hills 216/Eagle Meadows Borrower.

121.    The Fox Hills 216/Eagle Meadows Borrower again contacted Compass and its managers at the end of February 2007 and offered a third settlement proposal, which Compass did not respond to until over two weeks later when it demanded a payoff amount of $70 million, approximately $12 million more than the original principal amount of the Fox Hills 216 Loan.  The Fox Hills 216/Eagle Meadows Borrower requested a breakdown of Compass's $70 million payoff figure, which Compass refused to provide.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

122.    Later, the Fox Hills 216/Eagle Meadows Borrower made a final payoff proposal of $65 million.  In breach of its fiduciary duties and in furtherance of the conspiracy to defraud direct lenders, Compass never communicated the Fox Hills 216/Eagle Meadows Borrower's final payoff offer to the direct lenders, including members of Plaintiff Fox Hills, LLC.

123.    Compass's and its managers' (and Silar's, as the true loan servicer) wholly unjustified failures to provide the Fox Hills Loan direct lenders, including members of Plaintiff Fox Hills, LLC, with any of the three settlement proposals, damaged the value of the Fox Hills 216 Loan and the value of the Eagle Meadows Loan, which Plaintiffs Eagle Meadows Lenders, LLC ("Eagle Meadows, LLC") is invested.

124.    As a result of Compass's actions in the Fox Hills 216 Loan, at the beginning of November 2007, the Fox Hills 216/Eagle Meadows Borrower filed a lender liability action against members of Fox Hills, LLC and other direct lenders in California state court.

125.    Additionally and in furtherance of the conspiracy to defraud investors, Compass, through Blatt and Piskun, collaborated with Silar on a loan to secure certain water rights related to the Fox Hills 216 and Eagle Meadows Loans, which also had the added side benefit of providing a lucrative and secure financial opportunity to Silar.  Compass (through Blatt and Piskun) and Silar conspired and agreed that Silar would loan the money necessary to secure the water rights and, in return, Silar would receive a very preferential return on the fully secured loan – to the detriment of Plaintiff Fox Hills, LLC, Plaintiff Eagle Meadows, LLC, and other direct lenders.  Because this loan would be labeled as a servicing advance, Silar was guaranteed to make a profitable return on the loan before any direct lender received any payoff on the loan.     Blatt and Piskun signed and approved a "Servicing Advance Request" to Silar on or about April 16, 2007 and Silar subsequently loaned this money to Compass in return for a very high interest rate (an 18% interest rate), as well as seniority and cross-collateralization on the loan.  This loan was a financial boon to Silar, though it was made at substantial cost and harm to Plaintiff Fox Hills, LLC, Plaintiff Eagle Meadows, LLC, and other direct lenders.

**7.      The Gardens Timeshare Loan.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

126.    The Gardens Timeshare loan originated on March 2, 2004 with an original principal balance of $5,800,000.00.  The principal balance, as of June 4, 2007 was $3,577,719.33.

127.    On or about June 4, 2007, Compass sent a communication through the United States mail to the direct lenders of the Gardens Timeshare Loan.   In this communication, Compass outlined a "global restructuring" proposal (the "Restructuring Proposal").   After making this Restructuring Proposal, Compass expressed to the direct lenders that the Restructuring Proposal was the best deal the direct lenders could get.

128.    The Restructuring Proposal amounted to a modification of the underlying collateral of the loan, along with two other loans on the same project.   Compass, its managers, and Silar proposed changing and reducing Plaintiff The Gardens TSHR Lenders, LLC's ("The Gardens, LLC") and other direct lenders' deeded positions in the loans, and elevating their own deeded position (one of the three "Gardens" loans is funded 100% by Compass through their purchase of the FTDF).   Compass asked Plaintiff The Gardens, LLC and other direct lenders to consider the proposal with a letter outlining the details of the restructuring which contained incomplete and misleading information.

129.    On or about July 20, 2007, Compass sent the direct lenders another communication elaborating on the terms of the Restructuring Proposal.   In a conference call with the direct lenders regarding this new communication, Compass once again expressed to the direct lenders that "this is the best you can get."   Based on this Proposal, Compass intended to take almost one-third (1/3) of the original loan balance off the top for "earned fees."

130.    Compass's proposal included threats of negative impact if direct lenders did not consent to the restructuring of the loans.   Compass threatened that it would have to sell the property at foreclosure, resulting in a recovery far less than the lenders' investments, with the cost to be borne by the direct lenders, or that the borrower would be forced into bankruptcy causing substantial delays.   After more than 20 of the direct lenders elected not to agree to the modification, Compass telephoned each dissenting investor, and aggressively campaigned to get the lenders to change their votes by supplying more misleading information.

**8.        The Harbor Georgetown Loan.**

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

131.     On information and belief, the Harbor Georgetown Borrower was attempting to develop and remodel the property underlying the loan.  Additionally, although in default, the Harbor Georgetown Borrower was apparently receiving rents for the property from its large tenants, Krogers supermarket and Rite-Aid, which could be used to pay off portions of the Harbor Georgetown Loan.  Compass and its managers (and Silar, as the true loan servicer), however, failed to collect any type of payments from the Harbor Georgetown Borrower and remit those payments to Plaintiff Harbor Georgetown Lenders, LLC ("Harbor Georgetown, LLC") or other direct lenders.

132.     On information and belief, Compass and its managers have been unresponsive to calls and other forms of communication from Plaintiff Harbor Georgetown, LLC and other direct lenders about this situation and the status of the loan in general.  Compass's and its managers' failure to communicate with and respond to Harbor Georgetown Loan direct lenders violates their fiduciary duties and obligations under the Loan Servicing Agreements.

### 9.     The La Hacienda Loan.

133.     On information and belief, Compass and Silar agreed to have the borrower of the La Hacienda loan wire loan payoff proceeds, portions of which were due and owing to Plaintiff La Hacienda Lenders, LLC ("La Hacienda, LLC"), and other direct lenders, directly to the Silar Account.  Silar kept these funds due and owing the Direct Lenders for a period of time, earning interest on monies it did not own.  Compass, its managers, and Silar agreed that Silar would keep the interest earned for their own benefit with the intent to deprive Plaintiff La Hacienda, LLC, and other direct lenders, of these funds.

134.     Additionally, despite the payoff of the La Hacienda Loan, Compass and its managers (and Silar, as the true loan servicer) have failed to provide the La Hacienda Loan direct lenders, including Plaintiff La Hacienda, LLC, with an adequate accounting as required.

### 10.     The Lerin Hills Loan.

135.     On information and belief, the Lerin Hills Loan was secured by a second lien position.  In August of 2006, USACM undertook to negotiate an early payout from the borrower on this under-funded loan.  The borrower agreed to pay $9,552,824.38 (approximately 93% of the original principal balance), and USACM, as servicer, agreed to waive any and all fees and default

1   interest.  The settlement was subject to approval of the Lerin Hills Loan direct lenders and the

2   bankruptcy court.  On December 12, 2006, the bankruptcy court granted authorization to USACM to

3   effectuate the payoff.  However, USACM never collected the payment, presumably because its

4   assets were auctioned and bought by Compass on December 7, 2006.  After Compass took over the

5   servicing of the loan, Piskun directed Compass to immediately renounced any obligation or

6   intention of accepting the agreed payoff, and instead unilaterally hiked the payoff amount to

7   $17,306,947.38, including $5 million in late fees, exit fees, and default interest.

8        136.    After many weeks without information from Compass and its managers, despite

9   numerous inquiries, a direct lender called the Lerin Hills Borrower's principal and learned for the

10  first time that although the borrower had been ready, willing, and able to pay the agreed settlement

11  amount, Compass had renounced the settlement approved by the bankruptcy court and the Lerin

12  Hills Loan direct lenders.  Although the borrower informed Compass and its managers that there

13  was no way he could pay $17.3 million, and that sabotaging the settlement would doom his

14  development project, Piskun, in violation of his fiduciary duties, told the borrower that he did not

15  care if the project "burned."

16       137.    Compass was well aware of, but asserted that it was not bound by, the agreed upon

17  and court-approved settlement.  Compass also noted that the Lerin Hills Loan direct lenders stood to

18  lose a significant amount of money unless the Lerin Hills Borrower acquiesced to Compass's

19  demand for additional money.

20       138.    Following Compass's refusal to abide by the agreed to and court authorized

21  settlement amount, Compass and its managers commenced foreclosure proceedings on April 9,

22  2007.

23       139.    Compass's notice of foreclosure set off a cascade of harmful events, all of which

24  should have been foreseen by Compass.  First, as Compass was aware, the Lerin Hills Loan direct

25  lenders had a junior lien on the property and an intercreditor agreement with Wachovia Bank not to

26  commence foreclosure proceedings while the first lien was still outstanding.  Compass's noticing of

27  foreclosure therefore triggered Wachovia's right to accelerate its own loan and to foreclose on the

28  property, a proceeding which would assuredly all but wipe out any secured interest that the direct

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

1    lenders had in the property.  Further, Compass's foreclosure posting apparently caused delayed

2    government approvals, waning interest from builders, the first lien to be moved to Special Assets,

3    and led to the delay of the project for an additional 12 months.  Compass's actions also apparently

4    made it nearly impossible to refinance either the first or second lien on the property.

5        140.    Compass's self-serving declination of the $9.5 million payoff proposal was to the

6    detriment of Plaintiff Lerin Hills Lenders, LLC and other direct lenders and a breach Compass's

7    fiduciary duties and the Loan Servicing Agreements on multiple levels.  Further, due to Compass's

8    actions, the collateral value of the project (and, therefore, the value of the Lerin Hills Loan) has been

9    severely depressed.

10        **11.    The Marlton Square I Loan.**

11        141.    Compass sought permission from the Marlton Square I Loan direct lenders to

12    negotiate a payout with the borrower that would require the direct lenders on the Marlton Square I

13    Loan to give up 50 percent of their accrued interest while Compass received 100 percent of the

14    default interest it claimed it was due.

15        142.    When Plaintiff Marlton Square I Lenders, LLC ("Marlton Square I, LLC") and other

16    direct lenders rejected this proposal, Compass then proposed to give the lenders another twenty-five

17    percent of the accrued interest while it continued receiving the lion's share of the payout.  This was

18    in direct conflict with the best interests of Plaintiff Marlton Square I, LLC and other direct lenders

19    and in violation of Compass's fiduciary duties and obligations under the Loan Servicing Agreement.

20        **12.    The Shamrock Tower Loan.**

21        143.    On information and belief, Compass negotiated an agreement whereby a third party

22    would purchase the Shamrock Tower property in a foreclosure sale for the entire value of the loan

23    (principal, accrued interest, default interest, late fees, and other fees).  However, Compass did not

24    share this information with Plaintiff Shamrock Tower Lenders, LLC ("Shamrock Tower, LLC") or

25    other direct lenders.

26        144.    Instead, on or about March 2007, Compass and its managers knowingly and

27    intentionally sent a fraudulent and misleading letter through the United States mail to members of

28    Plaintiff Shamrock Tower, LLC and other direct lenders in the Shamrock Tower Loan which sought

1   their approval to accept a "third party" buyer's offer of 88% of their principal investment and no

2   accrued interest.  This letter was misleading, deceptive, and falsely represented the terms of the

3   agreement with the third party buyer, who, upon information and belief, was willing to pay 100% of

4   the direct lenders' principal investment and all accrued interest, plus certain other fees.  Compass

5   and its managers (and Silar, as the true loan servicer) were fully aware of the misleading nature of

6   this letter and intended the misleading information to induce members of Plaintiff Shamrock Tower,

7   LLC and other direct lenders to accept the 88% offer.  Several members of Plaintiff Shamrock

8   Tower, LLC and other direct lenders accepted the offer to their detriment.

9       145.    Silar aided this scheme by providing funds to Compass to remove a tax lien that

10  would have prevented Compass from initiating foreclosure, thereby preventing the subsequent

11  foreclosure sale and enabling the third party purchase of the property for full value, as negotiated by

12  and benefiting Compass.

13      146.    Additionally, Compass and its managers (and Silar, as the true loan servicer) did not

14  notify Plaintiff Shamrock Tower, LLC, or other direct lenders, before proceeding to foreclosure.  On

15  information and belief, several members of Plaintiff Shamrock Tower, LLC, and other direct

16  lenders, contacted Compass and its managers and requested information on the status of the loan

17  and why they were not notified about the foreclosure (about which they learned second-hand).

18  Compass and its managers responded to at least one direct lender that it did not need to notify

19  investors because they had approval from more than 50% of beneficial interest in the Shamrock

20  Tower Loan.  Compass, however, refused to provide proof of this 50% approval.

21      147.    Compass and its managers (and Silar, as the true loan servicer), in violation of their

22  fiduciary duties and obligations under the Loan Servicing Agreements, have failed to provide timely

23  information to Plaintiff Shamrock Tower, LLC, or other direct lenders, since the foreclosure sale on

24  August 7, 2007.

25

26      **13.    The Standard Property Loan.**

27      148.    Members of Plaintiff Standard Property Holdings, LLC ("Standard Property, LLC")

28  include individual direct lenders (see endnote 1 for the list of members)[i] who have assigned their

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   interests to Standard Property, LLC.  Plaintiff Mojave Canyon, Inc. also invested as a direct lender

2   in the Standard Property Loan.

3         149.   Members of Standard Property, LLC, Plaintiff Mojave Canyon, Inc., and other direct

4   lenders, through USACM, made a direct loan to Standard Property Development, LLC (the

5   "Standard Property Borrower").  The loan is commonly known as the "Standard Property Loan."  In

6   connection with the Standard Property Loan, certain direct lenders, including members of Plaintiff

7   Standard Property, LLC, executed powers of attorney, pursuant to which they appointed USACM as

8   their servicer for the Standard Property Loan.  As of March 15, 2007, the total principal balance of

9   the Standard Property Loan was $9,640,000 ("Standard Property Principal Balance").

10         150.   On February 27, 2006, the Standard Property Borrower executed a Promissory Note

11   Secured by Mortgage in favor of certain Plaintiffs and other direct lenders (the "Standard Property

12   Note"), which provides for an interest rate of 12.5% per annum.  Pursuant to Section 4 of the

13   Standard Property Note all payments on the Note were to first be applied toward the payment of

14   accrued interest.

15         151.   Compass and its managers were aware that the Standard Property Borrower was able

16   to and ready to payoff all principal in the Standard Property Loan, but was concerned that a payoff

17   would occur prior to Compass taking over the servicing rights from USACM on February 16, 2007.

18   Therefore, in furtherance of the conspiracy to defraud direct lenders and in order to gain a financial

19   advantage for Compass and Silar on this loan, on February 2, 2007, Piskun sent the Standard

20   Property Borrower an email stating that Compass would, in effect, pay the Borrower off by taking

21   care of the Borrower's legal expenses if the Borrower would not contact the direct lenders about

22   settling the loan and would allow Compass to send out the settlement proposal letter *after* it took

23   over as loan servicer.

24         152.   On or about February 2, 2007, Compass, in furtherance of the conspiracy to defraud

25   direct lenders, knowingly and intentionally sent a misleading letter through the United States mail to

26   members of Plaintiff Standard Property, LLC, Plaintiff Mojave Canyon, Inc., and all other direct

27   lenders in the Standard Property Loan which sought their approval to accept the Standard Property

28   Borrower's payoff offer of 90% of their principal investment in full satisfaction of the Standard

Property Loan.   This letter was misleading, deceptive, and falsely represented the terms of the agreement with the Standard Property Borrower, who, upon information and belief, was willing to pay 100% of the direct lenders' principal investment.   Compass, its managers, and Silar were fully aware of the misleading nature of this letter and intended the misleading information to induce members of Plaintiff Standard Property, LLC, Plaintiff Mojave Canyon, Inc., and other direct lenders to approve the 90% payoff.   In response to the false and inequitable terms proposed in Compass's letter, many of the Standard Property direct lenders rejected the payoff proposal and sent a letter to Compass demanding that it accept the Standard Property Borrower's offer to pay of 100% of their principal investment.   The direct lenders' letter also informed Compass that they waived all other fees.

153.    On or about March 7, 2007, Compass knowingly and intentionally and in furtherance of the conspiracy to defraud direct lenders, sent a false and fraudulent letter through the United States mail to certain members of Plaintiff Standard Property, LLC, Plaintiff Mojave Canyon, Inc., and all other direct lenders in the Standard Property Loan, which sought the approval of 100% of the direct lenders in the Standard Property Loan to an agreement Compass reached with the Standard Property Borrower to pay off the Standard Property Loan.   According to that letter, the terms of the payoff included:

    a.    The Direct lenders in the loan receive 100% of their unpaid Standard Property Principal Balance;

    b.    The Direct lenders do not receive any accrued interest; and

    c.    Compass shall release the security interest against Standard Property's real property.

154.    Compass, its managers, and Silar were fully aware of the false, fraudulent, and misleading nature of this letter.   The letter was false, fraudulent, and misleading because Compass, its managers, and Silar did not tell the Standard Property Loan direct lenders about their continuing plan to take additional money from the Standard Property Borrower in a secret "side deal." Compass, its managers, and Silar knowingly made this side deal in order to avoid paying this money to Plaintiffs and other direct lenders, which was due and owing to them pursuant to the requirement in Section 4 of the Standard Property Note that all payment are to first be applied toward the

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   payment of accrued interest.  This letter was also false, fraudulent, and misleading because

2   Compass, its managers, and Silar did not tell the Standard Property Loan direct lenders that, as part

3   of its side deal, Compass, its managers, and Silar had agreed, collaborated, and conspired to have

4   the Standard Property Borrrower wire the additional, non-disclosed money directly to Silar.  Silar

5   knowingly and intentionally participated in this fraudulent scheme (as part of the conspiracy to

6   defraud direct lenders) in order to avoid Standard Property, LLC's, Plaintiff Mojave Canyon, Inc.'s,

7   and other direct lenders' rights to these funds and to collect money from the Standard Property Loan

8   behind direct lenders' backs.  Compass, its managers, and Silar knowingly hid this information from

9   members of Standard Property, LLC, Plaintiff Mojave Canyon, Inc., and other direct lenders in

10  order to induce them to agree to the payoff.

11       155.    In reliance on Compass's misrepresentations in the March 7, 2007 letter, members of

12  Plaintiff Standard Property, LLC and other direct lenders constituting 100% of the beneficial interest

13  in the Standard Property Loan approved the payoff in accordance with the specific terms of the

14  March 7, 2007 letter, *i.e.,* the letter that did not disclose the side payment.  Members of Plaintiff

15  Standard Property, LLC and other direct lenders did not agree to charging the Standard Property

16  Borrower any other fees, including default fees, and did not know that Compass was planning on

17  taking and Silar was planning on collecting these monies through a separate side deal with the

18  Standard Property Borrower.

19       156.    On or about March 13, 2007, USACM, Compass knowingly issued a Payoff

20  Statement letter to the Standard Property Borrower (the "Standard Property Payoff Statement"),

21  which required the Standard Property Borrower to make a payoff, as of March 15, 2007, in the

22  amount of $10,499,068.15 with a per diem interest accrual of $2,205.74 for every day after March

23  15, 2007.  The $10,499,068.15 payoff consisted of:

24           a.      Standard Property Principal Balance: $9,640,000.00

25           b.      Late Fees:      $47,394.43

26           c.      Other Fees:     $267,164.11

27           d.      Default Interest       $544,509.60

28

157.    The Standard Property Payoff Statement revealed that Compass had entered into a secret agreement with the Standard Property Borrower, undisclosed to the Standard Property Loan direct lenders, whereby Compass (and ultimately Silar) received late fees, other fees and default interest from the Standard Property Borrower, without collecting or distributing accrued regular contractual interest due and owing to the direct lenders.  This Payoff Statement also revealed that Compass, its managers, and Silar had agreed and conspired to direct the Standard Property Borrower to wire $859,068.14 directly to Silar.  The Payoff Statement showed the true nature of Compass's false, fraudulent, and misleading letter dated March 7, 2007.

158.    On or about March 15, 2007, the Standard Property Borrower paid off the Standard Property Loan pursuant to the terms of the Standard Property Payoff Statement.  The Standard Property Borrower complied with Compass's and Silar's direction and wired $859,068.14 directly to Silar.  This wire transfer is fraudulent because the funds should have been used to pay members of Plaintiff Standard Property, LLC, Plaintiff Mojave Canyon, Inc., and other direct lenders accrued interest pursuant to the loan documents and Loan Servicing Agreements.  Compass did not pay the direct lenders any of the accrued interest they were owed, but took the available funds for itself (and ultimately for Silar) as so-called default interest, late fees and "other fees" totaling $859,368.14.

### 14.   The 60th Street Venture Loan.

159.    In May 2007, the first lien holder on the 60th Street Venture property, Bank of America, notified a 60th Street Venture Loan direct lender that it was Bank of America's intention to foreclose on the property.  Because the 60th Street Venture Loan was in a second lien position, foreclosure would effectively extinguish the loan and any direct lender's investments.  Bank of America subsequently brought suit against all subordinate lien holders to place itself in a position to foreclose.  On information and belief, Compass and its managers (and Silar, as the true loan servicer) had full knowledge of the pending foreclosure and legal action, but did not inform Plaintiff 60th Street Venture Lenders, LLC ("60th Street Venture, LLC") or other direct lenders.

160.    Due to Compass's failure to respond to the 60th Street Venture Loan direct lender requests, some direct lenders raised a legal defense fund of approximately $5,000 which they used to acquire legal advice and representation.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

161.    Although the Bank of America lien was bought out by Silver Point Capital, Silver Point continued the litigation.  On June 6, 2007, a 60th Street Ventures Loan direct lender received an email from a representative at Silver Point stating that it was his belief that Chicago Title has been unable to secure any commitment from Compass to release the second mortgage on ten units in the 60th Street Ventures Loan.  The Silver Point representative explained that without such release, the sales of those ten units could not close, and therefore, the continuation and completion of the already filed foreclosure action was necessary.  Once again, the direct lender attempted to contact Compass and its managers.  Compass, in breach of its fiduciary duties, never responded.

**16.    The BarUSA Loan, Bay Pompano Loan, Castaic II Loan, Castaic III Loan, Copper Sage Loan, Fiesta Murietta Loan, Palm Harbor I Loan, and Tapia Ranch Loan.**

162.    In furtherance of their conspiracy to defraud the direct lenders, on information and belief, Compass, its managers (Blatt and Piskun), and Silar conspired and agreed to have the borrowers of the BarUSA Loan, Bay Pompano Loan, Castaic II Loan, Castaic III Loan, Copper Sage Loan, Fiesta Murietta Loan, Palm Harbor I Loan, and Tapia Ranch Loan wire loan payoff proceeds, portions of which are due and owing to Plaintiff BarUSA Lenders, LLC, Plaintiff Bay Pompano Lenders, LLC, Plaintiff Castaic Partners II Lenders, LLC, Plaintiff Castaic Partners III Lenders, LLC, Plaintiff Copper Sage II Lenders, LLC, Fiesta Murietta Lenders, LLC, Palm Harbor I Lenders, LLC, and Tapia Ranch Lenders, LLC and other direct lenders, directly to the Silar Account when these proceeds are paid out.  This Silar controlled account is an interest bearing account.  This agreement was reached with the intent and plan that Silar will keep these funds due and owing the Plaintiffs and other direct lenders for a period of time, enabling Silar to earn interest on monies it does not own.  Compass, its managers (Blatt and Piskun), and Silar have, upon information and belief, agreed that Silar will keep the interest earned for its own benefit and with the intent to deprive Plaintiffs and other direct lenders of these funds.

**F.    Other Wrongful Acts Of Defendants.**

163.    In addition to the many breaches of contract, fraud, breaches of fiduciary duty, and violations of Nevada law committed by Compass, Silar, Blatt, and Piskun, some examples of which

are described above, upon information and belief, Compass and its managers have also contacted one or more third parties, with whom many of the Plaintiffs have been engaged in negotiations for prospective financing of Plaintiffs' legal and operating expenses in connection with this matter. Compass's and its managers' actions were for the sole and wrongful purpose of interfering with such negotiations and damaging Plaintiffs' ability to secure such financing. These communications are wholly unjustified, malicious, and can serve no legitimate purpose, but are, in fact, an attempt to harm Plaintiffs.

## II.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Declaratory Relief Set Forth by All Plaintiffs Against Compass , Silar and/or Asset Resolution)

164.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 163 as though fully set forth herein.

165.   An actual, ripe, and justifiable controversy has arisen and now exists between Plaintiffs and Compass and/or Asset Resolution, as purported loan servicer(s), and between Plaintiffs and Silar, as actual loan servicer, as follows:

a.   Plaintiffs contend that Silar is their actual loan servicer pursuant to Compass's sale, transfer, and conveyance of all rights title and interests in the Purchased Assets to Silar, as well as Silar's foreclosure on Compass, and that Compass and/or Asset Resolution are the sub-servicer of the loans.  Compass, Silar, and Asset Resolution, however, contend that Compass and/or Asset Resolution are the ultimate servicer(s) of the loans and that Silar is merely Compass's and/or Asset Resolution's financier.

b.   Plaintiffs contend, pursuant to the Promissory Notes executed by the respective borrowers in favor of Plaintiffs and other direct lenders, that payments made by borrowers are first to be applied to accrued non-default rate interest and then to principal, and then to post-bankruptcy default interest and late fees, and that this priority may only be altered by the direct lenders in each loan.  Compass and/or Asset Resolution, however, contend that all payments by borrowers are first applied to pay Compass and Asset Resolution default interest, late fees, and other fees.

c.   Plaintiffs contend, pursuant to the Plan, that Compass and/or Asset Resolution are not entitled to default interest, late fees, or loan servicing fees that accrued prior to the sale of the Purchased Assets.  Compass and/or Asset Resolution, however, contend that they are entitled to default interest, late fees, and servicing fees, regardless of when accrued.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

d.  Plaintiffs contend, based upon Compass's and/or Asset Resolution's breaches of Loan Servicing Agreements, that Compass and/or Asset Resolution are not entitled to any compensation provided for in section 5 of the Loan Servicing Agreements.  Compass and/or Asset Resolution contends, however, that they have an absolute right to collect all fees described in section 5, regardless of when accrued, and irrespective of any conduct by Compass and/or Asset Resolution in breach of the Loan Servicing Agreements.

e.  Plaintiffs contend that a lender in a loan secured by real property has an absolute right to modify the terms of their Promissory Note and Deed of Trust to maximize their recovery, irrespective of the rights of any third-party loan servicer.  Compass and/or Asset Resolution contend, however, that Plaintiffs have no right to modify the terms of the Promissory Notes and Deeds of Trust with the third-party borrower.

f.  Plaintiffs contend that Compass, Silar and/or Asset Resolution must comply with Nevada laws pertaining to loan servicing.  Compass, Silar, and/or Asset Resolution however, contend that they are not required to comply with Nevada laws pertaining to loan servicing.

g.  Plaintiffs contend, pursuant to NEV. ADMIN. CODE § 645A.050, that Compass, Silar and/or Asset Resolution must remit payment of payoff proceeds to Plaintiffs within 30 days following the end of the month in which payment from the Borrower was collected.  Compass, Silar and/or Asset Resolution, however, as evidenced by the handling of the Clear Creek Plantation Loan and other loans, do not agree and do not believe they need to comply with § 645A.050.

h.  Plaintiffs contend that Compass, Silar and/or Asset Resolution, through their joint efforts, have violated NEV. REV. STAT. § 645B.175(4) by not depositing all money paid in full or in partial payment of a loan secured by a lien on real property into an account appropriately named to indicated that it does not belong to Compass and controlled by a person who is independent of the parties, Compass, Silar and/or Asset Resolution maintain, however, that they are under no obligation to abide by the requirements of § 645B.175(4).

i.  Plaintiffs contend that Compass, Silar and/or Asset Resolution are not authorized to retain interest earned on monies due and owing Plaintiffs and other direct lenders.  Compass, Silar and/or Asset Resolution, however, maintain that they are entitled to keep this interest even though it was earned on money that did not belong to either Compass, Silar and/or Asset Resolution.

j.  Plaintiffs contend, pursuant to NEV. REV. STAT. § 645B.185, that each direct lender was required to receive from Compass, Silar, and/or Asset Resolution a Mortgage Investment Disclosure Form, approved by the NMLD.  Plaintiffs have never received or signed a Mortgage Investment Disclosure Form, therefore, Plaintiffs have not received the required disclosures from Compass and/or Asset Resolution.  Upon information and belief, Compass, Silar and/or Asset Resolution contend they are under no obligation to abide by the requirements of § 645B.185.

k.  Plaintiffs contend that Compass, Silar and/or Asset Resolution have violated NEV. REV. STAT. § 645B.260 by failing to make monthly reports to the NMLD Commissioner and to Plaintiffs regarding loan delinquencies as required under the statute.  Upon information and belief, Compass, Silar

and/or Asset Resolution contend that they are not required to comply with § 645B.260 and provide required monthly reports.

l.    Plaintiffs contend, pursuant to NEV. REV. STAT. § 645B.330, that as a result of the maturity of various loans in the USACM portfolio and the fact that a single power of attorney has improperly been used as a basis to act for more than one loan, Compass and/or Asset Resolution no longer have a valid power of attorney to act on behalf of Plaintiffs on such loans.  Compass and/or Asset Resolution, however, maintain they still has the power and authority to act on Plaintiffs' behalf in serving their loans and continues to purport to act on Plaintiffs' behalf.

m.    Plaintiffs contend, pursuant to NEV. ADMIN. CODE § 645B.073, that Plaintiffs and other direct lenders have an absolute right to replace Compass and/or Silar and/or Asset Resolution as loan servicer in any loan, provided 51% of the beneficial interests of the Loan have made the decision to do so. Plaintiffs further contend they terminated Compass as servicer pursuant to this statute and/or the Loan Servicing Agreements in May 2007.  Compass and/or Asset Resolution contend, however, that they cannot be terminated as loan servicer based solely on NEV. ADMIN. CODE § 645B.073.

n.    Plaintiffs contend that they are entitled to terminate specific Loan Servicing Agreements with Compass and/or Asset Resolution by virtue of Compass's and/or Asset Resolution's actions and/or inactions, which breached the Loan Servicing Agreements.  Plaintiffs are informed and believe, however, that Compass and/or Asset Resolution contend Plaintiffs are not entitled to terminate the Loan Servicing Agreements.

o.    In the alternative, Plaintiffs contend that the Loan Servicing Agreements are void and/or voidable under Nevada law and/or general principles of contract law.  Compass and/or Asset Resolution, however, contend the Loan Servicing Agreements are enforceable across multiple loans.

p.    Upon information and belief, Plaintiffs contend that Compass and/or Silar and/or Asset Resolution may have violated other sections of the Nevada Revised Statutes and Administrative Code, which discovery may reveal.

166.    A determination of the disputes set forth in paragraph 161 above is necessary and appropriate at this time in order to resolve the adverse interests of Plaintiffs, on the one hand, and Compass, Silar, and Asset Resolution on the other hand.

## SECOND CLAIM FOR RELIEF

(Breach of Contract Set Forth By All Plaintiffs Against Compass, Silar and/or Asset Resolution)

167.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 166 as though fully set forth herein.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

168.   Plaintiffs have performed all of their obligations under the Loan Servicing Agreements, as well as all conditions precedent to the performance of Compass's, Silar's and/or Asset Resolution's obligations thereunder.

169.   Compass, as purported loan servicer, and Silar and/or Asset Resolution, as actual loan servicer(s), have breached and continue to breach the Loan Servicing Agreements by:

a.   failing to produce, keep, and maintain appropriate accounting records on each loan, as required by section 2(b) of the Loan Servicing Agreements;

b.   failing to provide the direct lenders with regular statements setting forth the status of each loan, as required by section 2(d) of the Loan Servicing Agreements;

c.   failing to pay accrued interest on loans to Plaintiffs as contractually required as and when collected from the borrowers;

d.   failing to communicate certain offers made by borrowers to repay their loans to the direct lenders;

e.   negotiating with borrowers on terms favorable to their own interests, and to the substantial detriment of Plaintiffs;

f.   misrepresenting the status of loans to Plaintiffs;

g.   taking funds from borrowers that were available to pay accrued interest on loans to Plaintiffs, to pay to themselves default interest, late fees and other fees instead;

h.   applying principal and interest payments made by borrowers to pay themselves so-called "loan origination" fees;

i.   striking secret deals with borrowers, pursuant to which Compass and/or Silar have received undisclosed payments from borrowers, when Plaintiffs and other direct lenders have not first received payment in face of principal and accrued regular interest from borrowers;

j.   failing to diligently collect all payments due, as required by section 2(c)(i) of the Loan Servicing Agreements;

k.   failing to promptly pay Plaintiffs principal and accrued regular interest, as required by section 2(c)(i) of the Loan Servicing Agreements;

l.   failing to use their business judgment to fully protect the interest of the direct lenders, as required by section 2(c)(ii) of the Loan Servicing Agreements;

m.   failing to protect the direct lenders' interests, as required by Section 11 of the Loan Servicing Agreements;

n.   failing to insure ad valorem property taxes are paid current on property securing the respective loans; and

o.   failing to comply with Nevada law as set forth herein.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

170.    Compasss, Silar and/or Asset Resolution have also breached, and continue to breach, the Loan Servicing Agreements, which are expressly governed by Nevada law, because neither Compass, Silar nor Asset Resolution is licensed as a mortgage broker/agent in Nevada in fact and Compass has been ordered by the State of Nevada to cease and desist the performance of its obligations under the Loan Servicing Agreements.   Therefore, Compass, Silar and/or Asset Resolution are unable lawfully to perform their required services under the Loan Servicing Agreements, which inability and failure are also breaches of the Agreements.

171.    As a result of Compass's, Silar's and/or Asset Resolution's breaches of the Loan Servicing Agreements enumerated above, each of the Plaintiffs seeks damages for the breach(es) of the specific Loan Servicing Agreement(s) applicable to each Plaintiff with respect to such Plaintiff's loan in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Set Forth by All Plaintiffs Against All Defendants)

172.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 171 as though fully set forth herein.

173.    Compass and/or Asset Resolution, as purported loan servicers their managers (including Blatt and Piskun) and Silar, as actual loan servicer, owe a fiduciary duty to Plaintiffs under the Loan Servicing Agreements.

174.    Compass, Asset Resolution, Blatt, Piskun, and Silar breached their fiduciary duties to Plaintiffs by:

      a.    failing to produce, keep, and maintain appropriate accounting records on each loan;

      b.    failing to provide the direct lenders with regular statements setting forth the status of each loan;

      c.    failing to pay accrued interest on loans to Plaintiffs as contractually required as and when collected from the borrowers;

      d.    failing to communicate certain offers made by borrowers to repay their loans to the direct lenders;

      e.    negotiating with borrowers on terms favorable to their own interests, and to the substantial detriment of Plaintiffs;

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

f.    misrepresenting the status of loans to Plaintiffs;

g.    taking funds from borrowers that were available to pay accrued interest on loans to Plaintiffs, to pay to themselves default interest, late fees and other fees instead;

h.    applying principal and interest payments made by borrowers to pay themselves so-called "loan origination" fees;

i.    striking secret deals with borrowers, pursuant to which Compass and/or Silar have received undisclosed payments from borrowers, when Plaintiffs and other direct lenders have not first received payment in face of principal and accrued regular interest from borrowers;

j.    failing to diligently collect all payments due;

k.    failing to promptly pay Plaintiffs principal and accrued regular interest;

l.    failing to use their business judgment to fully protect the interest of the direct lenders;

m.    failing to protect the direct lenders' interests;

n.    failing to insure ad valorem property taxes are paid current on property securing the respective loans;

o.    claiming entitlement to pre-bankruptcy interest and fees which it did not receive from USACM or FTDF; and

p.    failing to comply with Nevada law as set forth herein.

175.    As a result of Compass, Asset Resolution, and their managers (including Blatt and Piskun), and Silar breaching their fiduciary duties to Plaintiffs, each of the Plaintiffs seek redress in connection with the specific breach(es) of fiduciary duty applicable to each Plaintiff with respect to such Plaintiff's loan in an amount to be proven at trial in this matter.

## FOURTH CLAIM FOR RELIEF

### (Breach of the Implied Covenants of Good Faith and Fair Dealing
### Set Forth by All Plaintiffs Against Compass, Silar and/or Asset Resolution)

176.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 175 as though fully set forth herein.

177.   Compass and Asset Resolution, as purported loan servicers, and Silar, as actual loan servicer, owe(d) Plaintiffs a duty of good faith and fair dealing arising from the Loan Servicing Agreement.

178.   Plaintiffs imposed a special element of reliance on Compass, Silar and/or Asset Resolution as their loan servicer(s).  Compass, Silar and/or Asset Resolution stand in a superior and entrusted position, particularly when negotiating the payoff of the loans and in performing all other services under the Loan Servicing Agreements.

179.   Compass, Silar and/or Asset Resolution breached the duty of good faith and fair dealing they owed to Plaintiffs by:

a.   failing to produce, keep, and maintain appropriate accounting records on each loan;

b.   failing to provide the direct lenders with regular statements setting forth the status of each loan;

c.   failing to pay accrued interest on loans to Plaintiffs as contractually required as and when collected from the borrowers;

d.   failing to communicate certain offers made by borrowers to repay their loans to the direct lenders;

e.   negotiating with borrowers on terms favorable to their own interests, and to the substantial detriment of Plaintiffs;

f.   misrepresenting the status of loans to Plaintiffs;

g.   taking funds from borrowers that were available to pay accrued interest on loans to Plaintiffs, to pay to themselves default interest, late fees and other fees instead;

h.   applying principal and interest payments made by borrowers to pay themselves so-called "loan origination" fees;

i.   striking secret deals with borrowers, pursuant to which Compass and/or Silar have received undisclosed payments from borrowers, when Plaintiffs and other direct lenders have not first received payment in face of principal and accrued regular interest from borrowers;

j.   failing to diligently collect all payments due;

k.   failing to promptly pay Plaintiffs principal and accrued regular interest;

l.   failing to use their business judgment to fully protect the interest of the direct lenders;

m.   failing to protect the direct lenders' interests;

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

n.      failing to insure ad valorem property taxes are paid current on property securing the respective loans;

o.      claiming entitlement to pre-bankruptcy interest and fees which it did not receive from USACM or FTDF; and

p.      failing to comply with Nevada law as set forth herein.

180.    As a result of Compass's, Silar's and/or Asset Resolution's breaches of the implied covenants of good faith and fair dealing, each of the Plaintiffs seek redress in connection with the specific breach(es) applicable to each Plaintiff with respect to such Plaintiff's loan in an amount to be proven at trial as a result of Compass, Silar and/or Asset Resolution breaching the duty of good faith and fair dealing.

## **FIFTH CLAIM FOR RELIEF**

**(Constructive Fraud Set Forth by Cabernet Highlands Lenders, LLC, Clear Creek Plantation Lenders, LLC, The Gardens Timeshare Lenders, LLC, La Hacienda Lenders, LLC, Lerin Hills Lenders, LLC, Shamrock Tower Lenders, LLC, Standard Property Holdings Lenders, LLC, Mojave Canyon Inc., and Robert J. Kehl & Ruth Ann Kehl Against All Defendants)**

181.    Plaintiffs reallege and incorporates by reference each and every allegation contained in paragraphs 1 through 180 as though fully set forth herein.

182.    Compass and Asset Resolution, as purported loan servicers, their managers (including Blatt and Piskun), and Silar, as actual loan servicer, owed Plaintiffs legal and equitable duties arising from their fiduciary and confidential relationship.

183.    Compass, Asset Resolution, their managers (including Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer(s) Compass and/or Asset Resolution) breached their duties to Plaintiffs by misrepresenting the actual negotiated terms of loan payoffs and by misrepresenting their entitlement to receive a calculated portion thereof.

184.    Compass, Asset Resolution, their managers (including Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer(s) Compass and/or Asset Resolution) breached their duties to Plaintiffs by concealing or misrepresenting material terms of the loan payoffs from Plaintiffs .

185.    Compass, Asset Resolution, their managers (including Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer(s) Compass and/or Asset Resolution) breached its

duties to Plaintiffs by misrepresenting the terms and/or amounts of payoff offers made by borrowers and third party buyers.

186.   Compass, Asset Resolution, their managers (including Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer(s) Compass and/or Asset Resolution) breached their duties to Plaintiffs by concealing or misrepresenting the terms and/or amounts of payoff offers made by borrowers and third party buyers.

187.   Compass and Silar breached their duties to Plaintiffs by concealing the fact that they have earned and kept for themselves interest on monies due and owing to Plaintiffs while such monies are in the possession of Compass and Silar.

188.   Plaintiffs have suffered damages in an amount to be proven at trial as a result of the constructive fraud by Compass, Asset Resolution, their managers, and Silar as set forth herein.

## <u>SIXTH CLAIM FOR RELIEF</u>

<u>(Fraudulent Misrepresentation Set Forth by Clear Creek Plantation Lenders, LLC, Fox Hills 216 Lenders, LLC, Shamrock Tower Lenders, LLC, Standard Property Holdings, LLC, Mojave Canyon Inc., Robert A. Kehl & Tina M. Kehl, Robert J. Kehl & Ruth Ann Kehl, and Kevin McKee Against All Defendants)</u>

189.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 188 as though fully set forth herein.

190.   Compass, Asset Resolution, as purported loan servicers, their managers (including Blatt and Piskun), and/or Silar, as actual loan servicer, have made material false representations to Plaintiffs and/or have failed to disclose material facts as set forth above in connection with proposed resolutions of the Standard Property Loan, the Clear Creek Plantation Loan, the Shamrock Tower Loan, and the Fox Hills 216 Loan.

191.   Compass, Asset Resolution, their managers (including Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer(s) Compass and/or Asset Resolution) knew or believed that their representations regarding the negotiated terms of settlement proposals and third party buyout offers referenced above were false.

192.   Compass, Asset Resolution, their managers (including Blatt and Piskun), and/or Silar (through the acts or omissions of its subservicer(s) Compass and/or Asset Resolution) intended to

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  induce Plaintiffs to act upon their misrepresentations by approving the settlement proposals or

2  accepting the third party buyout offers.

3      193.    Plaintiffs justifiably relied on these misrepresentations and/or nondisclosures and, in

4  some cases, approved settlement proposals or buyout offers, such as the Standard Property Loan

5  settlement proposal and Shamrock Tower Loan buyout offer, in reliance upon such

6  misrepresentations and/or nondisclosures.

7      194.    As a result of Compass's, Asset Resolution's, their managers' (including Blatt and

8  Piskun), and Silar's fraudulent misrepresentations and/or nondisclosures, Plaintiffs have suffered

9  damages in an amount to be proven at trial.

10  **SEVENTH CLAIM FOR RELIEF**

11  (Conversion Set Forth by Cabernet Highlands Lenders, LLC, Clear Creek Plantation Lenders, LLC,
La Hacienda Lenders, LLC, Standard Property Holdings Lenders, LLC, Mojave Canyon Inc.,
12  Robert J. Kehl & Ruth Ann Kehl Against All Defendants)

13      195.    Plaintiffs reallege and incorporate by reference each and every allegation contained

14  in paragraphs 1 through 194 as though fully set forth herein.

15      196.    Compass, Silar, and/or Asset Resolution have wrongfully and knowingly exerted

16  dominion and control over loan proceeds which belong to Plaintiffs and other direct lenders,

17  including, but not limited to the proceeds from borrower payments involving the Standard Property

18  Loan, Clear Creek Plantation Loan, La Hacienda Loan, Cabernet Highlands LLC Loan.

19      197.    For example, Compass, Silar, and/or Asset Resolution agreed to have the borrowers

20  of these and other loans wire payoff proceeds, portions of which were due and owing to Plaintiffs

21  and other direct lenders, directly to the Silar Account.  Silar kept these funds due and owing

22  Plaintiffs, and other direct lenders, for substantial periods of time, earning interest on monies it did

23  not own.  On more than one occasion, Silar transferred such funds to the Compass/Asset

24  Resolution-controlled Maximizer Account which Silar knew also earned interest.  Compass and/or

25  Asset Resolution retained these funds in the Maximizer Account for a period of time, and then

26  transferred monies due and owing Plaintiffs and other direct lenders (sans interest earned) to the

27  Disbursement Account.  Compass then remitted payment to Plaintiffs and other direct lenders from

28  the Disbursement Account.  Both Compass, Silar Compass, Silar, and/or Asset Resolution kept the

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   interest earned on the monies due and owing Plaintiffs and other direct lenders for their own benefit

2   with the intent to deprive Plaintiffs of these funds all without the knowledge or consent of the

3   adversely affected Plaintiffs.

4        198.    Compass's, Asset Resolution's and/or Silar's taking of Plaintiffs' loan proceeds and

5   interest earned on money belonging to Plaintiffs is inconsistent with, and in derogation, exclusion

6   and defiance of, Plaintiffs' right, title and interest in those proceeds and earned interest.

7        199.    As a result of Compass's, Asset Resolution's and/or Silar's conversion of Plaintiffs

8   loan proceeds and interest earned, Plaintiffs have suffered damages in an amount to be proven at

9   trial.

10   ## EIGHTH CLAIM FOR RELIEF

11   (Civil Conspiracy Set Forth by BarUSA Lenders, LLC, Bay Pompano Lenders, LLC, Cabernet
Highlands Lenders, LLC, Castaic Partners II Lenders, LLC, Castaic Partners III Lenders, LLC, Clear
12   Creek Plantation Lenders, LLC, Copper Sage II Lenders, LLC, Fiesta Murrieta Lenders, LLC, La
Hacienda Lenders, LLC, Palm Harbor One Lenders, LLC, Shamrock Towers Lenders, LLC,
13   Standard Property Holdings Lenders, LLC, Tapia Ranch Lenders, LLC, Charles B. Anderson Trust,
Rita O. Anderson Trust, Mojave Canyon Inc., Warren Hoffman Family Investments, LP, Patrick J.
14   Anglin, Judy Bonnet, Christina M. Kehl, Daniel J. Kehl, Robert J. Kehl & Ruth Ann Kehl, Robert
A. Kehl & Tina M. Kehl, Kevin Kehl, Kevin Kehl as Guardian of Andrew Kehl, Kevin Kehl as
15   Guardian of Susan Kehl, Krystina L. Kehl, and Cynthia Winter Against All Defendants)

16        200.    Plaintiffs reallege and incorporate by reference each and every allegation contained

17   in paragraphs 1 through 199 as though fully set forth herein.

18        201.    Upon information and belief, Silar had knowledge of and participated in the

19   formation of Compass's (and subsequently Asset Resolution's) business plan and objective to

20   maximize loan fees, despite any harm to Plaintiffs, when it financed Compass's purchase of the

21   USACM assets and rights (which were subsequently sold to Silar).

22        202.    Compass, Asset Resolution, their managers (including Blatt and Piskun), and Silar

23   had knowledge of Plaintiffs' rights to loan proceeds paid by borrowers per their obligations under

24   the Promissory Notes when default interest, late fees, and other fees were charged to lenders and

25   when they directed the loan proceeds to themselves and away from Plaintiffs.

26        203.    Additionally, Compass, Asset Resolution, their managers (including Blatt and

27   Piskun), and/or Silar had knowledge of and agreed to have borrowers of certain loans wire payoff

28   proceeds, portions of which were due and owing to certain Plaintiffs and other direct lenders,

directly to the Silar Account.  At times, Silar would transfer these funds to the Compass/Asset Resolution-controlled Maximizer Account which Silar knew also earned interest.  Both Compass, Asset Resolution and/or Silar kept the interest earned on the monies due and owing Plaintiffs, and other direct lenders, with the intent to deprive them of these funds.

204.    Compass and/or Asset Resolution, through their managers (including Blatt and Piskun), and together with Silar, worked in concert and with the intent to deprive Plaintiffs of proceeds from certain loan payoffs, as well as to deprive Plaintiffs of other loan payments and interest earned, contrary to the rights of Plaintiffs.

205.    Blatt and Piskun, the principals and beneficiaries of Compass, formed and operated Compass, facilitated by the financing provided by Silar, for the purpose of conducting activities prohibited by Nevada law and detrimental to Plaintiffs.

206.    Compass, Asset Resolution, Piskun, Blatt, and Silar, by acting in concert, knowingly intended to accomplish Compass's and/or Asset Resolution's business plan, including unlawful objectives (as detailed above and incorporated herein), for the purpose of benefiting themselves, individually and collectively, and with the knowledge of, and disregard for, the fact that they were harming Plaintiffs.

207.    Plaintiffs have suffered damages, in an amount to be proven at trial, resulting from the concerted acts of Compass, Asset Resolution, Blatt, Piskun, and Silar.

## NINTH CLAIM FOR RELIEF

(Constructive Trust Requested by All Plaintiffs Against Compass, Silar and Asset Resolution)

208.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 207 as though fully set forth herein.

209.    Compass and Asset Resolution, as purported loan servicers, and Silar, as actual loan servicer, owe(d) fiduciary and other duties constituting a confidential relationship with Plaintiffs. Additionally, Silar has knowledge of Compass's and Asset Resolution's heightened relationship

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1  with Plaintiffs and, by obtaining, controlling, and retaining loan proceeds due and owing to

2  Plaintiffs, Silar has placed itself in a position of trust and confidence with Plaintiffs.

3      210.   Compass, Silar Compass, Silar, and/or Asset Resolution have inequitably taken,

4  retained, and/or controlled loan proceeds belonging to Plaintiffs.   These actions are against

5  Plaintiffs' rights.

6      211.   Plaintiffs have suffered damages resulting from Compass, Silar and/or Asset

7  Resolution improperly taking, retaining, and controlling loan proceeds belonging to Plaintiffs.

8      212.   To the extent that Compass, Silar and/or Asset Resolution have received loan

9  proceeds or other funds rightfully belonging to Plaintiffs, their retention of the loan proceeds would

10  be inequitable and the imposition of a constructive trust is essential to effectuate justice and to

11  ensure the protection of Plaintiffs' rights in and to those proceeds.

### III.

### DEMAND FOR JURY TRIAL

213.   Plaintiffs assert their right under the Seventh Amendment to the U.S. Constitution

and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

### IV.

### PRAYER FOR RELIEF

214.   WHEREFORE, Plaintiffs respectfully request judgment as follows:

a.   For a declaration by this Court that Silar is the actual servicer of the Loans and that Compass and/or Asset Resolution is, in fact, Silar's subservicer of the Loans;

b.   For a declaration by this Court that payments made by borrowers on loans shall first be applied to accrued, non-default interest, then to principal, and then to accrued, post-bankruptcy default interest and late fees (pre-bankruptcy default interest and late fees were waived in the Confirmation Order) if collected, subject only to the rights of the direct lenders on a specific loan to designate a different sequence of payment;

c.   For a declaration by this Court that neither Compass, Silar nor Asset Resolution is entitled to default interest, late fees, and servicing fees prior to the sale of the Purchased Assets;

d.   For a declaration by this Court that Compass and/or Asset Resolution is not entitled to any compensation under section 5 of the Loan Servicing Agreements;

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

e.   For a declaration by this Court that Plaintiffs and other direct lenders have an absolute right to modify the terms of their Promissory Notes and Deeds of Trust with borrowers to maximize their recovery;

f.   For a declaration by this Court that Compass, Silar and Asset Resolution must comply with Nevada laws pertaining to loan servicing.

g.   For a declaration by this Court that Compass, Silar and or Asset Resolution must remit payment of payoff proceeds to Plaintiffs within 30 days following the end of the month in which payment from the Borrower was collected as required by NEV. REV. STAT. § 645A.050.

h.   For a declaration by this Court that Compass, Silar and/or Asset Resolution must deposit all money paid in full or partial payment of a loan secured by a lien on real property into an account appropriately named to indicate that it does not belong to Compass or Silar as required by NEV. REV. STAT. § 645B.175(4).

i.   For a declaration that Compass, Silar and or Asset Resolution may not retain interest earned on monies due and owing to Plaintiffs and direct lenders, but must distribute this money on a pro rata basis to the Plaintiffs and direct lenders to whom it is owed.

j.   For a declaration by this Court that Compass, Silar and/or Asset Resolution must make the disclosures required by NEV. REV. STAT. § 645B.185;

k.   For a declaration that Compass, Silar and/or Asset Resolution have failed to make monthly reports to the NMLD Commissioner and Plaintiffs and other direct lenders regarding loan delinquencies as required by NEV. REV. STAT. § 465B.260.

l.   For a declaration by this Court that Compass and/or Asset Resolution does not have a valid power of attorney to act on behalf of Plaintiffs on such Loans;

m.   For a declaration by this Court that Plaintiffs, together with other direct lenders making up 51% of the beneficial interests of any loan, have the absolute right under NEV. ADMIN. CODE § 645B.073 and the Loan Servicing Agreements to terminate Compass as loan servicer for each loan to designate a new loan servicer or loan servicers to service the loans and properly exercised that right in May 2007;

n.   For a declaration by this Court that Compass's and/or Asset Resolution's actions and omissions described above constitute breaches of the Loan Servicing Agreements and violations of Compass's fiduciary duty to Plaintiffs so as to render the Loan Servicing Agreements terminated with respect to Compass's and/or Asset Resolution's rights pertaining to all loans in which Plaintiffs are direct lenders;

o.   In the alternative, for a declaration by this Court that all Loan Servicing Agreements provisions specifically relating to Compass's and/or Asset

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

Resolution's  right to service the loans are void and/or voidable under Nevada law and/or general principles of contract enforcement;

p.      For an award of actual damages against Compass in an amount in excess of $75,000, to be proven at trial in this matter;

q.      For an award of actual damages against Silar in an amount in excess of $75,000, to be proven at trial in this matter;

r.      For an award of actual damages against Blatt in an amount in excess of $75,000, to be proven at trial in this matter;

s.      For an award of actual damages against Piskun in an amount in excess of $75,000, to be proven at trial in this matter;

t.      For an award of actual damages against Asset Resolution in an amount in excess of $75,000, to be proven at trial in this matter;

u.      For an award of punitive damages against all Defendants in an amount to be determined by the jury;

v.      For the imposition of a constructive trust on funds received by Compass, Silar and/or Asset Resolution to which they are not so entitled;

w.      For an award of Plaintiffs' reasonable attorneys' fees;

x.      For costs of suit incurred herein; and

y.      For such other and further relief, whether at law or in equity, as this Court deems just and proper.

DATED: August _____, 2009

        BICKEL & BREWER

        LISA A. RASMUSSEN

        JONES VARGAS

        By:      _____/s/ Janet L. Chubb_____
            JANET L. CHUBB, ESQ.
            LOUIS M. BUBALA III, ESQ.

        Attorneys for the Direct Lenders named above

3RD AMENDED COMPLAINT

1

2    Edwin E. Arnold                                    Ronald G. Gardner
     Harriet Bender, Trustee                            Hartmann Trust 1997
3    Robert B. and Paula S. Bender                      Diane H. Higgins
     Peter & Deidre Capone, JTWROS                      Milton P. Kaplan M.D. Profit Sharing Plan
4    Tracy Cavin Family Trust                           G. Robert & Christina G. Knoles
     Bernard Cohen                                      Reneé Leff-Kaplan
5    Gareth A.R. Craner Trustee of the Gareth           Jospeh E. Mele
     A.R. Craner Trust                                  Don D. Meyer and Dennis E. Hein
6    George A. DiGioio                                  Wesley L. & Jeannie M. Monroe, JTWROS
     Doyle Family Trust                                 Daniel D. Newman
7    Charles B. Dunn, IV Trustee                        Robert L. Ogren Trust
     William F. Dupin                                   Robert A. Schell
8    Ellis L. Elgart & Sivia V. Elgart Trustees for    Michael Shubic
     the Ellis L. Elgart Revocable Living Trust         Robert Speckert
9    dated 7/08/02                                      Robert and Nancy Turner
     Sagrario  T. Evers                                 Nancy and Kenneth Zawacki
10   Farrah Family Trust 9/17/03
     Seymour Frank
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

## CERTIFICATE OF SERVICE

1.    On August _____, 2009, I served the following document(s):

**THIRD AMENDED COMPLAINT FOR DECLARATORY RELIEF,
INJUNCTIVE RELIEF, AND DAMAGES**

**JURY DEMAND**

2.    I served the above-named document(s) by the following means to the persons as listed below:

■    a.    **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

- **Joshua S. Akbar**
  jakbar@sonnenschein.com
- **Mark Albright**
  gma@albrightstoddard.com
- **Lindsy Nicole Alleman**
  lalleman@fulbright.com
- **Michael W. Anglin**
  anglin@fulbright.com
- **Patrick Anglin**
  tbw@jonesvargas.com
- **Reid L Ashinoff**
  rashinoff@sonnenschein.com
- **Anthony W. Austin**
  aaustin@lrlaw.com
- **Baltes Company**
  tbw@jonesvargas.com
- **Judy A. Bonnet**
  tbw@jonesvargas.com
- **Georganne Bradley**
  georganne.bradley@bullivant.com,mary.opatrny@bullivant.com
- **Andrew M. Brumby**
  abrumby@shutts-law.com
- **Louis Martin Bubala , III**
  lbubala@jonesvargas.com,bcopeland@jonesvargas.com
- **Donna Cangelosi**
  mail@asmithlaw.com
- **Donna Cangelosi**
  mail@asmithlaw.com
- **Candace C. Carlyon**
  ccarlyon@sheacarlyon.com,ltreadway@sheacarlyon.com,manthony@sheacarlyon.com,rmsmith@sheacarlyon.com,pdriscoll@sheacarlyon.com
- **Rob Charles**
  RCharles@LRLaw.com,cjordan@lrlaw.com

- **Janet L. Chubb**
  tbw@jonesvargas.com
- **Terry A. Coffing**
  tcoffing@marquisaurbach.com,smong@marquisaurbach.com
- **Jamie S Cogburn**
  jsc@cogburnlaw.com,ch@cogburnlaw.com
- **Kristin H. Cogburn**
  KHC@COGBURNLAW.COM
- **Compass Financial Partners LLC**
  georganne.bradley@bullivant.com
- **Compass USA SPE LLC**
  georganne.bradley@bullivant.com
- **Robert P Cummins**
  rpc@cumminslawfirm.com
- **Louis A. Curcio**
  LCurcio@sonnenschein.com,jakbar@sonnenschein.com,JForstot@sonnenschein.com,CAlbanese@sonnenschein.com,rashinoff@sonnenschein.com,kpettapiece@sonnenschein.com,Fitzmaurice@sonnenschein.com
- **Kevin A. Darby**
  kevin@darbylawpractice.com
- **Laurel E. Davis**
  ldavis@fclaw.com,mhurtado@fclaw.com
- **Allan B Diamond**
  adiamond@diamondmccarthy.com
- **Direct Lenders**
  mail@asmithlaw.com
- **Craig S Dunlap**
  cdunlap@fclaw.com
- **Brent C Eckersley**
  beckersley@halelane.com
- **Thomas H. Fell**
  usdcnotices@gordonsilver.com
- **Elizabeth Fielder**
  efielder@jonesvargas.com
- **Arley D Finley , III**
  tfinley@diamondmccarthy.com
- **Patrick Fitzmaurice**
  fitzmaurice@sonnenschein.com,yzitelli@sonnenschein.com
- **Jonathan D Forstot**
  jforstot@tpw.com
- **Louis E Garfinkel**
  law@lgkattorneys.com,dstrawder@lgkattorneys.com
- **Gregory E. Garman**
  usdcnotices@gordonsilver.com
- **Wade B Gochnour**
  WBG@h2law.com,bd@h2law.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

- **Gerald M. Gordon**
  gmg@gordonsilver.com
- **Talitha B. Gray**
  usdcnotices@gordonsilver.com
- **Peter W. Guyon**
  pguyon@yahoo.com
- **Joseph P. Hardy**
  jhardy@gordonrees.com,mtwist@gordonrees.com,wdanhieux@gordonrees.com
- **Brigid M. Higgins**
  usdcnotices@gordonsilver.com
- **Randolph L. Howard**
  rhoward@klnevada.com,ckishi@klnevada.com,usdistrict@klnevada.com
- **C. Stanley Hunterton**
  shunterton@huntertonlaw.com,janallen@huntertonlaw.com
- **Annette W. Jarvis**
  ajarvis@rqn.com
- **Erin E Jones**
  ejones@diamondmccarthy.com
- **Spencer M Judd**
  sjudd@albrightstoddard.com
- **Lindsay S Katz**
  lkatz@tpw.com
- **Kehl Development Corporation**
  tbw@jonesvargas.com
- **Dean T Kirby**
  dkirby@kirbymac.com,gsparks@kirbymac.com
- **Joanna S. Kishner**
  joanna.kishner@dlapiper.com,usdclv@dlapiper.com,darhyl.kerr@dlapiper.com
- **Mitchell J. Langberg**
  mlangberg@bhfs.com,orodriguez@bhfs.com
- **Cynthia J. Larsen**
  clarsen@orrick.com,wpeters@orrick.com
- **Kent F Larsen**
  kfl@slwlaw.com,cld@slwlaw.com
- **Anne M Loraditch**
  lvlitdock@gtlaw.com,loraditcha@gtlaw.com,koisp@gtlaw.com
- **Eric D Madden**
  emadden@diamondmccarthy.com
- **Kevin McKee**
  tbw@jonesvargas.com
- **Pamela McKee**
  tbw@jonesvargas.com
- **Richard McKnight**
  rmcknight@lawlasvegas.com,gkopang@lawlasvegas.com,mmcalonis@lawlasvegas.com,dmincin@lawlasvegas.com,cburke@lawlasvegas.com
- **McKnight 2000 Family Trust dated 4/20/00**
  rmcknight@lawlasvegas.com

3RD AMENDED COMPLAINT

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- **Jeanette E. McPherson**
  usdcfilings@s-mlaw.com
- **Shawn W. Miller**
  smiller@sheacarlyon.com,ltreadway@sheacarlyon.com,rmsmith@sheacarlyon.com,aboehmer@sheacarlyon.com
- **Douglas M. Monson**
  dmonson@rqn.com
- **Peter D. Navarro**
  pnavarro@klnevada.com,dhoule@klnevada.com
- **Nikoll Nikci**
  Nik@schwartzlawyers.com,ecf@schwartzlawyers.com,sam@schwartzlawyers.com
- **Henry H. Oh**
  henry.oh@dlapiper.com
- **Bobby L. Olson**
  olsonb@gtlaw.com,koisp@gtlaw.com,lvlitdock@gtlaw.com,jenkinsm@gtlaw.com
- **Christine Pajak**
  cpajak@stutman.com
- **Andrew M Parlen**
  aparlen@stutman.com
- **Stanley W Parry**
  parrys@ballardspahr.com,waltons@ballardspahr.com
- **Jon T Pearson**
  jpearson@fclaw.com
- **William Pletcher**
  wpletcher@milbank.com
- **Norlynn B. Price**
  nprice@fulbright.com,cchiasson@fulbright.com
- **Lisa A Rasmussen**
  lisa@lrasmussenlaw.com,Tamika@lrasmussenlaw.com,Secretary@lrasmussenlaw.com,Sarah@lrasmussenlaw.com
- **Samuel A. Schwartz**
  sam@schwartzlawyers.com
- **Lenard E. Schwartzer**
  usdcfilings@s-mlaw.com
- **James Patrick Shea**
  bankruptcyfilings@sheacarlyon.com
- **Shlomo S. Sherman**
  ssherman@sheacarlyon.com,ltreadway@sheacarlyon.com,swinder@sheacarlyon.com,manthony@sheacarlyon.com,rmsmith@sheacarlyon.com
- **Betty M. Shumener**
  betty.shumener@dlapiper.com
- **Alan R Smith**
  Mail@asmithlaw.com,turk@asmithlaw.com,marsh@asmithlaw.com
- **Stephanie O. Sparks**
  sos@hogefenton.com
- **John D. Spurling**
  john.spurling@dlapiper.com

- **Steven C. Strong**
  sstrong@rqn.com
- **Jeffrey R Sylvester**
  jeff@sylvesterpolednak.com,jsylvester@sylvesterpolednak.net
- **The Lenders Protection Group**
  mail@asmithlaw.com
- **Warren Hoffman Family Investments, LP**
  tbw@jonesvargas.com
- **Gabriel M Weaver**
  gweaver@milbank.com
- **Gregory L Wilde**
  feddc@wildelaw.com
- **Cynthia Winter**
  tbw@jonesvargas.com
- **Michael Yoder**
  myoder@diamondmccarthy.com
- **Matthew C Zirzow**
  usdcnotices@gordonsilver.com

9    b.    **United States mail, postage fully prepaid** (list persons and addresses):

9    c.    **Personal Service** (list persons and addresses):
           I personally delivered the document(s) to the persons at these addresses:

9    d.    **By direct email (as opposed to through the ECF System**) (list persons and email addresses):

9    e.    **By fax transmission** (list persons and fax numbers):

9    f.    **By messenger**:

I declare under penalty of perjury that the foregoing is true and correct.

DATED this ___ day of August, 2009.

_____          _____/s/_____
Name                                       Signature
_____

Jones Vargas
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177