UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | 2:07-cv-00892-RCJ-GWF |
| USA COMMERCIAL MORTGAGE CO., | ) | |
| | ) | |
| Debtor, | ) | **ORDER** |
| | ) | |
| | ) | |

This case arises out of the attempts of certain direct lenders to terminate a bankrupt entity and its assigns—one of whom is now itself bankrupt—as loan servicers. On June 9, 2010, the Court issued two orders ruling on nine motions for summary judgment, a motion to dismiss, and two motions to compel. (*See* ECF Nos. 1819, 1820). Pending before the Court are two motions to reconsider those orders in part or to certify the questions for interlocutory appeal under 28 U.S.C. § 1292(b). (*See* ECF Nos. 1840, 1841). For the reasons given herein, the Court denies the motions.

**I.    FACTS AND PROCEDURAL HISTORY**

USA Commercial Mortgage Co. ("USA Commercial") was a loan servicing company that went bankrupt. The present case is an adversary proceeding arising out of that bankruptcy. At an auction pursuant to USA Commercial's bankruptcy proceedings, Compass USA SPE, LLC ("Compass") purchased USA Commercial's interest in thousands of Loan Servicing Agreements ("LSA"). Those LSAs were contracts between USA Commercial and various financial institutions and individuals ("Direct Lenders") that had lent money for the purchase of commercial real estate.

The LSAs gave USA Commercial the right to administer the loans on behalf of the Direct Lenders. Silar Advisors, LP and Silar Special Opportunities Fund, LP (collectively, "Silar") financed Compass' purchase of the LSAs, retaining a security interest in the LSAs. Silar later assigned the loan and corresponding security interest in the LSAs to Asset Resolution LLC ("Asset Resolution"), an entity created and owned by Silar for this purpose. Asset Resolution eventually foreclosed on the LSAs.

Certain Direct Lenders subsequently formed various companies ("the LLCs"), who along with the Jones Vargas Direct Lenders sued Compass in this Court to determine their rights and obligations under the LSAs and for various torts. Asset Resolution and Silar intervened, and soon thereafter they filed an Amended Answer to the Second Amended Complaint and Asset Resolution, LLC's Counterclaims. (#912). Those counterclaims, brought against approximately sixty-five Counterdefendants, (*see id.* at 22–23), were for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, permanent injunction, and quantum meruit, (*id.* at 41–45).

Further complicating matters, on October 14, 2009, Asset Resolution and Silar filed a Notice of Commencement of Chapter 11 Bankruptcy Cases (#1547), indicating that Asset Resolution, but not Silar itself, had filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. On November 24, that court transferred the bankruptcy action to this District. This Court has withdrawn the bankruptcy and converted it to Chapter 7, putting Asset Resolution's estate under the exclusive control of the Trustee. On May 17, 2010, the Court heard oral arguments on eight dispositive motions in case number 07-cv-00892.

## II.     LEGAL STANDARDS

### A.     Reconsideration

A motion to alter or amend a judgment must be made within twenty-eight (28) days of

1 entry of judgment. Fed. R. Civ. P. 59(e).  Here, the orders were entered on June 9, 2010, and the

2 present motions to reconsider were filed twenty-eight days later on July 7, 2010.  Therefore the

3 motions to reconsider are timely under Rule 59(e) and should be considered under that rule as

4 opposed to Rule 60(b). *Am. Ironworks & Erectors, Inc. v. N. Am. Contr. Corp.*, 248 F.3d 892,

5 898–99 (9th Cir. 2001) ("[A] 'motion for reconsideration' is treated as a motion to alter or amend

6 judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within ten days of entry of

7 judgment.").

       **B.**    **Certification**

9        A court of appeals may grant interlocutory appellate review of an issue without staying

10 proceedings below when a district judge notes in the relevant order that he believes such review

11 is merited:

12        When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

18 28 U.S.C. § 1292(b).  A district court cannot itself grant interlocutory review under this statute.

19 A court of appeals may do so in its discretion, but only if the district court's order contains the

20 required language. *See id*.

21 **III.**    **ANALYSIS**

22        **A.**    **Motion No. 1840**

23        In the first motion to reconsider, filed jointly by Silar and Asset Resolution ("Movants"),

Movants ask the Court to reconsider two of its rulings: (1) that the statutory right of the direct lenders to terminate the loan servicer of a given loan without cause obviates the availability of damages to a terminated servicer, (*see* Order 19:2–8, June 9, 2010, ECF No. 1820); and (2) that Defendants were "mortgage brokers" under Nevada Revised Statute section 645B.0127(1)(b) and therefore required powers of attorney for each loan, which they did not have, (*see* Order 7:12–8:12, June 9, 2010, ECF No. 1819).

### 1. The 51% Rule

Movants first note that the issue of whether termination required cause is presently on appeal before the Ninth Circuit. Movants then argue that the Court failed to recognize the distinction between the ability to terminate an agent and the availability of damages for such a termination under an applicable agency contract. The Court recognizes the distinction but finds that it does not matter here. Assuming the right to terminate was properly executed, there can be no damages, because there was no wrong committed either in contract or in tort. Of course, if the court of appeals reverses on the issue of whether cause was required to terminate, and a fact-finder then determines there was no cause, there may be damages. But based on the Court's ruling that no cause was required, there can be no damages from termination. The question turns dispositively on the appeal of the cause issue, which remains pending, and the Court will not reverse itself or certify the question.

### 2. "Mortgage Broker"

Movants note that the Court's recent ruling was a reversal of its earlier ruling and seek to convince the Court that its first ruling was correct: that Movants were not "mortgage brokers" under Nevada law. First, Movants argue that because Compass and Asset Resolution were Delaware corporations headquartered in New York, and because Nevada law does not require corporations to comply with Chapter 645B if they do not "transact[] business" in Nevada, *see*

Nev. Rev. Stat. § 86.5483(1), that they cannot possibly be "mortgage brokers" under Chapter 645B. Movants list certain activities that do not in themselves constitute transacting business in Nevada, such as obtaining interests in real property or collecting and enforcing mortgage debts. *See* § 86.5483(1)(g)–(h). Movants fail to note that the LSAs note that "USA [Commercial] is a mortgage broker and loan servicer in Clark County, Nevada." Having an office in Nevada or soliciting or accepting deposits in the state triggers a requirement for compliance with Chapter 645B in and of itself. *See* § 86.5483(3)(a). Movants' rights under the law are determined by the rights of USA Commercial. Although Movants may not be "mortgage brokers" in Nevada in their own right, with respect to their rights under the LSAs, they are, because USA Commercial was. Movants also argue that the confirmation order transferred the LSAs free of liens, claims, restrictions on voting, etc. But this has nothing to do with whether USA Commercial was a mortgage broker under the meaning of the statute. The Court will not reverse itself or certify the question.

### B.     Motion No. 1841

Silar separately moves for the Court to reconsider or certify its ruling that Silar is liable for the wrongdoing of Compass. Silar argues that the Court erred because it reached this conclusion based on its allegedly erroneous belief that under New York law a court should not look to extrinsic (parol) evidence in interpreting a contract where the contract's language is unambiguous. Silar argues that although this is the general rule for interpreting contracts, New York law is different in the situation where a contract provides for resale of property to the original seller at the same price and the question is whether the contract in reality constitutes a loan as opposed to a sale. The Court is not convinced. Silar fails to address case law noting that where the parties express their intent to execute a sale in the contract, as here, consideration of extrinsic evidence is not appropriate in determining whether a repurchase agreement is in reality

a loan—it is not. *See Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 17 F. Supp. 2d 275, 301–02 (S.D.N.Y. 1998). In other words, where a contract merely uses the word "sale" without more, a Court may look to extrinsic evidence to see if a sale was in fact the parties' intent. But where the parties explicitly state that they "intend" to effect a "sale" and not a "loan," as here, (*see* Master Repurchase Agreement § 9(a), ECF No. 1703, Ex. E), the rule is different. *Id.* The doctrine of equitable estoppel would virtually command this result, even if the case law did not.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Reconsider and/or Certify Certain Rulings Made on June 9, 2010 (ECF No. 1840) is DENIED.

IT IS FURTHER ORDERED that the Motion to Reconsider and/or Certify the Principal/Agent Rulings Made on June 9, 2010 (ECF No. 1840) is DENIED.

IT IS SO ORDERED.

DATED: This 19th day of October, 2010.

_____
ROBERT C. JONES
United States District Judge