# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re: ) | |
| ) | |
| USA COMMERCIAL MORTGAGE CO., ) | |
| ) | 2:07-cv-00892-RCJ-GWF |
| Debtor, ) | |
| ) | **ORDER** |
| ) | |

This case arises out of the attempts of certain direct lenders to terminate a bankrupt entity and its assigns—one of whom is now itself bankrupt—as loan servicers. Pending before the Court is Silar's, Asset Resolution's, and the Trustee's Motion to Strike Plaintiffs' Discounted Pay-Off Claims (ECF No. 1882). For the reasons given herein, the Court denies the motion.

## I.  FACTS AND PROCEDURAL HISTORY

USA Commercial Mortgage Co. ("USA Commercial") was a loan servicing company that went bankrupt. At an auction pursuant to those bankruptcy proceedings, Compass USA SPE, LLC ("Compass") purchased USA Commercial's interest in thousands of Loan Servicing Agreements ("LSA"). Those LSAs were contracts between USA Commercial and various financial institutions and individuals ("Direct Lenders") that had lent money for the purchase of commercial real estate. The LSAs gave USA Commercial the right to administer the loans on behalf of the Direct Lenders. Silar Advisors, LP and Silar Special Opportunities Fund, LP (collectively, "Silar") financed Compass's purchase of the LSAs, retaining a security interest in the LSAs. Silar later assigned the

1   loan and corresponding security interest in the LSAs to Asset Resolution LLC ("Asset Resolution"), an entity created and owned by Silar for this purpose. Asset Resolution eventually foreclosed on the LSAs.

Certain Direct Lenders subsequently formed various companies ("the LLCs"), who along with the Jones Vargas Direct Lenders sued Compass in this Court to determine their rights and obligations under the LSAs and for various torts. Asset Resolution and Silar intervened, and soon thereafter they filed an Amended Answer to the Second Amended Complaint and Asset Resolution, LLC's Counterclaims. Those counterclaims, brought against approximately sixty-five Counterdefendants, were for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, permanent injunction, and quantum meruit.

Further complicating matters, on October 14, 2009, Asset Resolution and Silar filed a Notice of Commencement of Chapter 11 Bankruptcy Cases, indicating that Asset Resolution, but not Silar itself, had filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. On November 24, 2009, the Bankruptcy Court for the Southern District of New York granted a motion for transfer of venue, transferring the bankruptcy action to the Bankruptcy Court for the District of Nevada. This Court has withdrawn the bankruptcy proceedings from the Bankruptcy Court and converted Asset Resolution's bankruptcy to Chapter 7, putting Asset Resolution's estate under the exclusive control of the Trustee. The withdrawal of the reference and conversion are currently pending before the Court of Appeals.

## II.    LEGAL STANDARDS

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A district court's ruling on a motion to strike is reviewed for an abuse of discretion. *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224 n.4 (9th Cir. 2005).

## III. ANALYSIS

Certain direct lender Plaintiffs have brought claims ("discounted payoff claims") against Defendants, alleging that they have been damaged by the loss of interest in monies they would have collected had the loan servicer honored their requests to accept less than that which was due on certain loans in full satisfaction of them. Defendants ask the Court to "strike" these claims based on judicial estoppel. Defendants argue that Plaintiffs' counsel previously argued, and the Court accepted, that Compass had no duty to accede to any direct lender's desire to accept less than the full amount due on a given loan unless every lender with respect to that loan, including Compass itself where applicable, agreed. Defendants argue that Plaintiffs cannot now take the position that the 51% rule applied to acceptance of discounted payoffs.

As Plaintiffs note, Defendants do not move to "strike" anything but in reality move for summary judgment. Such a motion is untimely. Moreover, the motion is without merit. As Plaintiffs point out, the Court did not accept any such position, and in fact at a September 10, 2007 hearing, the Court noted that although no direct lender could be forced to take less than what he was due, any direct lender could choose to do so, and the loan servicer would be obligated to accept less than full value from the borrower, prorated according to each lender's wishes. Those Plaintiffs who allege that Compass dishonored their wishes to accept less than full value from borrowers for their prorated share of a given loan therefore have a legitimate contractual claim for damages measured by the value lost due to the servicer's intransigence, plus interest. Of course, each Plaintiff will have to prove his own case, and no Plaintiff who refused to accept less than full value on his loan(s), or who was silent on the matter, will be able to do so, but this is a matter of proof for trial.

Plaintiffs also argue that the 2009 amendment that clarified the 51% rule aids their argument. This amendment is, however, irrelevant to their argument. The 51% rule concerns the duty of a loan servicer to act with respect to a loan as a whole when the owners of 51% of the beneficial interest

in a loan order it to act.[1] The present controversy does not concern the dynamics of collective action with respect to loans, but rather the right of individuals to accept less than full value with respect to their own interests in a loan. This is a right that has always existed as a pure matter of due process and property rights, regardless of any 51% rule. In fact, the 2009 version of the 51% rule very possibly violates due process insofar as it purports to permit a loan servicer to accept less than full value for a loan at the command of majority owners, even with respect to the beneficial interests of minority owners who do not consent.

Finally, although it is irrelevant to the present matter, the amendment to the 51% rule is not retroactive in the way Plaintiffs argue it is. It is clearly retroactive with respect to determining *to which loans the new version of the rule applies*, because the retroactivity language reads "regardless of the date the interests were created . . . ." *See* Nev. Rev. Stat. § 645B.340(1). But this language says nothing of application to past attempts of lenders to accept less than full value. In other words, the new version of the rule applies to any loan *whenever entered into*, but nothing therein purports to make it apply to any violations of the new statute *whenever perpetrated*, even before it was adopted. The statute would create serious constitutional questions if it purported to do so because it would then not only retroactively apply new rules to existing contracts but would also purport to make past behavior retroactively wrongful.

---

[1] Why the Legislature chose "51%" and not "a majority" or "more than 50%," is unclear, but it is likely that it meant "51%" to mean a majority.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Strike Plaintiffs' Discounted Pay-Off Claims (ECF No. 1882) is DENIED.

IT IS SO ORDERED.

Dated this 26th day of October, 2010.

_____
ROBERT C. JONES
United States District Judge