# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

In re:

USA COMMERCIAL MORTGAGE CO.,

    Debtor,

2:07-cv-00892-RCJ-GWF

**ORDER**

    This case arises out of the attempts of certain direct lenders to terminate a bankrupt entity and its assigns—one of whom is now itself bankrupt—as loan servicers. Pending before the Court are two motions in limine. For the reasons given herein, the Court grants the motions in part and denies them in part.

## I.   FACTS AND PROCEDURAL HISTORY

    USA Commercial Mortgage Co. ("USA Commercial") was a loan servicing company that went bankrupt. At an auction pursuant to those bankruptcy proceedings, Compass USA SPE, LLC ("Compass USA") purchased USA Commercial's interest in thousands of Loan Servicing Agreements ("LSA"). Those LSAs were contracts between USA Commercial and various financial institutions and individuals ("Direct Lenders") that had lent money for the purchase of commercial real estate. The LSAs gave USA Commercial the right to administer the loans on behalf of the Direct Lenders. Silar Advisors, LP and Silar Special Opportunities Fund, LP

(collectively, "Silar") financed Compass USA's purchase of the LSAs, retaining a security interest in the LSAs. Silar later assigned the loan and corresponding security interest in the LSAs to Asset Resolution, LLC, an entity created and owned by Silar for this purpose. Asset Resolution eventually foreclosed on the LSAs.

Certain Direct Lenders subsequently formed various companies ("the LLCs"), who along with the Jones Vargas Direct Lenders sued Compass in this Court to determine their rights and obligations under the LSAs and for various torts. Asset Resolution and Silar intervened, and soon thereafter they filed an Amended Answer to the Second Amended Complaint and Asset Resolution, LLC's Counterclaims. Those counterclaims, brought against approximately sixty-five Counterdefendants, were for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, permanent injunction, and quantum meruit.

Further complicating matters, on October 14, 2009, Asset Resolution and Silar filed a Notice of Commencement of Chapter 11 Bankruptcy Cases, indicating that Asset Resolution, but not Silar itself, had filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. On November 24, the Bankruptcy Court for the Southern District of New York granted Asset Resolution's motion for transfer of venue, transferring the bankruptcy action to the Bankruptcy Court for the District of Nevada. This Court has withdrawn the bankruptcy proceedings from the Bankruptcy Court and converted Asset Resolution's bankruptcy to Chapter 7, putting Asset Resolution's estate under the exclusive control of the Trustee. Two motions in limine are pending before the Court.

## II.  LEGAL STANDARDS

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and

could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed. 2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

///

## III. ANALYSIS

### A. Compass', Piskun's, and Blatt's Motion in Limine (ECF No. 1747)

Movants, the defaulted Defendants, ask the Court to exclude certain evidence and to clarify the extent to which they will be permitted to participate at trial. The Court grants this motion in part.

First, movants ask the Court to exclude any evidence of the amount of punitive damages sought until the punitive damages phase of the trial. This is essentially a reminder to the Court that Nevada law requires bifurcation of the punitive damages phase of a trial, and that the first phase of a trial implicating punitive damages is only to determine whether punitive damages are warranted, and not an amount. *See* Nev. Rev. Stat. § 42.005(3). The Court grants the motion in this regard. Plaintiffs respond that Nevada's bifurcated punitive-damages procedure should not be used because it is procedural, not substantive, under *Erie*. The Court finds that the bifurcation statute protects defendants' substantive rights to have liability determined untainted by the prejudice that evidence of wealth can produce. There does not appear to be any federal rule in conflict with the bifurcation statute. Federal Rule of Civil Procedure 42(b) permits the Court to bifurcate trials generally for convenience, to avoid prejudice, or to economize, but the rule does not specifically touch on punitive damages.[1] It certainly does not require that the amount of punitive damages be determined in the same phase of a trial as liability. Because there is no conflict with any federal rule, the Court will defer to the state bifurcation statute for punitive damages, especially because the underlying claims are based on state law.

Second, movants ask the Court to exclude any reference to Defendants' financial status during the first phase of the trial for the purposes of proving damages. The Court grants the

---

[1] On this point, Plaintiffs have violated Circuit Rule 36-3 by citing to this Court a pre-2007, unpublished Ninth Circuit case where it affirmed, against an abuse of discretion standard, a trial court's receipt of evidence concerning the amount of punitive damages in a single-phase trial despite California law requiring bifurcation.

Page 4 of 8

motion in this regard. *See* Nev. Rev. Stat. § 42.005(4).

Third, movants ask the Court to exclude evidence of damages suffered by non-parties as irrelevant. The Court grants the motion in this regard. *See* Fed. R. Evid. 401–402; *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. . . . Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . .").

Fourth, movants ask the Court to confirm that although they defaulted, they will still be able to defend themselves at trial with respect to conduct relevant to punitive damages, because a plaintiff must still prove damages regardless of a defendant's default. The Court rules that movants may defend themselves at trial with all admissible forms of evidence with respect to (1) the amount of compensatory damages and (2) the amount, and conduct relevant to establishing liability for, punitive damages. *See Kelly Broad. Co. v. Sovereign Broad., Inc.*, 606 P.2d 1089, 1093 (Nev. 1989) ("In order to award punitive damages, the trial court must find substantial evidence of malice in fact."). The superseding statute requires clear and convincing evidence of oppression, fraud, or malice, express or implied. *See* § 42.005(1). Although they have forfeited the right to defend themselves as to bare liability for the civil wrongs alleged against them, movants may defend themselves with respect to oppression, fraud, and malice, because such conduct is an inherent part of the punitive damages claim Plaintiffs are required to prove, regardless of the default.

Finally, movants list several specific requests with respect to their participation in the trial. For example, movants request that they be able to question witnesses not only concerning the amount of damages, but also on the issue of proximate causation. The Court grants this request, as proximate causation is inherently linked to damages. Movants next ask permission to

Page 5 of 8

introduce exhibits. The Court grants this request, insofar as the exhibits pertain to damages issues and proximate causation. Movants request the ability to object at trial. The Court grants this request with respect to testimony concerning damages and proximate causation. Movants request to present an opening statement and closing argument. The Court grants this request with respect to testimony concerning damages and proximate causation. Movants request to present evidence of their financial condition during the punitive damages phase of the trial. This is specifically permitted by the punitive damages statute. Movants ask to present evidence of excusable neglect and good cause to set aside the default. This issue has been litigated, and the request is rejected. This is a disguised, repetitive motion to set aside the entry of default. Finally, movants ask the Court to instruct the jury at the beginning of trial of the procedural nature of movants' default. Plaintiffs also request the Court to instruct the jury that Plaintiffs have defaulted. The Court grants this request and will explain the default to the jury.

Plaintiffs respond generally that movants have failed to comply with the pre-trial deadline for identifying witnesses and exhibits, and they argue that any witnesses or exhibits not timely identified should be excluded, regardless of whether such testimony is intended to be limited to the damages issue. Plaintiffs are correct, however, they identify no particular witnesses or evidence to be excluded, so a ruling at this stage would merely be a reiteration of the rule.

### B. Silar's Motion to Limit the Opinions of Plaintiffs' Expert Witness Jeremy Aguero (ECF No. 1754)

The Court grants this motion in part. Mr. Aguero's testimony has been disclosed and is relevant to damages. It will therefore be admitted, but it will be restricted to the scope of his expertise. Mr. Aguero's expertise includes broad-based real estate valuations and market forecasts based upon approximately six years of experience as an analyst since graduating from law school. His undergraduate degree is in hotel management. The calculations he has provided are simply comparisons of the values of certain properties in 2006 to the present market values of

the properties, as well as comparisons of the amounts of outstanding loans on certain properties to their current market values. Mr. Aguero has performed no calculation concerning what kinds of losses were caused by which Defendants, if any, and it is not clear he is qualified to do so. His expertise appears to concern broad market analysis, not the mechanics of real estate transactions, which is the kind of expertise that would be required for a witness to give an expert opinion on causation with respect to the alleged wrongdoing in this case. Mr. Aguero's expertise is relevant only to determining the present market values of certain properties, and his expert testimony will be admitted only for this purpose. This evidence can be introduced for what it is, a simple calculation of reduction in property values over time compared to the purchase price, and what is currently owed on the properties. Mr. Aguera may not testify as an expert that these calculations represent damages caused by any Defendant. Plaintiffs must prove causation of damages through other means.

Plaintiffs note in response that they do not intend to have Mr. Aguero testify about causation of damages. They also correctly argue that Mr. Aguero's testimony, within its proper scope, is relevant to damages because it concerns the estimated present value of the properties, which is a necessary component of a damages calculation.

///
///
///
///
///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that Compass', Piskun's, and Blatt's Motion in Limine (ECF No. 1747) is GRANTED in part and DENIED in PART.

IT IS FURTHER ORDERED that Silar's Motion to Limit the Opinions of Plaintiffs' Expert Witness Jeremy Aguero (ECF No. 1754) is GRANTED in part and DENIED in PART.

IT IS SO ORDERED.

Dated this 12th day of November, 2010.

_____
ROBERT C. JONES
United States District Judge