1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JANET L. CHUBB, ESQ.
Nevada State Bar No. 176
LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
ARMSTRONG TEASDALE
50 W. Liberty St., Suite 950
Reno, NV 89501
Telephone:  (775) 322-7400
Facsimile:  (775) 322-9049
Email:  jchubb@armstrongteasdale.com
    and bsalinas@armstrongteasdale.com
    and  lbubala@armstrongteasdale.com

WILLIAM A. BREWER III, ESQ.
Texas State Bar No. 02967035
*Admitted Pro Hac Vice*
MICHAEL J. COLLINS, ESQ.
Texas State Bar No. 00785495
*Admitted Pro Hac Vice*
ROBERT M. MILLIMET, ESQ.
Texas State Bar No. 24025538
*Admitted Pro Hac Vice*
BICKEL & BREWER
1717 Main Street, Suite 4800
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015
Email:  wab@bickelbrewer.com
          mjc@bickelbrewer.com
          rrm@bickelbrewer.com

Attorneys for Plaintiffs

> *Electronically Filed on*
> *February 3, 2011*

UNITED STATES DISTRICT COURT

District of Nevada

| | |
|---|---|
| **In re:** | ) Case No. 2:07-CV-892-RCJ-GWF-BASE |
| | ) and |
| **USA COMMERCIAL MORTGAGE COMPANY,** | ) Case No. 3:07-CV-241-RCJ-GWF |
| **Debtor.** | ) |
| | ) **PLAINTIFFS' MOTION FOR AN AWARD** |
| **3685 SAN FERNANDO LENDERS, LLC,** *et al.*, | ) **OF ATTORNEYS' FEES AND COSTS** |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| **COMPASS USA SPE LLC,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

Pursuant to Local Rule 54-16, Plaintiffs file their Motion for an Award of Attorneys' Fees

and Costs, as follows:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.

## PRELIMINARY STATEMENT

On December 14, 2010, a nine-person jury found Defendants Silar Advisors, LP and Silar Special Opportunities Fund, LP (collectively, "Silar") and/or Asset Resolution LLC ("Asset Resolution") liable for breach of contract, breaches of the implied covenant of good faith and fair dealing in contract and in tort, breaches of fiduciary duties, conversion, and civil conspiracy in connection with their servicing of certain commercial mortgage investment loans pursuant to the parties' Loan Servicing Agreements ("LSAs").  As a result of the foregoing and the Court's pretrial determination that Defendants Compass Partners, LLC and Compass USA SPE, LLC (together, "Compass"), David Blatt, and Boris Piskun (collectively, the "Compass Defendants") were in default and, thus, liable as a matter of law, the jury awarded Plaintiffs a total of approximately $79,000 in compensatory damages, excluding attorneys' fees, and a total of $5.1 million in punitive damages.

In addition, prior to trial the Court granted summary judgment to Plaintiffs with respect to: (i) the compensation owed to Defendants as the loan servicers under the LSAs; and (ii) the right of the direct lenders to terminate Defendants as their loan servicers under the LSAs without cause.  In doing so, the Court resolved numerous questions of Nevada law applicable to the rights and duties of mortgage brokers and loan servicers, which include Defendants as the successors in interest to the loan servicing rights of USA Commercial Mortgage Company ("USACM") under the LSAs. Accordingly, because the LSAs of 46 (out of 52) Plaintiffs (the "Fee LSAs") provide that the prevailing party in an action seeking to enforce any provision of the LSAs is entitled to its trial and appellate "costs, expenses and attorneys' fees," those Plaintiffs move for an award of their attorneys' fees and costs incurred in connection with this action.

## II.

## ARGUMENT AND AUTHORITIES

**A.      Relevant Legal Standard**

Because this action was commenced based on diversity jurisdiction, the Court applies state law to determine whether an award of attorneys' fees is allowed.  *See GCM Air Group, LLC v. Chevron U.S.A, Inc.*, No. 3:07-cv-00168-BES-RAM, 2009 WL 1810743, at *1 (D. Nev. June 24, 2009) (citing *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 847 (9th Cir. 2009)).  Nevada law permits attorneys' fees to be awarded if authorized by statute, rule, or contract.  *See id.* (citing *Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 197 P.3d 1051, 1059 (Nev. 2008)); NEV. REV. STAT. § 18.010(1) ("The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law.").

Nevada law also entitles a prevailing party, as a matter of right, to recover its costs in an action in which damages in excess of $2,500 are sought.  *See* NEV. REV. STAT. § 18.020(3) ("Costs must be allowed of course to the prevailing party against any adverse party against whom judgment is rendered . . . in an action for the recovery of money or damages, where the plaintiff seeks to recover more than $2,500."); *Coker Equip. Co. v. Wittig*, 366 Fed. Appx. 729, 733 (9th Cir. 2010) (discussing same).  Further, the Local Rules for the District of Nevada permit an award of attorneys' fees to include costs that are not otherwise taxable pursuant to Fed. R. Civ. P. 54(d).  *See* LR 54-16(b)(2) ("Unless otherwise ordered by the court, a motion for attorney's fees must, in addition to those matters required by Fed. R. Civ. P. 54(d)(2)(B), include . . . [a]n itemization of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR 54-1 through 54-15 . . . .").

Once a party establishes its entitlement to an attorneys' fees award, the Court must determine the reasonableness of such an award.  *See GCM Air Group, LLC*, 2009 WL 1810743, at *4.  In the Ninth Circuit, attorneys' fees are calculated using the "lodestar" method, which requires the

multiplication of the number of hours reasonably expended by a reasonable hourly rate.  *See id.*  The factors set forth in Local Rule 54-16 guide the analysis of the lodestar amount.  *See id.*  Those factors include:  (i) the results obtained and the amounts involved; (ii) the time and labor required; (iii) the novelty and difficulty of the questions involved; (iv) the skill required to perform the legal services properly; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) the experience, reputation, and ability of the attorneys; and (viii) the undesirability of the case, if any.  *See* LR 54-16(b)(3).  A reasonable hourly rate is determined by considering the skill, experience, and reputation of the attorneys requesting fees, and should reflect prevailing market rates in the community in which the Court sits.  *See GCM Air Group, LLC*, 2009 WL 1810743, at *4 & n.3.

Further, the execution of a pre-petition agreement containing an attorneys' fees provision gives rise to a contingent, unliquidated claim for attorneys' fees as of the petition date.  *See SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 843 (9th Cir. 2009).  Thus, attorneys' fees incurred post-petition in connection with the exercise or protection of a pre-petition claim that included a right to recover attorneys' fees are deemed to be "'prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred.'"  *See id.* at 844 (quoting 5 *Collier on Bankruptcy* § 553.03[1][i] (15th ed. updated 2007)).

**B.     As Prevailing Parties, Plaintiffs Are Entitled To An Award Of Attorneys' Fees, Costs, And Expenses.**

      **1.     <u>The Fee LSAs entitle the prevailing party to an award of trial and appellate attorneys' fees, costs, and expenses.</u>**

The Fee LSAs expressly authorize an award of attorneys' fees, costs, and expenses to the prevailing party in an action to enforce any provisions therein:

> <u>Attorney's Fees</u>. In the event any party hereto brings an action to enforce any of the provisions of this Agreement, the party against whom judgment is rendered in such action shall be liable to the other for reimbursement of its costs, expenses and attorneys' fees, including such costs, expenses and fees as may be incurred on appeal, [sic]

*See* Declaration of Michael J. Collins ("Collins Decl."), dated February 2, 2011, Ex. A thereto [Type 4 LSAs]. Of the 52 Plaintiffs, 46 have a Fee LSA containing the foregoing attorneys' fees provision. *See id.*, Ex. A thereto [Type 4 LSAs]. The Fee LSAs also provide that they are governed by Nevada law, and are "binding upon and shall inure to the benefit of the parties' respective successors and assigns." *See id.*, Ex. A thereto, ¶¶ 13, 16 [Type 4 LSAs].

>    2.    **Plaintiffs prevailed in enforcing three separate provisions of the LSAs.**

All Plaintiffs' LSAs include the following three provisions that Plaintiffs, through counsel, successfully enforced in this action: (i) the "Compensation [owed] to USA[CM] for Loan Servicing," which purported to entitle Defendants as the loan servicers to servicing fees, default interest, and/or late charges as compensation;[1] (ii) the "51% Rule," which entitled 51% or more of the direct lenders in a defaulted loan to act on behalf of the remaining direct lenders in the loan, including designating a new servicing agent; and (iii) the "Limited Power of Attorney," which obligated Defendants as the loan servicers "to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan." *See id.*, Ex. A thereto, ¶¶ 3, 5, 11 [Type 4 LSAs]; *id.*, Ex. B thereto, ¶¶ 2(f), 4, 9 [Type 3 LSAs].

>    a.    **Plaintiffs prevailed regarding the loan servicing compensation owed to Defendants as the loan servicers.**

Plaintiffs prevailed in the determination of the loan servicing compensation owed to Defendants as the loan servicers under the LSAs. Specifically, Plaintiffs established that Defendants were not entitled to be paid default interest and late charges as loan servicing compensation in priority to the repayment of all the direct lenders' principal and accrued regular interest. *See id.*, Ex. P thereto [Jury Instructions]. When the Court granted summary judgment to Plaintiffs, it determined as a matter of law that:

---

[1] The Fee LSAs purported to entitle Defendants as the loan servicers to servicing fees, default interest, and late charges, whereas the non-Fee LSAs purported to entitle Defendants as the loan servicers to servicing fees and late charges, but not default interest. *See* Collins Decl., Exs. A and B thereto [Type 4 and Type 3 LSAs].

- for defaulted loans, Defendants as the loan servicers are entitled to be paid only one accrued annual servicing fee under the LSAs, based on the amount ultimately collected on any given loan, not the principal amount of the loan;

- Defendants as the loan servicers are entitled to be paid default interest and late charges as loan servicing compensation under the LSAs only if the direct lenders are first repaid the entire principal amount of the loans and all due and owing accrued regular interest;

- when the direct lenders have not been repaid the full principal amount of the loans and all due and owing accrued regular interest, allocation-of-payment provisions in the promissory notes for the loans are irrelevant; and

- Defendants as the loan servicers are not entitled under the LSAs to collect servicing fees, default interest, or late charges directly from the direct lenders, but only from collected funds.

*See id.*, Exs. C & D thereto [MSJ Orders].

Indeed, in applying the foregoing summary judgment rulings in connection with the sale of the Gess property, the Court concluded that Asset Resolution was entitled to be paid only $94,000 as its total loan servicing compensation, even though Asset Resolution claimed to be entitled to loan servicing compensation totaling more than $11 million (which substantially exceeded the amount of the net sale proceeds of $6.5 million). *See id.*, Ex. E thereto at 11 [6/12/09 Application]; *id.*, Ex. F thereto at 3 [Gess Order].   Thus, Plaintiffs prevailed in enforcing their interpretation of the loan servicing compensation paragraph of the LSAs against Defendants.

   b. **Plaintiffs prevailed regarding their ability to terminate Defendants as the loan servicers without cause.**

Plaintiffs demonstrated that the direct lenders were entitled to terminate Defendants as their loan servicers under the LSAs without cause.  Although all Plaintiffs' LSAs incorporated the "51%

Rule" set forth in Nevada Administrative Code § 645B.073, those LSAs also precluded the direct

lenders from invoking the 51% Rule to designate a new loan servicer unless the current loan servicer

failed to act on the direct lenders' behalf for any reason. *See id.*, Ex. A thereto, ¶ 3 [Type 4 LSAs];

*id.*, Ex. B thereto, ¶ 2(f) [Type 3 LSAs]. The Court, however, agreed with Plaintiffs that the

purported modification of the 51% Rule by the inclusion of a cause requirement was contrary to

Nevada law and, therefore, unenforceable:

> In their Supplemental Brief (#1412), Plaintiffs also argue that any
> contractual clause restricting the ability of a group of persons holding
> a majority of the beneficial interest in a commercial mortgage
> investment loan is void and unenforceable as against the public policy
> of Nevada. (#1412 at 2–3). As Defendants noted at oral argument, the
> relevant statute does not apply in the face of a contrary contractual
> provision by its own terms . . . . This section of the statute went into
> force on May 29, 2009. . . . The clause in the LSA, however, does not
> create any greater restriction on the ability of the Direct Lenders to
> terminate the servicer than does the statute. Plaintiffs have made the
> required showing and do not require good cause to terminate the
> servicer under the Preliminary Injunction. As Plaintiffs note, Nev.
> Admin. Code § 645B.073 requires—and did so long before A.B. 513
> passed—that any document related to a mortgage loan must contain a
> provision to allow the holder of 51% or more of the beneficial interest
> to act on behalf of all of the beneficial interest holders. The Court
> therefore grants the Motion to Terminate Compass and Asset
> Resolution as Servicer Pursuant to Paragraph 8 of the Preliminary
> Injunction (#1178).

*See id.*, Ex. G thereto [Termination Order]. Thus, Plaintiffs prevailed in enforcing the rights of the

direct lenders to terminate Defendants as their loan servicers without cause pursuant to the 51% Rule

(as it was supposed to be) set forth in the LSAs.[2]

---

[2] In recognizing that the 51% Rule is a fundamental principle of Nevada law, the Court also resolved
in Plaintiffs' favor that the direct lenders, not Defendants as the loan servicers, were entitled to
exercise management control over the loans. Based in large part on that determination, the Court
subsequently granted summary judgment to Plaintiffs on Asset Resolution's counterclaims,
concluding that the direct lenders could not be held liable for interfering with the servicing of their
loans as a matter of law. *See id.*, Ex. H thereto at 15-24 [#1820 Order].

c.      **Plaintiffs prevailed regarding Defendants' breaches of duties arising from the LSAs.**

Plaintiffs prevailed in demonstrating that Defendants breached various duties that they owed to the direct lenders pursuant to the LSAs, including their contractual duty to protect the direct lenders' interests in connection with the loans.  Specifically, the jury found that Silar and Asset Resolution breached the LSAs and violated the implied covenant of good faith and fair dealing in contract with respect to the Eagle Meadows and Fox Hills loans, and that Silar also breached the LSAs with respect to the Bay Pompano, Shamrock, and Standard Property loans.  *See id.*, Ex. I thereto, ¶¶ 1, 3 [Jury Verdict].  The jury also found that Silar:  (i) breached its fiduciary duties with respect to the Gess, Anchor B, Bay Pompano, Gramercy, Shamrock, and Standard Property loans; (ii) violated the implied covenant of good faith and fair dealing in tort in connection with the Eagle Meadows and Fox Hills loans; (iii) converted Plaintiffs' property with respect to the Bay Pompano and Shamrock loans; and (iv) engaged in a civil conspiracy as to the Standard Property loan.  *See id.*, Ex. I thereto, ¶¶ 2, 4-5, 7 [Jury Verdict].  The jury further found that Asset Resolution:  (i) breached its fiduciary duties with respect to the Anchor B loan; (ii) violated the implied covenant of good faith and fair dealing in tort in connection with the Eagle Meadows and Fox Hills loans; and (iii) converted Plaintiffs' property with respect to the Bay Pompano and Shamrock loans.  *See id.*, Ex. I thereto, ¶¶ 2, 4-5 [Jury Verdict].

In addition, the Court granted judgment as a matter of law at trial to Plaintiffs with respect to the Anchor B and Standard Property loans, concluding that Silar and Asset Resolution were both liable for violating the implied covenant of good faith and fair dealing in contract and in tort, and for conversion.  *See id.*, Ex. I thereto, ¶¶ 3-5 [Jury Verdict].  Based on the above-referenced findings and rulings (as well as the pretrial default of the Compass Defendants and the jury's additional determination that all Defendants were liable for punitive damages), the jury awarded Plaintiffs a total of approximately $79,000 in compensatory damages and a total of $5.1 million in punitive

damages.  *See id.*, Ex. I thereto, ¶¶ 8(a), 10-11 [Jury Verdict]; *id.*, Ex. J thereto [Jury Verdict Phase II].  Thus, Plaintiffs prevailed in enforcing the various duties that Defendants as the loan servicers owed to the direct lenders as a result of the LSAs.

**C.    Substantial Legal Services Were Performed On Behalf Of Plaintiffs In Connection With This Matter.**

Since March 2009, Bickel & Brewer as lead counsel, McAlan Duncan as co-counsel, and Janet Chubb of Jones Vargas (now Armstrong Teasdale) as local and co-counsel performed substantial legal services on behalf of Plaintiffs in connection with this matter.  Beginning in January 2009, Lisa Rasmussen also performed additional legal services on behalf of Plaintiffs in connection with this matter.  Those legal services are reflected in monthly billing records maintained in the ordinary course of business by Bickel & Brewer, Jones Vargas, and Armstrong Teasdale that identify and itemize (by professional) the legal services provided to Plaintiffs, the hours spent in providing those services, the hourly rates for those services, and the total fees and expenses incurred in connection with the provision of those services.  *See id.*, ¶ 4 & Ex. K thereto [Fee statements]; Declaration of Janet L. Chubb ("Chubb Decl."), dated February 2, 2011, Exs. 1-24 thereto [Fee statements and summary].  In addition, Mr. Duncan and Ms. Rasmussen maintained daily records of the time that they spent providing legal services to Plaintiffs in connection with this matter.  *See* Declaration of McAlan Duncan ("Duncan Decl."), dated February 2, 2011, ¶ 4 & Ex. A thereto [Daily time records]; Declaration of Lisa Rasmussen ("Rasmussen Decl."), dated February 2, 2011, ¶ 2 & Ex. A thereto [Invoice].

Those billing records and daily time records reflect that, among other tasks, Plaintiffs' counsel performed the following legal services for Plaintiffs:

- in connection with the compensation owed to Defendants as the loan servicers under the LSAs, Plaintiffs' counsel researched and prepared summary judgment motions and reply briefs, reviewed responses to those motions,

prepared motions, responses, and reply briefs in connection with the sale of the Gess property, and attended and argued at numerous hearings related to all those motions, *see* Collins Decl., ¶ 6 & Ex. K thereto [Fee statements]; Chubb Decl., ¶¶ 3-4 & Exs. 1-24 thereto [Fee statements and summary]; Duncan Decl., ¶ 8 & Ex. A thereto [Daily time records];

- in connection with the termination of Defendants as the loan servicers under the LSAs, Plaintiffs' counsel researched and prepared summary judgment and other motions and reply briefs, reviewed responses to those motions, and attended and argued at several hearings related to all those motions, *see* Collins Decl., ¶ 6 & Ex. K thereto [Fee statements]; Chubb Decl., ¶¶ 3-4 & Exs. 1-24 thereto [Fee statements and summary]; Duncan Decl., ¶ 8 & Ex. A thereto [Daily time records];

- in connection with the parties' pursuit of damages, Plaintiffs' counsel prepared and answered written discovery requests, prepared for and attended depositions, prepared and argued summary judgment and other motions, defended against Silar's and Asset Resolution's counterclaims, attended Court-ordered pretrial status conferences and mediation sessions, prepared Pretrial Orders, and prepared for and attended a jury trial that spanned a total of five weeks, *see* Collins Decl., ¶ 6 & Ex. K thereto [Fee statements]; Chubb Decl., ¶¶ 3-4 & Exs. 1-24 thereto [Fee statements and summary]; Duncan Decl., ¶ 8 & Ex. A thereto [Daily time records]; Rasmussen Decl., ¶¶ 3-10 & Ex. A thereto [Invoice]; and

- in connection with Silar's and Asset Resolution's consolidated interlocutory appeals, Plaintiffs' counsel reviewed their appellate briefs and various appellate motions, and researched and prepared the appellate response brief

and various appellate motions and responses, *see* Collins Decl., ¶ 6 & Ex. K thereto [Fee statements]; Chubb Decl., ¶¶ 3-4 & Exs. 1-24 thereto [Fee statements and summary]; Duncan Decl., ¶ 8 & Ex. A thereto [Daily time records]; Rasmussen Decl., ¶ 7 & Ex. A thereto [Invoice].[3]

Those billing records and daily time records also reflect the following total attorneys' fees incurred, and sought to be recovered, by Bickel & Brewer, Jones Vargas/Armstrong Teasdale, Mr. Duncan, and Ms. Rasmussen for the provision of those legal services, from January 2009 through December 2010:

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

---

[3] The appeal has not yet been set for oral argument. *See* Collins Decl., ¶ 6.

  
| Category | Professionals: Hourly Rates And Total Hours | Total Fees Requested |
|---|---|---|
| Loan servicing compensation owed to Defendants as the loan servicers under the LSAs, including in connection with the sale of the Gess Property | MJC – $775 (actual), $500 (proposed); 125.5 hours | $62,750.00 |
| | KZH – $575 (actual), $450 (proposed); 116.0 hours | $52,200.00 |
| | RRM – $500 (actual); $400 (proposed); 120.8 hours | $48,320.00 |
| | Other B&B – $210 - $700 (actual), $350 (proposed); 112.3 hours | $39,305.00 |
| | Duncan – $400; 136.4 hours | $54,560.00 |
| | Chubb – $170 - $450; 227 hours | $71,528.50 |
| | **Hours subtotal: 838** | **Fees subtotal: $328,663.50** |
| Termination of Defendants as the loan servicers under the LSAs, including the designation of Defendants as "mortgage brokers" and fiduciaries | MJC – $775 (actual), $500 (proposed); 22.0 hours | $11,000.00 |
| | KZH – $575 (actual), $450 (proposed); 18.3 hours | $8,235.00 |
| | RRM – $500 (actual); $400 (proposed); 145.9 hours | $58,360.00 |
| | Duncan – $400; 87.8 hours | $35,120.00 |
| | Chubb – $170 - $450; 82.6 hours | $24,622.00 |
| | **Hours subtotal: 356.60** | **Fees subtotal: $137,337.00** |
| Pursuit of damages, including discovery, motion practice, mediation, and jury trial | JWB – $900 (actual), $600 (proposed); 371.0 hours | $222,600.00 |
| | MJC – $775 (actual), $500 (proposed); 347.0 hours | $173,500.00 |
| | KZH – $575 (actual), $450 (proposed); 151.5 hours | $68,175.00 |
| | RRM – $500 (actual); $400 (proposed); 1,335.8 hours | $534,320.00 |
| | Other B&B – $210 - $700 (actual), $350 (proposed); 97.9 hours | $34,265.00 |
| | Duncan – $400; 860.7 hours | $344,280.00 |
| | Chubb – $170 - $450; 568 hours | $196,242.00 |
| | Rasmussen – $300 - $350; 514.5 hours | $168,995.00 |
| | **Hours subtotal: 4,246.40** | **Fees subtotal: $1,742,377.00** |
| Interlocutory appeals of loan servicing compensation and termination issues | MJC – $775 (actual), $500 (proposed); 6.0 hours | $3,000.00 |
| | KZH – $575 (actual), $450 (proposed); 5.3 hours | $2,385.00 |
| | RRM – $500 (actual); $400 (proposed); 162.0 hours | $64,800.00 |
| | Duncan – $400; 60.8 hours | $24,320.00 |

| | | |
|---|---|---|
| | Rasmussen – $300; 11.5 hours | $3,450.00 |
| | **Hours subtotal:** **245.6** | **Fees subtotal: $97,955.00** |
| **Totals** | **Hours: 5,686.60** | **Fees: $2,306,332.50** |

*See* Collins Decl., ¶ 6 & Ex. K thereto [Fee statements]; *id.*, Ex. Q thereto [Fees summary]; Chubb Decl., ¶¶ 3-4 & Exs. 1-24 thereto [Fee statements and summary]; Duncan Decl., ¶ 8 & Ex. A thereto [Daily time records]; Rasmussen Decl., ¶¶ 3-10 & Ex. A thereto [Invoice].

**D.     Plaintiffs Incurred Substantial Costs And Expenses In Connection With This Matter That Are Chargeable Against Defendants As Part Of Plaintiffs' Attorneys' Fee Award.**

Since March 2009, Bickel & Brewer, Ms. Chubb, Mr. Duncan, and Ms. Rasmussen have incurred substantial costs and expenses on behalf of Plaintiffs in connection with this matter. Bickel & Brewer compiled and maintained in the ordinary course of business cost ledgers that identify and itemize by category all the expenses (other than attorneys' fees) that it incurred in connection with this matter since March 2009. *See* Collins Decl., ¶ 12 & Ex. L thereto [Cost ledgers and summary spreadsheets]. Those expenses are also totaled and identified on the monthly invoices that Bickel & Brewer generated in the ordinary course of business in connection with its representation of Plaintiffs in this matter. *See id.*, Ex. K thereto [Fee statements]. Bickel & Brewer is seeking the recovery of a total of $126,002.11 in travel-related expenses, hearing transcript charges, and legal research expenses as part of Plaintiffs' attorneys' fees award. *See id.*, ¶ 13 & Ex. L thereto [Cost ledgers and summary spreadsheets].

Similarly, Ms. Chubb, Mr. Duncan, and Ms. Rasmussen separately incurred additional expenses in connection with this matter since January 2009. *See* Chubb Decl., ¶ 8 & Exs. 1-23 thereto [Fee statements]; Duncan Decl., ¶ 8 & Ex. B thereto [Expenses itemization]; Rasmussen Decl., ¶ 11 & Ex. A thereto [Invoice]. Specifically, as part of Plaintiffs' attorneys' fees award, Ms. Chubb is seeking the recovery of $9,962.06 in expenses, Mr. Duncan is seeking the recovery of

1   travel expenses totaling $14,840.84, and Ms. Rasmussen is seeking the recovery of expenses totaling

2   $6,915.43.  *See* Chubb Decl., ¶ 8 & Exs. 1-23 thereto [Fee statements]; Duncan Decl., ¶ 8 & Ex. B

3   thereto [Expenses itemization]; Rasmussen Decl., ¶ 11 & Ex. A thereto [Invoice].

4   **E.**     **Plaintiffs' Attorneys' Fees And Expenses Were Reasonable And Necessary.**

5           **1.**     **The hourly rates for Plaintiffs' counsel are reasonable.**

6           The Court previously determined in connection with the sanctions award imposed in the

7   chapter 7 cases of Asset Resolution LLC and fourteen related special purpose entities that the hourly

8   rates for Ms. Chubb and her firm's attorneys of between $170 and $420, and Mr. Duncan's

9   estimated hourly rate of $400, were reasonable.  *See* Collins Decl., Ex. M thereto at 20 [Sanctions

10  Order].  The Court also determined that Bickel & Brewer's hourly rates of between $275 and $775

11  were high when compared to prevailing market rates in Nevada, the hourly rates for Ms. Chubb and

12  attorneys at her firm, and Mr. Duncan's estimated hourly rate.  *See id.*, Ex. M thereto at 21-22

13  [Sanctions Order].  As a result, Bickel & Brewer requests the Court to use hourly rates for purposes

14  of this motion, as follows:  (i) $600 for John Bickel, who is one of two co-founding and co-

15  managing partners at Bickel & Brewer; (ii) $500 for Michael Collins, an equity partner at Bickel &

16  Brewer; (iii) $450 for Ken Hickox, who was "Counsel," a senior position within Bickel & Brewer, in

17  2009, and became a contract partner at Bickel & Brewer as of January 1, 2010; (iv) $400 for Rob

18  Millimet, a senior associate at Bickel & Brewer; and (v) a blended rate of $350 for other Bickel &

19  Brewer professionals who billed time to this case (which included first-year attorneys, senior

20  associates, partners, and senior "consultants,"[4] whose usual hourly rates are between $240 and

21  $700).  *See id.*, ¶ 19.  Those suggested rates are reasonable in comparison to prevailing market rates

22  in Nevada, the hourly rates for Ms. Chubb and attorneys at her firm, and Mr. Duncan's estimated

23  hourly rate.  *See id.*; Chubb Decl., ¶ 9.

---

[4] "Consultants" are full-time accounting and financial analyst professionals employed by Bickel & Brewer.  *See* Collins Decl., ¶ 11.  Those Bickel & Brewer professionals assisted with the assessment and preparation of Plaintiffs' damages case.  *See id.*

**2.      The results obtained and the amount involved were significant.**

As previously indicated, Plaintiffs prevailed on the three issues on which this action was based:  (i) the compensation owed to Defendants as the loan servicers under the LSAs; (ii) the termination of Defendants as the loan servicers under the LSAs without cause; and (iii) the damages resulting from Defendants' breaches of duties owed to the direct lenders pursuant to the LSAs. Indeed, because of Plaintiffs' success, Asset Resolution was paid the total amount of only $94,000 as its loan servicing compensation in connection with the sale of the Gess Property, even though it claimed to be entitled under the LSAs to loan servicing compensation totaling more than $11 million (which was well in excess of the net sale proceeds of $6.5 million).  Plaintiffs understand that the Court also intends to publish a separate declaratory judgment opinion discussing the rights and duties of mortgage brokers and loan servicers under Nevada law, including its conclusion that those brokers and servicers cannot place their financial interests above those for whom they are servicing loans.  Importantly, the Court further concluded that the purported cause requirement set forth in the LSAs in connection with the 51% Rule was unenforceable under Nevada law.  Finally, a jury awarded 37 Plaintiffs a total of approximately $79,000 in compensatory damages and a total of $5.1 million in punitive damages.

**3.      The substantial time and labor required.**

Plaintiffs' counsel were required to expend substantial time and labor to prosecute this action, given the breadth of novel and difficult issues, the number of parties, and the quantity of outstanding loans (not to mention the chapter 11 bankruptcy filings in the United States District Court for the Southern District of New York on October 14, 2009).  As previously indicated, Plaintiffs' counsel expended 838 total hours in connection with the loan servicing compensation issue, 356.6 total hours in connection with the termination issue, 4,246.40 total hours in connection with the parties' preparation for and pursuit of trial, and 245.6 total hours in connection with Silar's and Asset Resolution's consolidated interlocutory appeals, for a total of 5,686.60 hours.  Indeed, the

Court held numerous hearings in connection with the substantial motion practice involved in this case.  The Court also presided over a jury trial that spanned a total of five weeks and involved 37 Plaintiffs, seven Defendants, and ten separate loans.

> **4.      The questions involved were novel and complex, requiring Plaintiffs' counsel to have wide-ranging skills.**

This case involved the resolution of novel questions of Nevada law regarding the rights and duties of mortgage brokers and loan servicers, including:  (i) the determination that mortgage brokers and loan servicers have a fiduciary duty when handling funds and taking title to real property received on account of fractional beneficial interest holders, as well as a duty not to engage in grievous and perfidious misconduct pursuant to the implied covenant of good faith and fair dealing in tort; (ii) the interpretation and application of the 51% Rule set forth in Nevada Administrative Code § 645B.073 and Nevada Revised Statutes § 645B.340(1); and (iii) the application of Chapter 645B of the Nevada Revised Statutes governing mortgage brokers to loan servicers such as Defendants.  Indeed, Plaintiffs understand that the Court intends to publish a separate declaratory judgment opinion to provide clarity and guidance regarding the rights and duties of mortgage brokers and loan servicers under Nevada law.  The Court also interpreted Silar's and Compass's complex repurchase agreement and related instruments and concluded that Silar was the title owner of the LSAs and Compass was Silar's servicing agent.  Thus, Plaintiffs' counsel required extensive complex commercial litigation and real estate skills to successfully address all those novel and complex questions.

> **5.      Bickel & Brewer represented Plaintiffs on a contingency fee basis.**

As previously indicated, the customary hourly billing rates for the Bickel & Brewer attorneys that primarily worked on this case are between $500 and $775, and Mr. Duncan's estimated hourly rate is $400.  Yet, Bickel & Brewer and Mr. Duncan agreed to work, and have worked since March 2009, on behalf of Plaintiffs (and 1,500 other direct lenders) on a contingency fee basis.  *See also*

Collins Decl., Ex. N thereto [Engagement agreement].  As part of this engagement, Bickel & Brewer

and Mr. Duncan agreed to cover all expenses incurred during the course of the litigation.  *See also*

*id.*  As a result, Plaintiffs were not obligated to pay Bickel & Brewer or Mr. Duncan unless Plaintiffs

prevailed in this litigation, and then only from collected funds.  *See also id.*

> 6.    **The experience, reputation, and ability of Plaintiffs' counsel substantially contributed to Plaintiffs' success in this case.**

The Court is well aware of Ms. Chubb's experience, reputation, and ability, given her

extensive years of practice before it.  Although this case marks the first time that Bickel & Brewer

and Mr. Duncan have appeared before the Court, Bickel & Brewer has forged a considerable

reputation handling complex commercial litigation since it was formed in 1984.  In addition,

although this case had been pending for almost two years prior to Bickel & Brewer's and Mr.

Duncan's involvement, during which time Plaintiffs were represented by two other law firms (the

Law Offices of Alan R. Smith and Fulbright & Jaworski, LLP), it was not until <u>after</u> Bickel &

Brewer and Mr. Duncan appeared in this action as co-counsel for Plaintiffs in March 2009, that

Plaintiffs obtained any of the relief for which they are now seeking an award of attorneys' fees.

> 7.    **This case was undesirable under the circumstances, including Plaintiffs' inability to pay for legal services.**

But for Bickel & Brewer's and Mr. Duncan's agreement to represent Plaintiffs solely on a

contingency fee basis, Plaintiffs would have been unable to retain them as their counsel.  *See* Duncan

Decl., ¶ 3.  Indeed, the Receiver, Tom Grimmett, recommended in his report to the direct lenders in

the Summer of 2008 that they accept Silar's proposed settlement – in which the <u>direct lenders</u> would

agree <u>to pay Silar</u> millions of dollars – because they would be unlikely to find counsel and prevail

against Defendants:

> The foreclosure by Silar of virtually all of Compass' assets makes
> much of the tort analysis an academic exercise.  Regardless of the
> strength of these claims, the DLs will be extremely hard pressed to
> find any law firm to pursue those claims on a contingency fee when
> they are virtually guaranteed no recovery given Compass' insolvent

status.  It would be impossible as a practical matter to hire any law firm to pursue claims on any other financial basis.

\*\*\*

As our analysis has shown, DLs would likely win some battles and lose some battles with Compass.  The waterfall flows both ways, depending on the language of the LSAs and Notes. . . . It appears that the DLs *may* be able to succeed on the following [damages] claims against Compass . . . . Nevertheless, it is important to understand that litigation entails tremendous time, money, and emotional stress.  Over this entire process, the DLs can see that few rulings in the Court have "gone their way" thus far, creating uncertainty as to any outcome.  The case is factually complex, which will result in an enormously costly process.  The opposition has proved ready, willing, and able to fight to the end on the seemingly smallest of details and shows no sign of changing that disposition should this matter proceed to litigation. . . . Law firms have thus far expended approximately \$5 Million defending the DLs and not all parties have even answered the complaints yet.  The DLs can expect that number to double or triple if this matter were to go to trial or to appeal.  **(If the DLs are able to find a firm willing to take the case).**  Litigation would likely consume years and years of time.

*See* Collins Decl., Ex. O thereto at 1, 46-50 [Receiver's analysis] (emphasis in original).  Instead, because Bickel & Brewer and Mr. Duncan undertook to represent Plaintiffs, <u>Silar</u> will likely be forced to pay millions of dollars to Plaintiffs.

## III.

## <u>REQUEST FOR RELIEF</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court award them a total of \$2,464,052.94 (\$2,306,332.50 + \$157,720.44) in attorneys' fees and costs, and such other and further relief to which they are entitled.

Dated:  February 3, 2011

BICKEL & BREWER

ARMSTRONG TEASDALE

By:      /s/ Janet L. Chubb
          JANET L. CHUBB, ESQ.
          LOUIS M. BUBALA III, ESQ.

**CERTIFICATE OF SERVICE**

1.      On, February 3, 2011, I served the following document(s):

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

2.      I served the above-named document(s) by the following means to the persons as listed below:

■   a.      **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

Alan R Smith - Mail@asmithlaw.com, marsh@asmithlaw.com, turk@asmithlaw.com
Allan B Diamond - adiamond@diamondmccarthy.com
Andrew F. Dixon - andrew@bdtlawyers.com, megan@bdtlawyers.com
Andrew M Parlen - aparlen@stutman.com
Andrew M. Brumby abrumby@shutts-law.com
Anne M Loraditch lvlitdock@gtlaw.com, koisp@gtlaw.com, loraditcha@gtlaw.com
Annette W. Jarvis ajarvis@rqn.com
Anthony W. Austin aaustin@lrlaw.com
Arley D Finley , III tfinley@diamondmccarthy.com
Bobby L. Olson olsonb@gtlaw.com, jenkinsm@gtlaw.com, koisp@gtlaw.com, lvlitdock@gtlaw.com
Brigid M. Higgins usdcnotices@gordonsilver.com
C. Stanley Hunterton shunterton@huntertonlaw.com, janallen@huntertonlaw.com
Candace C. Carlyon ccarlyon@sheacarlyon.com, ltreadway@sheacarlyon.com, manthony@sheacarlyon.com, pdriscoll@sheacarlyon.com, rmsmith@sheacarlyon.com
Christine Pajak cpajak@stutman.com
Craig S Dunlap cdunlap@fclaw.com
Cynthia J. Larsen clarsen@orrick.com, wpeters@orrick.com
Dean T Kirby dkirby@kirbymac.com, gsparks@kirbymac.com, jrigg@kirbymac.com
Donald Prunty pruntyd@gtlaw.com
Elizabeth Fielder efielder@jonesvargas.com
Elizabeth E. Stephens stephens@shlaw.com, calderone@sullivanhill.com, dabbieri@sullivanhill.com, frederick@sullivanhill.com, hill@sullivanhill.com, mcallister@sullivanhill.com, rez@sullivanhill.com, stein@sullivanhill.com,vidovich@sullivanhill.com
Eric D Madden emadden@diamondmccarthy.com, cburrow@diamondmccarthy.com, kbarlett@diamondmccarthy.com
Eric W. Swanis barberc@gtlaw.com, lvlitdock@gtlaw.com, sheffieldm@gtlaw.com, swanise@gtlaw.com
Erin E Jones ejones@diamondmccarthy.com
F. Christopher Austin austinc@gtlaw.com, haros@gtlaw.com, kimmk@gtlaw.com, lvlitdock@gtlaw.com, neyc@gtlaw.com
Francis B Majorie fbmajorie@themajoriefirm.com; pperry@themajoriefirm.com, vrunning@themajoriefirm.com
Gabriel M Weaver gweaver@milbank.com
Georganne Bradley georganne.bradley@bullivant.com, mary.opatrny@bullivant.com
Gerald M. Gordon usdcnotices@gordonsilver.com

Gregory E. Garman usdcnotices@gordonsilver.com

Gregory L Wilde feddc@wildelaw.com

Henry H. Oh henry.oh@dlapiper.com

James D. Greene jgreene@greeneinfusolaw.com, cjorvig@greeneinfusolaw.com, fritchie@greeneinfusolaw.com, nkinel@DSLLP.COM, ztakos@greeneinfusolaw.com

James P. Shea jshea@sheacarlyon.com, cmuniz@sheacarlyon.com, ggianoulakis@sheacarlyon.com, ltreadway@sheacarlyon.com, manthony@sheacarlyon.com, rmsmith@sheacarlyon.com, swinder@sheacarlyon.com

Janet L. Chubb twaldo@armstrongteasdale.com

Jason Maier maierj@gtlaw.com, haros@gtlaw.com, kimmk@gtlaw.com, lvlitdock@gtlaw.com

Jeanette E. McPherson usdcfilings@s-mlaw.com

Jeffrey R Sylvester jeff@sylvesterpolednak.com, jsylvester@sylvesterpolednak.net

Jon T Pearson pearsonj@ballardspahr.com, darnellk@ballardspahr.com, gradyc@ballardspahr.com

Joshua S. Akbar jakbar@sonnenschein.com

Katherine M Windler katherine.windler@bryancave.com

Kenneth N. Hickox KZH@bickelbrewer.com, KZH@bickelbrewer.com

Kent F Larsen kfl@slwlaw.com, cld@slwlaw.com

Kevin A. Darby kevin@darbylawpractice.com

Laurel E. Davis ldavis@fclaw.com, mhurtado@fclaw.com

Lenard E. Schwartzer usdcfilings@s-mlaw.com

Liane K Wakayama lwakayama@marquisaurbach.com, kchandler@marquisaurbach.com

Lindsay S Katz lkatz@tpw.com

Lindsy Nicole Alleman lalleman@fulbright.com

Lisa A Rasmussen lisa@lrasmussenlaw.com, Alex@lrasmussenlaw.com, Andrew@lrasmussenlaw.com, Secretary@lrasmussenlaw.com

Louis A. Curcio LCurcio@sonnenschein.com, CAlbanese@sonnenschein.com, Fitzmaurice@sonnenschein.com, jakbar@sonnenschein.com, JForstot@sonnenschein.com, rashinoff@sonnenschein.com

Louis Martin Bubala , III lbubala@armstrongteasdale.com; bsalinas@armstrongteasdale.com; twaldo@armstrongteasdale.

Luis A Ayon ayonl@gtlaw.com, barberc@gtlaw.com, lvlitdock@gtlaw.com

Mark Albright gma@albrightstoddard.com, danderson@albrightstoddard.com

Matthew C Zirzow usdcnotices@gordonsilver.com

McAlan W Duncan mcalanwduncan@gmail.com

Melanie A Ells lawyermel@cox.net, kristinsmith23@gmail.com

Michael Yoder myoder@diamondmccarthy.com, cburrow@diamondmccarthy.com

Michael J Collins mjc@bickelbrewer.com

Michael S Gardner mzg@bickelbrewer.com

Mitchell J. Langberg mlangberg@bhfs.com, orodriguez@bhfs.com

Nikoll Nikci Nik@schwartzlawyers.com, ecf@schwartzlawyers.com, sam@schwartzlawyers.com

Norlynn B. Price nprice@fulbright.com, cchiasson@fulbright.com

Patrick Fitzmaurice fitzmaurice@sonnenschein.com, yzitelli@sonnenschein.com

Peter D. Navarro pnavarro@klnevada.com, kgregos@klnevada.com, usdistrict@klnevada.com

Peter W. Guyon pguyon@yahoo.com

Philip M. Hymanson hymansonp@gtlaw.com, andrewst@gtlaw.com,
gutierrezjo@gtlaw.com, haros@gtlaw.com, kimmk@gtlaw.com,
lvlitdock@gtlaw.com, maierj@gtlaw.com, mandallk@gtlaw.com
Puneet K Garg gargp@gtlaw.com
Randolph L. Howard rhoward@klnevada.com,
ckishi@klnevada.com,usdistrict@klnevada.com
Richard McKnight rmcknight@lawlasvegas.com, cburke@lawlasvegas.com,
dmincin@lawlasvegas.com, gkopang@lawlasvegas.com, mmcalonis@lawlasvegas.com
Rob Charles RCharles@LRLaw.com, cjordan@lrlaw.com
Robert M. Millimet RRM@bickelbrewer.com
Samuel A. Schwartz sam@schwartzlawyers.com, ecf@schwartzlawyers.com
Shawn W. Miller smiller@sheacarlyon.com, aboehmer@sheacarlyon.com,
ltreadway@sheacarlyon.com, rmsmith@sheacarlyon.com
Shlomo S. Sherman ssherman@sheacarlyon.com, ltreadway@sheacarlyon.com,
manthony@sheacarlyon.com, rmsmith@sheacarlyon.com, swinder@sheacarlyon.com
Spencer M Judd Spencer@jsmjlaw.com
Stanley W Parry parrys@ballardspahr.com, gradyc@ballardspahr.com,
sedillom@ballardspahr.com, waltons@ballardspahr.com
Stephanie O. Sparks sos@hogefenton.com
Steven C. Strong sstrong@rqn.com
Talitha B. Gray usdcnotices@gordonsilver.com
Tami D. Cowden cowdent@gtlaw.com
Terry A. Coffing tcoffing@marquisaurbach.com, smong@marquisaurbach.com
Thomas H. Fell usdcnotices@gordonsilver.com
Wade B Gochnour WBG@h2law.com, kdp@h2law.com
William Pletcher wpletcher@milbank.com
William A. Brewer , III wab@bickelbrewer.com, wab@bickelbrewer.com

       b.    **United States mail**, postage fully prepaid (list persons and addresses):

☐  c.    **Personal Service** (list persons and addresses):
        I personally delivered the document(s) to the persons at these addresses:

☐  d.    **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

☐  e.    **By fax transmission** (list persons and fax numbers):

☐  f.    **By messenger**:

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 3rd day of February, 2011.

_____          _____
Barbara Salinas                      /s/ Barbara Salinas
Name                           Signature