**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 19 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In the Matter of: USA COMMERCIAL MORTGAGE COMPANY, <br><br> Debtor, <br><br>――――――――――――― <br><br> 3685 SAN FERNANDO LENDERS, LLC; et al., <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> CROSS EQUITIES PARTNERS, LLC; et al., <br><br> Intervenors - Appellees, <br><br> v. <br><br> SILAR ADVISORS, LP; et al., <br><br> Defendants - Appellants, <br><br> and <br><br> WILLIAM A. LEONARD, Jr., Trustee for the Estate of Asset Resolution LLC, | No. 09-16897 <br><br> D.C. Nos.   2:07-cv-00892-RCJ-GWF <br><br>              3:07-cv-00241-RCJ-GWF <br><br>              2:07-cv-00894-RCJ-GWF <br><br>              2:07-cv-01133-RCJ-GWF <br><br>              3:07-cv-01389-RCJ-GWF <br><br><br> MEMORANDUM[*] |

―――――――――――

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Trustee - Appellant,

v.

COMPASS FINANCIAL PARTNERS
LLC; et al.,

Defendants - Appellees.

---

In the Matter of: USA COMMERCIAL
MORTGAGE COMPANY,

Debtor,

No. 09-17382

D.C. No. 2:07-cv-00892-RCJ-
GWF

---

ROBERT J. KEHL; et al.,

Plaintiffs - Appellees,

v.

ASSET RESOLUTION, LLC,

Defendant - Appellant,

SILAR ADVISORS, LP; et al.,

Defendants - Appellees.

---

In re: ASSET RESOLUTION, LLC,

No. 09-73419

D.C. No. 2:07-cv-00892-RCJ-
GWF

---

ASSET RESOLUTION, LLC,

2

Petitioner,

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA, LAS
VEGAS,

Respondent,

ROBERT A. KEHL; et al.,

Real Parties in Interest.

---

In the Matter of: USA COMMERCIAL
MORTGAGE COMPANY,

In Re,

CERTAIN DIRECT LENDERS; et al.,

Plaintiffs - Appellees,

v.

DEBT ACQUISITION COMPANY OF
AMERICA, LLC; et al.,

Appellees,

ASSET RESOLUTION, LLC; et al.,

Defendants - Appellants,

No. 10-15253

D.C. No. 2:07-cv-00892-RCJ-
GWF

3

UNITED STATES TRUSTEE,

        Trustee - Appellee.

---

ASSET RESOLUTION, LLC; et al.,

        Debtors - Appellants,

  v.

DONNA CANGELOSI; et al.,

        Respondents - Appellees,

  and

WILLIAM A. LEONARD, Jr.,

        Trustee - Appellee.

No. 10-15496

D.C. No. BK-S-09-32824-RCJ

---

ASSET RESOLUTION, LLC; et al.,

        Debtors - Appellants,

  v.

DONNA CANGELOSI; et al.,

        Respondents - Appellees,

WILLIAM A. LEONARD, Jr.,

        Trustee - Appellee.

No. 10-15500

D.C. No. BK-S-09-32824-RCJ

4

Appeal from the United States District Court
for the District of Nevada
Robert C. Jones, Chief District Judge, Presiding

Submitted January 12, 2011**

Before: GOODWIN and W. FLETCHER, Circuit Judges, and MILLS, Senior District Judge.***

These consolidated interlocutory appeals arise from the related bankruptcy proceedings of USA Commercial Mortgage ("USACM") and Asset Resolution, LLC ("Asset Resolution"), as well as subsequent civil litigation brought by certain creditors (the "Direct Lenders"). These matters are all now before Chief Judge Robert C. Jones of the District of Nevada.

USACM was in the business of underwriting and brokering short-term commercial loans on behalf of private investors, some of whom are the Direct Lenders involved in the present litigation. USACM also acted as the servicer for these loans pursuant to Loan Service Agreements ("LSAs") made with the Direct Lenders. Following USACM's bankruptcy, Compass Partners, LLC and Compass USA SPE, LLC (collectively "Compass") acquired all of USACM's relevant assets, including its

---

**The panel unanimously concludes this matter is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

***The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

rights under the LSAs.  Silar Advisors, LP ("Silar") financed Compass's acquisition of these assets and subsequently foreclosed, conveying all interest in the relevant LSAs to Asset Resolution.  Prior to this development, the parties here had already been engaged in litigation over whether USACM's successor in interest may be terminated as the loan servicer under the LSAs, as well as the compensation to which USACM's various successors might be entitled under the LSAs.

The issues raised here by Asset Resolution and other affiliated Appellants[1] arose during the course of this litigation, which is still ongoing before the district court.  We address our jurisdiction and decision as to each appeal and petition separately below.  Because the parties are familiar with the facts and procedural history of these matters, we do not recite them here except as necessary to our decision.

### A.    Appeal No. 10-15253

On November 6, 2007, the district court entered a preliminary injunction that (1) enjoined the Direct Lenders from taking action to terminate Compass as their loan servicer under the LSAs and (2) enjoined the disbursement of disputed funds related to the LSAs pending further order of the court.  No party appealed this injunction.

---

[1]For ease of reference, this memorandum disposition will refer to Asset Resolution to represent Appellants' claims.

Asset Resolution was substituted for Compass under the preliminary injunction after acquiring the relevant assets in September 2008, and the Direct Lenders filed an interlocutory appeal of this modification to the injunction, which we affirmed.[2]

While the Direct Lenders were enjoined from directly terminating Asset Resolution as loan servicer, the preliminary injunction contained a provision that allowed for 51 percent of the lenders associated with any specific loan to move the court for an order of relief from the preliminary injunction that would allow them to terminate the loan servicer associated with a specific loan. Under this provision, the Direct Lenders moved to terminate Asset Resolution as the loan servicer for twenty-nine loans at issue in this litigation. Finding that the Direct Lenders had satisfied the 51-percent requirement, the district court granted the Direct Lenders relief from the preliminary injunction as to these twenty-nine loans (the "Termination Order").

On September 18, 2009, the district court also entered partial summary judgment, resolving the ownership of the disputed funds. The district court vacated the injunction on January 25, 2010, noting that "[t]he need for that Preliminary Injunction has now ended." Asset Resolution timely filed an interlocutory appeal of

---

[2]We affirmed this modification of the preliminary injunction on September 8, 2010, while remanding the issue of whether a bond should be imposed. *Cangelosi v. Silar Advisors, LP* (*In re USA Commer. Mortg. Co.*), 397 Fed. Appx. 300, 306 (9th Cir. 2010) (unpub. disp.).

the district court's order vacating the preliminary injunction, and we stayed the order pending this appeal.

First, Asset Resolution argues that the district court lacked jurisdiction to vacate the injunction and that injunctive relief is still needed to protect its bankruptcy estate. Second, Asset Resolution argues that the Termination Order was based on errors of law and fact, thereby invalidating the basis upon which the court found the injunction was no longer needed. Finally, Asset Resolution asks us to certify questions to the Nevada Supreme Court related to its argument that the Termination Order was based on an incorrect application of state law.

We have appellate jurisdiction over the district court's decision to vacate the preliminary injunction under 28 U.S.C. § 1292(a)(1). Because the Termination Order is "inextricably intertwined" with the district court's decision to vacate the preliminary injunction, we exercise pendent appellate jurisdiction to review the Termination Order. *See Meredith v. Oregon*, 321 F.3d 807, 812–14 (9th Cir. 2003). We review decisions regarding preliminary injunctive relief for an abuse of discretion. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011). We affirm, lift the stay, and deny Appellants' request to certify questions of state law.

### 1.     The Order Vacating the Preliminary Injunction

Asset Resolution first contends that the district court lacked jurisdiction to vacate the injunction because the appeal of the prior modification to the injunction, Appeal 09-15632, was still pending before this court.[3]  "While a preliminary injunction is pending on appeal, a district court lacks jurisdiction to modify the injunction in such manner as to 'finally adjudicate substantial rights directly involved in the appeal.'" *A&M Records v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002) (quoting *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177 (1922)).

Appeal 09-15632, which was brought by the Direct Lenders, involved the district court's substitution of Asset Resolution as a party to the injunction.  The decision to vacate the injunction due to changed circumstances did not adjudicate the rights affected by Asset Resolution's inclusion under the terms of the original injunction.  Indeed, in affirming the modification, we rejected any argument attacking the validity of the original injunction as separate from the modification and therefore untimely.  *In re USA Commercial Mortg. Co.*, 397 Fed. Appx. at 302–306 (citing *Gon v. First State Ins. Co.*, 871 F.2d 863, 866–67 (9th Cir. 1989)).  The district court therefore maintained jurisdiction to vacate the injunction under Rule 62(c) of the

---

[3]We do not find the other interlocutory appeals that appear to be referenced by Asset Resolution—09-17382, 09-73419, and 09-16897—to be relevant to this preliminary injunction.

Federal Rules of Civil Procedure. *See Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) ("The plain language of Rule 62(c) allows the district court to 'suspend, modify, restore, or grant an injunction' during the pendency of the defendant's interlocutory appeal, and such action can inure to the benefit of plaintiffs or defendants.") (quoting Fed. R. Civ. P. 62(c)); *A&M Records*, 284 F.3d at 1099 ("A district court has inherent authority to modify a preliminary injunction in consideration of new facts.").

Asset Resolution also argues that the injunction's provisions are still needed to protect the remaining assets of its bankruptcy estate, following the Direct Lenders' termination of the LSAs. This suggestion of alternate grounds to support continuing the injunction does not identify a legal error or a clearly erroneous finding of fact by the district court upon which we could reverse its decision to vacate the injunction. *See Wildwest Inst. v. Bull*, 472 F.3d 587, 590 (9th Cir. 2006) ("As long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case.") (citation omitted).

### 2.     The Termination Order

Asset Resolution next argues that the district court's primary basis for vacating the injunction was invalid, contending that the Termination Order was based upon

both errors of fact and errors of state law. The terms of the preliminary injunction provided that "[f]ifty-one percent (51%) or more of the Direct Lenders in a Loan, whether acting directly or acting through a person or entity holding a power of attorney of such Direct Lender granted after such Direct Lender's receipt of this Preliminary Injunction Order . . . , may file a motion seeking an order authorizing the termination of [Asset Resolution] as servicer with respect to such Loan." Based on the declaration of Roger Stubbs, the district court found that the 51-percent requirement was met and granted the Direct Lenders the requested relief under the terms of the preliminary injunction. Despite Asset Resolution's objections to the Stubbs Declaration, the district court did not clearly err in finding this evidence satisfied the terms of the injunction. *See Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009) (noting our "review is 'limited and deferential,' and it does not extend to the underlying merits of the case") (quoting *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)). Indeed, in light of its experience overseeing these proceedings, the district court is entitled to broad deference in interpreting whether the provisions of its own orders have been satisfied. *See Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1119 (9th Cir. 2009) ("We review a district court's interpretation of a consent decree de novo, with 'deference . . . based on the court's extensive oversight of the decree from

11

the commencement of the litigation to the current appeal.'") (quoting *Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 855 (9th Cir. 2007)); *Zinchiak v. CIT Small Bus. Lending Corp.* (*In re Zinchiak*), 406 F.3d 214, 224 (3d Cir. 2005) (noting that the bankruptcy court was "well suited to provide the best interpretation of its own order") (internal quotation marks omitted).

Asset Resolution's further argument—that the district court committed legal error in the Termination Order by not requiring good cause to support relief from the preliminary injunction—is without merit. As noted by the district court, the terms of the preliminary injunction did not require a showing of good cause to support relief from its terms, only a showing that 51 percent of the affected lenders supported terminating the loan servicer. The LSAs themselves did not require court approval for the Direct Lenders to terminate, and the Termination Order did not alter Asset Resolution's rights under the LSAs, including its right to bring a claim for wrongful termination. Accordingly, certification of Appellants' proposed questions of state law is unnecessary because these questions are irrelevant to an interpretation of the terms of the injunction.[4] Because Appellants have failed to identify a factual or legal error

_____

[4]To the extent any party would argue that the preliminary injunction improperly affected their underlying rights in the LSAs, we reject such argument as waived because no party has appealed the entry of the original preliminary injunction.

with the Termination Order, this order does not undermine the validity of the district court's subsequent decision to vacate the preliminary injunction.

**AFFIRMED.**

### B.    Appeal No. 09-16897

On August 8, 2009, the district court entered an order authorizing the sale of a commercial property, the "Gess Property," and directing the specific distribution of the proceeds.  The district court allowed for the sale of the Gess Property on an emergency basis because a third-party lienholder had scheduled a foreclosure sale on this property, in which the Direct Lenders had acquired interest following the default of the original borrower.  Due to these circumstances, the sale recovered only $8.5 million, less than one-third of the original principal amount of $26.5 million.  Asset Resolution claims over $12 million in various servicing fees under the LSAs associated with this property and seeks recovery of all of the sale proceeds on this basis.  In distributing the sale proceeds, the district court did not allow Asset Resolution to recover default interest or late fees under the LSAs and limited its proportional recovery to the amount of the sale proceeds, rather than the original loan amount.

The district court certified the distribution order as final under Rule 54(b), although it provided no reasoning for doing so.  Asset Resolution now appeals the

district court's distribution of the sale proceeds, arguing that the district court disregarded the relevant terms of the LSAs.

Certification of this order as final and appealable under Rule 54(b) was not warranted here. *See Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (holding that "consideration of judicial administrative interests is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals") (citation and internal quotation marks omitted). Although the distribution order was final as to the Gess property, Asset Resolution's rights under the LSAs is an issue at the heart of this litigation and will reappear in relation to all of the properties at issue. *See id.* at 877–83 (discussing Rule 54(b) in relation to a distinct claim that shares factual and legal issues with claims yet to be adjudicated); *McIntyre v. United States*, 789 F.2d 1408, 1410 (9th Cir. 1986) ("We particularly scrutinize a district judge's rule 54(b) certification . . . to 'prevent piecemeal appeals in cases which should be reviewed only as single units.'") (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)). While the district court found no reason for delay, it "did not explicitly take judicial administrative interests into account." *Wood*, 422 F.3d at 882. Because Asset Resolution's right to compensation under the LSAs is an issue that will likely reappear in a future appeal following a final judgment by the district court, the administrative concerns inherent to Rule 54(b)

14

certification are not met here.  *See Curtiss-Wright Corp.*, 446 U.S. at 10 (holding "that the standard against which a district court's exercise of discretion is to be judged is the 'interest of sound judicial administration'") (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956)).  Even if Asset Resolution's contractual rights related to the Gess property were limited by the emergency situation faced by the district court, this issue is better evaluated following a final judgment regarding the LSAs.  Accordingly, we dismiss this appeal for lack of appellate jurisdiction.

**DISMISSED.**

**C.     Appeal Nos. 09-17382 and 09-73419**

On September 30, 2009, the Direct Lenders moved to enjoin Asset Resolution from selling a second piece of real property, the "Anchor B Property," on which the borrower had also defaulted.  Two days before a hearing on this motion before the district court in Nevada, however, Asset Resolution and several affiliated entities filed for Chapter 11 bankruptcy protection in the Southern District of New York (the "ARC bankruptcies").  On October 26, 2009, the district court in Nevada denied the Direct Lenders' motion as moot because the property had already been sold.  The district court did enter a preliminary injunction, however, that enjoined Asset Resolution and its affiliated entities from disbursing the proceeds of the sale.

15

Asset Resolution immediately filed an interlocutory appeal of the preliminary injunction, 09-17382, arguing that the district court lacked jurisdiction over the sale proceeds and violated the automatic stay imposed by its bankruptcy petition under 11 U.S.C. § 362(a)(1).  Asset Resolution also filed a petition for writ of mandamus, 09-73419, claiming that the district court's failure to recognize the automatic stay was irreparably harming its administration of the bankruptcy estate.

In November 2009, however, the Bankruptcy Court for the Southern District of New York transferred the ARC bankruptcies to the District of Nevada, where the proceedings came before Judge Jones after the reference to the bankruptcy court was withdrawn.  The transfer of jurisdiction over the ARC bankruptcies to Judge Jones is not at issue in these consolidated appeals.  Accordingly, the district court's present jurisdiction over the ARC bankruptcies and the sale proceeds is not at issue, nor can it be disputed that Judge Jones now has jurisdiction to modify the automatic stay.  *See* 11 U.S.C. § 362(d).

In light of the intervening procedural changes to the status of the ARC bankruptcies, a review of this prior injunction at this point could not result in any effectual relief because the relevant bankruptcy assets are under the jurisdiction and control of Judge Jones and the appointed bankruptcy trustee.  Accordingly, we dismiss both this appeal and the petition as moot.  *See Lewis v. Continental Bank Corp.*, 494

16

U.S. 472, 477–78 (1990) ("Th[e] case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.  To sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed, or when review was obtained in the Court of Appeals."); *IRS v. Pattullo* (*In re Pattullo*), 271 F.3d 898, 901 (9th Cir. 2001) ("'If an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal is moot and must be dismissed.'") (quoting *United States v. Arkison* (*In re Cascade Rds.*), 34 F.3d 756, 759 (9th Cir. 1994)).

**DISMISSED.**

### D.    Appeal No. 10-15500

As noted, Asset Resolution along with several affiliated entities filed for Chapter 11 bankruptcy protection in October 2009.  Sitting as the bankruptcy court for these proceedings, the district court lifted the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1), in order for the Direct Lenders to proceed with their civil litigation against Asset Resolution.  Asset Resolution appeals this order, arguing that handling the civil claims separately from the bankruptcy proceedings is inefficient.

We have jurisdiction under 28 U.S.C. § 158(d)(1).  *See Nat'l Envtl. Waste Corp. v. City of Riverside* (*In re Nat'l Envtl. Waste Corp.*), 129 F.3d 1052, 1054 (9th

Cir. 1997) ("Orders granting or denying relief from the automatic stay are deemed to be final orders.").  "We review for abuse of discretion orders granting relief from an automatic stay." *Moldo v. Matsco, Inc.* (*In re Cybernetic Servs.*), 252 F.3d 1039, 1045 (9th Cir. 2001) (citing *Benedor Corp. v. Conejo Enters., Inc.* (*In re Conejo Enters., Inc.*), 96 F.3d 346, 351 (9th Cir. 1996)).  The district court did not abuse its discretion by lifting the automatic stay for cause in the interest of judicial economy.  *See In re Conejo Enters.*, 96 F.3d at 353.

Asset Resolution does not suggest that the district court applied the wrong legal standard under 11 U.S.C. § 362(d).  Despite its disagreement with the court's determination that judicial economy was best served by lifting the stay, Asset Resolution has failed to suggest that the district court's application of the "for cause" standard under § 362(d)(1) was illogical, implausible, or without support from facts in the record.  *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009); *In re Conejo Enters.*, 96 F.3d at 352 (noting that "cause" for lifting an automatic stay under 11 U.S.C. § 362(d) "has no clear definition and is determined on a case-by-case basis") (citation and internal quotation marks omitted); *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1288 (2d Cir. 1990) (noting that "broad discretion is accorded to bankruptcy and district courts" in assessing cause for relief from an automatic stay).

18

**AFFIRMED.**

**E.      Appeal No. 10-15496**

Finding cause existed under 11 U.S.C. § 1112(b), the district court granted the Direct Lenders' motion to convert the ARC bankruptcies, which were originally filed under Chapter 11, to cases under Chapter 7.  The order also appointed a Chapter 7 Trustee to control Asset Resolution's bankruptcy estate, including any relevant rights under the LSAs.  The order stated, however, that the Trustee lacked authority "to operate Asset Resolution's loan servicing business," noting that the Direct Lenders had terminated Asset Resolution as loan servicer.

Asset Resolution timely appealed, arguing (1) that the district court's findings of cause to support conversion were clearly erroneous, (2) that the district court violated Rule 9014 of the Federal Rules of Bankruptcy Procedure in handling the motion, and (3) that the order improperly terminated its rights under the LSAs.  We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1) to review the conversion of bankruptcy petitions to cases under Chapter 7.  *See Rosson v. Fitzgerald* (*In re Rosson*), 545 F.3d 764, 770 (9th Cir. 2008) ("An order converting a case under another chapter to one under Chapter 7 determines finally the discrete issue to which it is addressed, i.e., whether or not the case will be converted.").  We do not have appellate jurisdiction under § 158(d)(1) to address the parties' rights under the LSAs

because there has been no final order adjudicating these rights. *See Schulman v. California* (*In re Lazar*), 237 F.3d 967, 984–86 (9th Cir. 2001). Accordingly, we address only the district court's conversion of the bankruptcy petitions to cases under Chapter 7.

We review for an abuse of discretion the district court's order to convert the ARC bankruptcies to cases under Chapter 7. *See Pioneer Liquidating Corp. v. U.S. Trustee* (*In re Consol. Pioneer Mortg. Entities*), 264 F.3d 803, 806–807 (9th Cir. 2001) ("Such a decision 'will be reversed only if based on an erroneous conclusion of law or when the record contains no evidence on which [the bankruptcy court] rationally could have based that decision.'") (quoting *In re Conejo Enter., Inc.*, 96 F.3d at 351) (alteration in original). We affirm.

Under 11 U.S.C. § 1112(b)(4)(A), a debtor's "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" supports cause to convert a bankruptcy petition to a case under Chapter 7. The record here contains evidence suggesting that Asset Resolution had a negative cash flow and could not reasonably depend on future fees as a loan servicer following the Direct Lenders' termination of the LSAs. Based on this evidence, the district court did not abuse its discretion in finding there was "nothing to reorganize" and converting the case pursuant to § 1112(b)(4)(A). *See In re Consol. Pioneer Mortg.*

20

*Entities*, 264 F.3d at 806–807; *Loop Corp. v. U. S. Trustee*, 379 F.3d 511, 515–16 (8th Cir. 2004) ("[A] negative cash flow situation alone is sufficient to establish continuing loss to or diminution of the estate.") (internal quotation marks omitted).

Asset Resolution's argument that the order violated notice and hearing requirements imposed under Rule 9014 and associated local rules is without merit. Appellants here filed briefing opposing the Direct Lenders' motion to convert the bankruptcy cases and argued at the hearing scheduled on the matter. Accordingly, the notice requirements under Rule 9014(a) were satisfied as to the Appellants, and there is no basis to suggest that Appellants have standing to assert a claim to lack of proper notice on the part of third-party creditors. Further, Asset Revolution's negative cash flow and the Direct Lenders' termination of the LSAs were not factually disputed. Therefore, an evidentiary hearing was not required under Rule 9014(d).

**AFFIRMED.**

**F.     Conclusion**

For the reasons stated, we dismiss Appeal 09-16897, Appeal 09-17382, and Petition 09-73419 for lack of appellate jurisdiction. We affirm the district court as to Appeal No. 10-15253, Appeal 10-15500, and Appeal 10-15496.