1          UNITED STATES DISTRICT COURT
                DISTRICT OF NEVADA
2      BEFORE THE HONORABLE ROBERT C. JONES, CHIEF JUDGE
                    ---o0o---
3

4    IN RE:  USA COMMERCIAL          :
                                     :
5    MORTGAGE COMPANY,               :
                                     :  No. 2:07-CV-892-RCJ
6              Debtor.               :
     _____     :  August 22, 2012
7                                     :
     3685 SAN FERNANDO LENDERS,      :  Reno, Nevada
8    LLC, et al.,                    :
                                     :
9              Plaintiffs,           :
                                     :
10         versus                    :
                                     :
11   COMPASS USA SPE, LLC, et        :
     al.,                            :
12                                    :
               Defendants.           :
13                                    :

14

15            TRANSCRIPT OF ORAL ARGUMENT

16   APPEARANCES:

17   FOR THE PLAINTIFFS:        ROBERT MILLIMET, JANET CHUBB
                                Attorneys at Law
18
     FOR THE SILAR              FRANCIS MAJORIE, MELANIE HILL,
19   DEFENDANTS:                Attorneys at Law

20   FOR THE COMPASS            DANIEL HAYWARD
     DEFENDANTS:                Attorney at Law
21
     FOR THE TRUSTEE:           JONATHAN DABBIERI
22                              Attorney at Law

23   Reported by:               Margaret E. Griener, CCR #3, RDR
                                Official Reporter
24

25   (Appearances continued on next page.)

2

```
 1   APPEARANCES:
     (Continued)
 2

 3   FOR MILBANK TWEED, WEIL    LAWRENCE BARTH AND TODD BICE
     GOTSCHAL AND LOMAZOW:      Attorney at Law
 4

 5   FOR SHEPPARD MULLIN:       GAYLE KERN
                                Attorney at Law
 6

 7   FOR EPSTEIN:               JENNIFER K. HOSTETLER
                                Attorney at Law
 8

 9   FOR BULLIS, ALGER,         DENNIS PRINCE
     BAILEY:                    Attorney at Law
10

11   FOR SETTLEMENT             EUGENE SULLIVAN
     COUNSEL:                   Attorney at Law
12

13                             CHRISTOPHER ISAAC
                               IN PROPRIA PERSONA
14

15

16

17

18

19

20

21

22

23

24

25
```

3

1              RENO, NEVADA, WEDNESDAY, AUGUST 22, 2012, 9:06 A.M.

2                               ---o0o---

3

4                   THE COURT:  Let's see.  Asset Resolution,

5    please.

6                   MR. BARTH:  Good morning, your Honor.

7              Lawrence Barth, Munger, Tolles & Olson for Milbank

8    Tweed, Weil Gotschal, and Mr. Lomazow who are objecting to the

9    form of the order that was lodged with the Court.

10                  MR. BICE:  Good morning, your Honor.

11             Todd Bice, Pisanelli Bice, on behalf of the same

12   parts as Mr. Barth.  Thank you, sir.

13                  MR. MILLIMET:  Good morning, your Honor.

14             It's a pleasure to be back in the State of Nevada.

15   Rob Millimett of Bickel & Brewer on behalf of certain direct

16   lenders.

17                  THE COURT:  You're *pro hac vice*, right?

18                  MR. MILLIMETT:  Yes.

19                  THE COURT:  Yes.  Okay.

20                  MR. DABBIERI:  Good morning, your Honor.

21   Mr. Jonathan Dabbieri on behalf of William Leonard, the

22   Chapter 7 Trustee.

23                  THE COURT:  See, I just don't trust out-of-state

24   attorneys, sir.

25                          (Laughter.)

1          MR. MILLIMET:  I can't help where I live,

2    your Honor.

3          MR. MAJORIE:  And here comes another one, Judge.

4    Good morning, your Honor.

5          Francis Majorie on behalf of Silar and others, and,

6    yes, I'm *pro haced*.

7          THE COURT:  Yes, thank you.

8          MR. HAYWARD:  Good morning, your Honor.  Dan

9    Hayward.  I live down the street.

10          THE COURT:  Good.

11          MR. HAYWARD:  Appearing on behalf of the Compass

12    defendants in the 210 case with the exception of the

13    Mr. Piskun, we've withdrawn from him, also in the 1100 case

14    with the exception of Mr. Piskun.

15          I would note in the 892 case, I've had a

16    stipulation --

17          THE COURT:  Say that one more time.  You've

18    withdrawn from --

19          MR. HAYWARD:  The 210 and 1100 adversary cases,

20    I've withdrawn, and Mr. Piskun has substituted in *pro per*.

21          THE COURT:  That's right, and you've told me why

22    previously.

23          MR. HAYWARD:  And, your Honor, I do have -- I

24    think my pending stipulation that Mr. Piskun and I filed in

25    the 892 case has been pending for a couple of months

 1    unopposed.  I would seek some clarification on that.

 2            I'm still counsel for all the Compass defendants in

 3    the 892 case, including Mr. Piskun, as of today, I guess.

 4                THE COURT:  Okay.  Your withdrawal, the order is

 5    still pending?

 6                MR. HAYWARD:  It is, your Honor.

 7                THE COURT:  I'm sorry.  Will Madam Clerk remind

 8    me, please.  Let's get that entered.

 9                MR. HAYWARD:  All right.  Thank you, your Honor.

10                MR. SULLIVAN:  Good morning, your Honor.

11            Gene Sullivan of the D.C. law firm of Freeh,

12    Sporking & Sullivan.  I'm staying at a local hotel.

13                THE COURT:  Good.

14            See, I was born in a little town south of Ely,

15    Nevada, you know, that had all of 15, 20,000 people when I was

16    born.  That was Las Vegas, by the away, so I'm quite

17    provincial.

18                MS. KERN:  Good morning, your Honor.

19            Gayle Kern on behalf of Sheppard, Mullin & Hampton.

20    I was born in Reno, still here, and I am here for the limited

21    purpose of simply including Sheppard Mullin in any carveout

22    language that is included.

23            We did file a pleading last night.  We apologize for

24    the lateness of it, but it was for the very limited purpose of

25    simply being treated the same.

1          THE COURT:  I'm aware that you have filed it.  I

2  have not read it, of course.

3          MS. KERN:  Thank you.

4          THE COURT:  And in Las Vegas and then on the

5  telephone.

6          MS. HILL:  Good morning, your Honor.

7        Melanie Hill, local counsel on behalf of the Silar

8  interests.

9          THE COURT:  Thank you.

10          MS. HOSTETLER:  Good morning, your Honor.

11  Jennifer Hostetler on behalf of Epstein --

12          THE COURT:  Thank you.

13          MR. PRINCE:  Good morning, your Honor, Dennis

14  Prince on behalf of Bullis, Alger, Bailey (phonetic).

15          THE COURT:  Thank you, Mr. Prince.

16        On the telephone, please -- oops, in the courtroom.

17          MR. ISAAC:  My name is Christopher Isaac

18  appearing on behalf of myself.

19          THE COURT:  Thank you.  And on the telephone.

20          MS. CHUBB:  Good morning, your Honor.

21        This is Janet Chubb.  I'm actually in my old home in

22  Hollywood, but I do still live in Reno.  I, of course,

23  represent certain direct lenders.

24        I wanted to disclose to the Court that my law firm,

25  Armstrong Teasdale, represents Weil Gotschal in another

7

1   unrelated matter.

2          So for the purposes of this hearing, I am just going

3   to ask the Court to enter some order, whatever order you're

4   willing to enter, as soon as you possibly can.  Two of my

5   clients have died during this whole thing, and it's been over

6   a year since the settlement.  We really, really need to get

7   some order entered.  Thank you.

8          THE COURT:  Correct.

9          Anybody else on the phone?  All right.

10         MR. DUNCAN:  Good morning, your Honor.  McAlan

11  Duncan on behalf of certain direct lenders.

12         THE COURT:  Thank you.

13         All right.  From the objection it sounded like there

14  had been some substantial movement towards each other in final

15  language.  Do we have most of the issues worked out, and, if

16  not, which ones are outstanding, and I can just give you my

17  view on those issues.

18         MR. MAJORIE:  I think we have most of the issues

19  worked out, and I was receiving approvals, if you will, as

20  late as yesterday morning and afternoon.  So I apologize, I

21  couldn't be on a plane and also get an order to your Honor.

22         But with respect -- there are really two issues, I

23  think, left, and the first issue has to do with the name of

24  the trust, and if that were the only reason we were here,

25  Judge, we wouldn't be here.

1          THE COURT:  Yes, you would be embarrassed to be

2    here.

3          MR. MAJORIE:  That's right.

4          I really continued my objection only because I knew

5    we would be here for another -- for the objection relating to

6    the so-called vacature of the --

7          THE COURT:  Right.

8          MR. MAJORIE:  There's the 241 order --

9          THE COURT:  Well, let's call it the Nancy Pelosi

10   Trust or the Eric Holder Trust or something else.  What -- is

11   that a concern?  Can you solve that one, that first one?

12         MR. BARTH:  We should be able to, your Honor.

13         THE COURT:  So on the second issue, though, I do

14   have some views, just some guidance, not particular rulings.

15   You may want to ask me further.

16         And, that is, the purpose of this order should be,

17   as everybody agreed, to strike any prior rulings, not to make

18   contrary rulings or rulings especially that were directly

19   contrary to the jury's rulings or the Court's prior rulings.

20   But it should be very clear that those rulings are stricken as

21   part of the *quid pro quo* in the settlement.

22         So that's a general guideline as to how the language

23   should flow.

24         MR. MAJORIE:  Thank you, your Honor.

25         We have actually reached an agreement that that is

9

1    the point of dispute.

2            In other words, there won't be affirmative findings

3    contrary to your Honor's findings, but the debate or the

4    objection is -- the proposal is that there will be a vacature

5    or a withdrawal of all rulings relating to Silar parties, the

6    Estate and Piskun.

7            THE COURT:  And should be very clearly stated.

8            MR. MAJORIE:  And the lawyer defendants are

9    objecting to that and saying that your Honor should not do

10   that.

11           THE COURT:  Should not strike it.

12           MR. MAJORIE:  That's right, should not strike

13   them.

14           The other -- the other issue is that there is this

15   Rumph 241 order that was entered in the consolidated 241 case.

16           The 892 was obviously the result of a consolidation

17   of numerous cases.  Last year, July of 2011, your Honor

18   entered too early a declaratory judgment piece of paper and

19   immediately vacated it when we all pointed out to your Honor

20   that it was too early and that we needed more time.

21           Unfortunately, the clerk apparently also entered

22   that order in what's known as the 241 case, your Honor, and

23   this is fully briefed --

24           THE COURT:  What's the number of the new case,

25   the new jury trial case?

1          MR. MAJORIE:  210.

2          THE COURT:  210, right.

3          MR. MAJORIE:  But if your Honor will recall,

4  before I was involved but when the defendants were actually

5  the lawyers representing Compass, there was a consolidation of

6  various adversary proceedings and other proceedings into the

7  892 case.

8          Well, apparently the clerk didn't close down the

9  file for the 241 case, which was one of them consolidated into

10  the 892 case, so when your Honor entered what's called the

11  final judgment in July --

12          THE COURT:  So it's still there or what?

13          MR. MAJORIE:  It's still there, and everybody in

14  the 241 case has moved to vacate it saying, you know, it was

15  not supposed to be entered.

16          THE COURT:  Subject to objection in a moment,

17  just present the order that does that.

18          MR. MAJORIE:  We did that, your Honor, and they

19  filed an objection.  They haven't filed an intervention.

20  They're simply saying as third parties to the 210 case, or

21  really the 892 consolidated case, we're not intervening in

22  that case, but we don't think that you should --

23          THE COURT:  The order that you presented to me

24  simply strikes it?

25          MR. MAJORIE:  It simply strikes it.

1          THE COURT:  It doesn't make contrary findings.

2          MR. MAJORIE:  No, it does not.

3          THE COURT:  Okay.

4          MR. MAJORIE:  And everybody in the 892 case,

5   that is a party in the 892 case, has jointly moved for that,

6   and it stands independent from the settlement order process.

7          THE COURT:  Okay.

8          MR. MAJORIE:  It's been fully briefed, and we

9   would ask your Honor to enter that order.

10          THE COURT:  Let me hear from the other side.

11      As I understand your objection, sir, really it's

12   just that you don't want -- number one, you didn't want

13   opposite findings, and that, of course, sounds to me like

14   we've resolved that, but you also wanted it clear that you

15   weren't bound, or this settlement doesn't bind you or your

16   parties in any respect.

17      And how does a striking of any findings against

18   Silar do that as long as it's clear that all we're doing is

19   striking the findings against Silar?

20          MR. BARTH:  Well --

21          THE COURT:  If you're not a party to a lawsuit,

22   it doesn't affect you at all whether I let them stand or let

23   them go other than your potential use of collateral estoppel

24   against Silar in a subsequent suit, that's all.

25          MR. BARTH:  Your Honor has put his finger on it.

1    That's exactly --

2                    THE COURT:  You're not entitled to that.

3                    MR. BARTH:  Well, I would submit to you, and

4    we've argued to the Court, that we are.  Silar, as a party to

5    the 892 case --

6                    THE COURT:  You may be if the order still stood,

7    but what we have proposed here is for the benefit of all of

8    the direct lenders a settlement, and part of the cost, the

9    money that's coming out of Silar's pocket, is to get rid of

10   those orders.

11                   MR. BARTH:  Well, there's good Ninth Circuit

12   law, your Honor, on the question of whether a party can roll

13   the dice, suffer findings, and then wipe the slate clean by

14   settling and vacating those findings.

15                There's a tension at work, I don't have to tell you.

16   On one side of the tension is the courts favoring settlements,

17   I understand that, believe me.

18                   On the other side, though --

19                   THE COURT:  Let me rephrase your other side to

20   put it more accurately.  That tension really comes from the

21   courts.

22                   The appellate court says I don't like the ruling

23   that came up from the lower court, I want to publish a

24   reversal and publish authority, and the people who know that,

25   the lawyers who know that, say wait a minute, let's buy off

1   this appeal.

2                  MR. BARTH:  Right.

3                  THE COURT:  That's what happens.

4          So the real tension you were about to tell me is

5   between the parties.  That's not the case.  I'm rephrasing it.

6          The real tension is between the judge and/or the

7   judges who have bought totally, lock, stock and barrel, like

8   me, into the jury's finding in my prior orders.  You can bet I

9   have.

10         I'm still of the same opinion regarding Silar's

11  conduct and Piskun's conduct, but I also recognize that the

12  direct lenders have agreed let's settle, we want the money

13  rather than now the last ounce of vindictiveness, and so

14  that's why I added the words for the benefit of the direct

15  lenders.

16         Assuming that's the case, you know, if they

17  haven't -- if they're not getting enough, if they're

18  objecting, then I'm not going to go along with the settlement.

19         But if they all are saying yes, and they are the

20  ones for whom this whole bankruptcy estate and the jury trial

21  proceeded, if they want to go with it, then I say let's go

22  with it.

23         Just all it does is it deprives you of a collateral

24  estoppel effect ruling.  You're not a party, it's not --

25  they're not -- whether they're entered or remain entered or

1    stricken, it doesn't have any effect on you, you're not bound.

2    The only people that are bound are the parties to it.

3           The only thing that you lose is the collateral

4    estoppel effect of the orders I would be striking.

5           Is that a fair statement?

6           MR. BARTH:  Well, leaving aside the "only" for a

7    moment, I think it is the principal effect of striking prior

8    rulings.

9           Let me talk for a moment about procedure, if I may.

10          THE COURT:  And before you do, you represent

11   again?

12          MR. BARTH:  I represent Milbank Tweed, Weil

13   Gotschal and Mr. Lomazow.

14          THE COURT:  And you have a creditor's claim,

15   correct?  What's your interest?

16          MR. BARTH:  At least one of the firms still has

17   a creditor's claim, I believe.  I think both firms have filed

18   claims, and I believe one was withdrawn.

19          THE COURT:  And it was attorney's fees, right?

20          MR. BARTH:  One of them was, I believe.

21          THE COURT:  And does Weil Gotschal have an order

22   against them to put moneys back into the estate or that issue

23   is pending?  No.

24          What were the attorney's fees accrued for?

25          MR. BARTH:  Well, as I understand it, and I am

1    still learning this, your Honor, I'm new to this party.  As I

2    understand it, Weil Gotschal --

3                    THE COURT:  Yeah, I've been here for ten years

4    now.

5                    MR. BARTH:  As I say, there's an awful lot of

6    water under this bridge, and we're trying to desperately to

7    learn as much of it as we can.

8         Weil Gotschal represented Compass in connection with

9    the purchase of assets from the original estate.  Later

10   Milbank Tweed represented Compass in litigation before this

11   court.

12                   THE COURT:  Right.  And both of those firms were

13   parties to the advice to file a bankruptcy in New York or is

14   that just Tweed?  Neither one.

15                   MR. MAJORIE:  Your Honor, is looking at me.  Can

16   I respond?  I don't want to interrupt.

17                   THE COURT:  Sure.  I'm just trying to figure out

18   where he's coming from.

19                   MR. MAJORIE:  The lawyer -- Mr. Lawrence's

20   clients were no longer representing Compass in the litigation,

21   and there's a question of whether they had withdrawn.  There

22   was some withdrawal orders and some not, but they were no

23   longer representing anybody in the litigation in 2009 and

24   2010.

25                   THE COURT:  So their only interest is as a

1  credit for lawyer's fees.

2          MR. MAJORIE:  Yes, sir, and I misspoke.  The

3  bankruptcy was filed in 2010.  As of that date there isn't any

4  dispute that they weren't involved in any decision about

5  filing bankruptcy.

6          THE COURT:  Okay.  So they're a creditor for

7  attorney's fees for Compass.

8          MR. BARTH:  Well, that's one role in which I'm

9  here today, your Honor.

10      The other role, and, frankly, for me the more

11  important role, is that Mr. Lomazow was sued last year in the

12  new action, the RICO case, and all three of my clients have

13  now been sued in a new action which we've moved to dismiss.

14  That is set for hearing sometime next month.

15      This order was drafted -- I think it's fair to say

16  from the face of it --

17          THE COURT:  Your clients were sued.

18          MR. BARTH:  Right.

19          THE COURT:  For what?

20          MR. BARTH:  Well, for all manner of claims

21  including --

22          THE COURT:  By the trustee.

23          MR. BARTH:  By the trustee.  Those claims are

24  sought to be assigned to this litigation trust.

25          THE COURT:  For what, because you walked across

1    the sidewalk that the trustee owned or what?

2                    MR. BARTH:  No, the allegations in the complaint

3    are subject to a motion to dismiss, and they include breach of

4    contract, breach of fiduciary duty, fraud against Silar which

5    we have moved on.

6                    THE COURT:  Okay.  All right.

7                    MR. BARTH:  So that's the real reason why I'm

8    here today is that my clients are defendants in ongoing

9    litigation, and this order it appears to me on its face was

10   designed in an attempt to affect them going forward in future

11   litigation.

12           Now, yes, the vacature of prior rulings in the 892

13   case deprives them of collateral estoppel effect that I think

14   they're entitled to.

15           Silar argued in its opposition to our objection,

16   well, if they don't want to be bound, we shouldn't be bound

17   either.  As you know, that's not how Park Lane Posary

18   (phonetic) works.  Nonmutual collateral estoppel is

19   permissible and appropriate in the right circumstance, and I

20   submit to you this is that circumstance.

21           A party cannot by conditioning a settlement on

22   vacature essentially put a gun to the Court's head.  The Ninth

23   Circuit cases say that, the Supreme Court has said it in *U.S.*

24   *Bancorp* which we've cited.

25                    THE COURT:  Okay.

1          MR. BARTH:  But let me switch to procedure, if I

2     may for a moment, because I'm not here today to argue vacature

3     motions.

4          In March, the settling parties filed a motion to

5     approve the settlement, and it attached a settlement

6     agreement, and we looked at it, and it said -- the settlement

7     agreement said as part of this settlement, we will move for

8     vacature, and the settlement agreement said we will seek to

9     assign claims to the extent permitted by law, and it said we

10    will seek an injunction to the extent permitted by law.

11         We didn't object, we don't object to the settlement,

12    and if the Court today were to enter an order today saying the

13    settlement is approved for the reasons set forth in the motion

14    for approval, we wouldn't be here.  That's not what happened.

15         In June, we learned of a draft 66-page order that

16    contained all manner of material that went well beyond what

17    had been noticed to the world in March.

18         THE COURT:  Sir, you don't need to repeat your

19    brief, you know, I've read it.

20         MR. BARTH:  I appreciate that.  Let me get to

21    the nub of it.

22         There were ten things, maybe it was eight

23    categories, in the draft order that we found objectionable.

24    We objected on all eight grounds.  Seven of them, or six and a

25    half, if you leave aside the name of the trust, are gone.

1          THE COURT:  Sounds like you ought to be happy.

2          MR. BARTH:  We are happy with respect to those

3    six or six and a half.

4          But with respect to the remaining one, all that

5    we're asking, and all we have ever asked is that the settling

6    parties or Silar do what it said in the settlement agreement

7    it would do which is move for vacature.

8          Now --

9          THE COURT:  I'm going to overrule your

10   objection.  I just have one question.  Ms. Cangelosi is in the

11   courtroom?

12         MS. CANGELOSI:  Yes, sir.

13         THE COURT:  Who are you represented by, ma'am?

14         MS. CANGELOSI:  Mr. Millimet.

15         MR. MILLIMET:  By me, your Honor.

16         THE COURT:  And what's your position?

17         MR. MILLIMET:  My position as to the settlement?

18         THE COURT:  Right, and specifically with --

19         MR. MILLIMET:  And the vacature issue?

20         THE COURT:  -- and regarding the objection.

21         MR. MILLIMET:  Your Honor, we agreed as part of

22   the settlement that we would -- that Silar would be entitled,

23   and Mr. Piskun and the Asset Resolution estate would be

24   entitled, to strike the interlocutory rulings and orders that

25   were adverse to them from the 892 case, and we agreed, as your

1    Honor indicated a moment ago, to that for the substantial

2    benefits that came to us in return.

3                THE COURT:  And I'll note for the record that

4    the primary effort, legal fees, effort, time, stress, near

5    death experiences, came from your camp.

6                MR. MILLIMET:  Yes.

7                THE COURT:  That produced the 892 orders and

8    judgment and subsequent orders.

9                MR. MILLIMET:  Absolutely, your Honor, that's

10   correct.

11               THE COURT:  All right.  I'm going to overrule

12   your objection.

13               MR. BARTH:  May I take up two housekeeping

14   matters?

15               THE COURT:  Yes, please.

16               MR. BARTH:  I understand you've ruled.

17         We sought in connection with our objection to

18   intervene for the limited purpose of making the objection,

19   Silar in its opposition paper said that they acknowledge we

20   have standing to object to the order.  There are other parties

21   who didn't file papers.  I'd like it clear that we did have

22   standing to object to the form of the order.

23               THE COURT:  You do.

24               MR. BARTH:  Thank you.

25         Second of all, and this really is a housekeeping

1  matter, I take Mr. Majorie at his word when in his papers

2  filed just yesterday he tells me and the Court that we have no

3  other remaining issues, but the devil, as the Court knows, is

4  in the details, and we have not seen a full lodged order and

5  trust agreement which goes with it.

6          I am hopeful, I may even be confident that with the

7  Court's guidance we can work this out.

8          THE COURT:  I'm available.

9          MR. BARTH:  That was my question is whether we

10  should bother the Court or your magistrate judge or --

11          THE COURT:  You can.  Just don't do it every

12  day, please.  Just come to me, here's the final language

13  disputes, please resolve that.  We'll do it on the telephone.

14  If it's really extensive, you have to file pleadings, of

15  course.  I'm available.

16          MR. MAJORIE:  And, your Honor, I am confirming

17  on the record that -- that I believe those are the only two

18  issues, and I do agree the devil is in the details in these

19  very long papers.

20          THE COURT:  Please.

21          MR. MAJORIE:  With respect to the trust

22  agreement, the dispute really had to do primarily with what

23  your Honor has now ruled on which is the vacature of findings

24  and making sure that anything in the trust agreement didn't

25  indirectly say something that was affirming.

1            And I recognize -- there might be other issues, but

2     those --

3                 THE COURT:  It should be clear here on the

4     record you still wear a long mustache and a long tall hat.  I

5     was speaking to Silar's counsel.

6                 MR. BARTH:  Sorry.  I think there are also some

7     conforming changes, but we will try on our very best to work

8     them out, and I'm hopeful that we can.

9                 THE COURT:  Okay.

10                MR. BARTH:  I take it that our

11    remaining objections as set forth in the papers are being

12    overruled.

13                THE COURT:  They are.  Please.

14                MR. MAJORIE:  Your Honor, I'm sorry, I should

15    have done this a little sooner.

16           I do note that the Weil Gotschal objection in the

17    Asset Resolution case relates to what I would think they claim

18    to be servicing fees associated with doing servicing-related

19    work and not litigation, 892 type litigation fees.

20                THE COURT:  Right.

21                MR. BARTH:  Your Honor, to be completely frank,

22    I'm not in a position to confirm or deny that today so I would

23    like the opportunity to respond if need be.  Thank you.

24                THE COURT:  Anything further in Asset

25    Resolution?

1          MS. KERN:  Your Honor, very briefly.  This is
2    Gayle Kern.
3          With respect to Sheppard Mullin, I understand that
4    when we filed it you did not have an opportunity to read it,
5    but it's very brief.
6          It simply says that for wherever they are doing
7    carveout language with respect to the other attorneys' firms,
8    we would simply like to add the term Sheppard Mullin.  That's
9    all, it's not substantive, it's just to treat them the same.
10         THE COURT:  I don't think that's a problem, but
11   generally -- to give you general guidance, I'm opposed to
12   carveout language.
13         The only thing we're doing is striking those prior
14   findings as it pertains to Silar.  We're not carving out
15   anybody.  That's a general guidance.
16         MR. MAJORIE:  Thank you, your Honor, and I
17   would --
18         THE COURT:  And you're certainly right.  If
19   anybody else gets carveout privilege, you should get it, too.
20         MS. KERN:  Thank you.
21         MR. MAJORIE:  We would like to -- Silar actually
22   objected to Sheppard Mullin because we don't want to have yet
23   another person showing up and saying me too, me too.  They
24   didn't follow the rules --
25         THE COURT:  Me too for what?

1            MR. MAJORIE:  For these carveouts.

2            THE COURT:  What are the carveouts?

3            MR. MAJORIE:  The carveouts are basically

4    relating to lawyer defendant claims, causes of action against

5    lawyer defendants, and so --

6            THE COURT:  It preserves them, it grants them?

7            MR. MAJORIE:  It basically says they're going to

8    be -- the issues will be preserved *de novo* with respect to

9    causes of action against lawyer defendants, and I

10   understand --

11           THE COURT:  What's wrong with that?  That's not

12   a carveout.

13           MR. MAJORIE:  Well, it -- we will -- we'll just

14   put Sheppard Mullin in, Judge, and I'll just move on.

15           MR. MILLIMET:  Your Honor, if I may speak for

16   just a quick moment, given the --

17           THE COURT:  In other words, the causes of action

18   against Shepard Mullin are preserved.

19           MR. MAJORIE:  *De novo* so everybody has to fight

20   from scratch.

21           THE COURT:  Good.

22           MR. MILLIMET:  If I could indulge the Court or

23   ask the Court for some kind of instruction to the parties to

24   put some quick timetable to resolving their issues and getting

25   the settlement order to his Honor to sign.  Delay here has

1    been immense as the Court is well aware.

2                    THE COURT:  I'll be here tomorrow.

3                    MR. MAJORIE:  Your Honor, Friday of this week

4    would be fine from my perspective.

5                    THE COURT:  You betcha.  Let's have a committed

6    date.

7                    MR. MAJORIE:  Your Honor, I would ask for Monday

8    only because --

9                    THE COURT:  Sounds fair.

10                   MR. MAJORIE:  -- I have to get back to Dallas.

11                   THE COURT:  Okay.  Monday to include travel

12   time.  Let's have it, please.

13                   MR. MAJORIE:  Thank you, your Honor.

14                   MR. MILLIMET:  Thank you.

15                   MR. HAYWARD:  Your Honor, if I may.  Dan Hayward

16   on behalf of Mr. Piskun, at least with respect to the 892 case

17   and the settlement issues.

18        Is it your Honor's general instruction that the

19   vacature of prior rulings as against Mr. Piskun and others is

20   to include the vacature of that 241 inadvertently entered

21   judgment consistent with --

22                   THE COURT:  I think what you asked me to do is

23   to strike that order in 241.

24                   MR. HAYWARD:  That is true, your Honor.  It just

25   wasn't clear to me if that was in the end your Honor's

26

1    intention, and if it is --

2                    THE COURT:  So it doesn't relate particularly to

3    Piskun or not, I'm just striking the order.

4                    MR. HAYWARD:  Very good, your Honor.  Thank you.

5                    MR. MAJORIE:  Your Honor, there is an actual

6    order already in front of your Honor somewhere submitted as

7    part of the agreed motion.  We would ask you if you have the

8    time to enter it as soon as possible, even this week.

9                    THE COURT:  We'll search through the millions of

10   papers back there somewhere and ask Madam Clerk to present it.

11                   MR. BARTH:  I'm sorry, Mr. Majorie, what's

12   before the Court that you're asking --

13                   THE COURT:  The order to strike in 241.

14                   MR. BARTH:  Your Honor, what's before the Court

15   is a pleading that I believe was filed yesterday with two

16   exhibits, A and B.  The portion striking the order in 241 is

17   Exhibit B, and it's a two-page document with findings and

18   conclusions.

19                   THE COURT:  That would be a problem.

20                   MR. BARTH:  That's what they're proposing.

21                   MR. MAJORIE:  No.

22                   MR. BARTH:  I'm looking at it.  It says -- you

23   know --

24                   THE COURT:  It says --

25                   MR. BARTH:  -- the entry was a clerical error

1  made in violation of the Court's consolidation orders.

2                    THE COURT:  Okay.

3                    MR. BARTH:  It's two pages of --

4                    THE COURT:  What's the matter with that

5  statement?

6                    MR. BARTH:  Well, this, as I understand it, is

7  going to become a part of the proposed order --

8                    THE COURT:  What's the matter with the last

9  statement, was entered in error?

10                    MR. BARTH:  It was never sought to be vacated.

11 I mean --

12                    THE COURT:  Overruled.  What's the next language

13 you object to?

14                    MR. BARTH:  Well, I understand that this

15 language is going in the order, but this is not a freestanding

16 order to be signed.  I thought that's what I was hearing

17 Mr. Majorie say.

18                    MR. MAJORIE:  Your Honor, there is a -- there is

19 a motion, an agreed motion filed in the 892 case, docket 2274,

20 which has been fully briefed.

21                    MR. BARTH:  That's a different order.

22                    MR. MAJORIE:  These persons have not intervened

23 in that case.  All the parties have asked that you simply

24 vacate that 241 order as part of that agreed motion.

25                    THE COURT:  Hand up a copy of it, please.  I'm

1   not going to go on interminably with this question.

2                    MR. MAJORIE:  May I approach?

3                    THE COURT:  Yes.  Do you object to any of the

4   language of this, sir?

5                    MR. BARTH:  We object, and we filed an

6   opposition brief which I think the Court hasn't had occasion

7   even to consider.  There's no hearing set.

8                    THE COURT:  What do you object to in this order?

9                    MR. BARTH:  We object to the Court's

10  jurisdiction under 60(a), we object to the timeliness of the

11  motion under 60(b) --

12                   THE COURT:  And you're not a party, of course.

13                   MR. BARTH:  We are not, and if that's the

14  problem, your Honor, we would move to intervene for that

15  purpose.  We already moved --

16                   THE COURT:  Okay.  What other specific language

17  in here do you object to?

18                   MR. BARTH:  Well, it's not the language of the

19  order, it's the failure of plaintiffs to meet their burden

20  under 60(a) and (b) that we object to.

21                   THE COURT:  The record will reflect I'm signing

22  it now, and it will be entered forthwith.  Today is the 22nd.

23              Here you go, Madam Clerk.

24              What else?

25                   MR. MAJORIE:  I don't think we have anything

1  else, Judge.  May we be excused so I can start to work on

2  cutting my mustache and changing my hat?

3              THE COURT:  You can, please.  No, you can't

4  change your hat.  You're not going to wear a white hat here.

5              MR. MILLIMET:  Thank you, your Honor.

6              MR. MAJORIE:  Thank you, your Honor.

7              MR. BARTH:  Thank you, your Honor.

8              THE COURT:  Thank you so much.  Thank you on the

9  telephone.

10                          -o0o-

11

12          I certify that the foregoing is a correct
            transcript from the record of proceedings
13          in the above-entitled matter.

14          /s/Margaret E. Griener        09/11/2012
            Margaret E. Griener, CCR #3, RDR
15          Official Reporter

16

17

18

19

20

21

22

23

24

25

1

**/**

**/s/Margaret** [1] - 29:14

**0**

**09/11/2012** [1] - 29:14

**1**

**1100** [2] - 4:13, 4:19
**15** [1] - 5:15

**2**

**20,000** [1] - 5:15
**2009** [1] - 15:23
**2010** [2] - 15:24, 16:3
**2011** [1] - 9:17
**2012** [2] - 1:6, 3:1
**210** [5] - 4:12, 4:19, 10:1, 10:2, 10:20
**22** [2] - 1:6, 3:1
**2274** [1] - 27:19
**22nd** [1] - 28:22
**241** [11] - 8:8, 9:15, 9:22, 10:9, 10:14, 25:20, 25:23, 26:13, 26:16, 27:24
**2:07-CV-892-RCJ** [1] - 1:5

**3**

**3** [2] - 1:23, 29:14
**3685** [1] - 1:7

**6**

**60(a** [2] - 28:10, 28:20
**60(b** [1] - 28:11
**66-page** [1] - 18:15

**7**

**7** [1] - 3:22

**8**

**892** [16] - 4:15, 4:25, 5:3, 9:16, 10:7, 10:10, 10:21, 11:4, 11:5, 12:5, 17:12, 19:25,

20:7, 22:19, 25:16, 27:19

**9**

**9:06** [1] - 3:1

**A**

**A.M** [1] - 3:1
**able** [1] - 8:12
**above-entitled** [1] - 29:13
**absolutely** [1] - 20:9
**accrued** [1] - 14:24
**accurately** [1] - 12:20
**acknowledge** [1] - 20:19
**action** [5] - 16:12, 16:13, 24:4, 24:9, 24:17
**actual** [1] - 26:5
**add** [1] - 23:8
**added** [1] - 13:14
**adversary** [2] - 4:19, 10:6
**adverse** [1] - 19:25
**advice** [1] - 15:13
**affect** [2] - 11:22, 17:10
**affirming** [1] - 21:25
**afternoon** [1] - 7:20
**ago** [1] - 20:1
**agree** [1] - 21:18
**agreed** [7] - 8:17, 13:12, 19:21, 19:25, 26:7, 27:19, 27:24
**agreement** [8] - 8:25, 18:6, 18:7, 18:8, 19:6, 21:5, 21:22, 21:24
**al** [2] - 1:8, 1:11
**Alger** [1] - 6:14
**ALGER** [1] - 2:9
**allegations** [1] - 17:2
**AND** [2] - 2:3, 2:3
**apologize** [2] - 5:23, 7:20
**appeal** [1] - 13:1
**APPEARANCES** [2] - 1:16, 2:1
**appearances** [1] - 1:25
**appearing** [2] - 4:11, 6:18
**appellate** [1] - 12:22
**appreciate** [1] - 18:20
**approach** [1] - 28:2
**appropriate** [1] -

17:19
**approval** [1] - 18:14
**approvals** [1] - 7:19
**approve** [1] - 18:5
**approved** [1] - 18:13
**argue** [1] - 18:2
**argued** [2] - 12:4, 17:15
**ARGUMENT** [1] - 1:15
**Armstrong** [1] - 6:25
**aside** [2] - 14:6, 18:25
**Asset** [4] - 3:4, 19:23, 22:17, 22:24
**assets** [1] - 15:9
**assign** [1] - 18:9
**assigned** [1] - 16:24
**associated** [1] - 22:18
**assuming** [1] - 13:16
**attached** [1] - 18:5
**attempt** [1] - 17:10
**attorney** [1] - 1:20
**Attorney** [6] - 1:22, 2:3, 2:5, 2:7, 2:9, 2:11
**attorney's** [3] - 14:19, 14:24, 16:7
**attorneys** [1] - 3:24
**Attorneys** [2] - 1:17, 1:19
**attorneys'** [1] - 23:7
**AUGUST** [1] - 3:1
**August** [1] - 1:6
**authority** [1] - 12:24
**available** [2] - 21:8, 21:15
**aware** [2] - 6:1, 25:1
**awful** [1] - 15:5

**B**

**BAILEY** [1] - 2:9
**Bailey** [1] - 6:14
**Bancorp** [1] - 17:24
**bankruptcy** [4] - 13:20, 15:13, 16:3, 16:5
**barrel** [1] - 13:7
**BARTH** [45] - 2:3, 3:6, 8:12, 11:20, 11:25, 12:3, 12:11, 13:2, 14:6, 14:12, 14:16, 14:20, 14:25, 15:5, 16:8, 16:18, 16:20, 16:23, 17:2, 17:7, 18:1, 18:20, 19:2, 20:13, 20:16, 20:24, 21:9, 22:6, 22:10, 22:21, 26:11,

26:14, 26:20, 26:22, 26:25, 27:3, 27:6, 27:10, 27:14, 27:21, 28:5, 28:9, 28:13, 28:18, 29:7
**Barth** [2] - 3:7, 3:12
**become** [1] - 27:7
**BEFORE** [1] - 1:2
**behalf** [12] - 3:11, 3:15, 3:21, 4:5, 4:11, 5:19, 6:7, 6:11, 6:14, 6:18, 7:11, 25:16
**benefit** [2] - 12:7, 13:14
**benefits** [1] - 20:2
**best** [1] - 22:7
**bet** [1] - 13:8
**betcha** [1] - 25:5
**between** [2] - 13:5, 13:6
**beyond** [1] - 18:16
**BICE** [2] - 2:3, 3:10
**Bice** [1] - 3:11
**Bickel** [1] - 3:15
**bind** [1] - 18:13
**born** [3] - 5:14, 5:16, 5:20
**bother** [1] - 21:10
**bought** [1] - 13:7
**bound** [5] - 11:15, 14:1, 14:2, 17:16
**breach** [2] - 17:3, 17:4
**Brewer** [1] - 3:15
**bridge** [1] - 15:6
**brief** [3] - 18:19, 23:5, 28:6
**briefed** [2] - 9:23, 11:8, 27:20
**briefly** [1] - 23:1
**Bullis** [1] - 6:14
**BULLIS** [1] - 2:9
**burden** [1] - 28:19
**buy** [1] - 12:25

**C**

**camp** [1] - 20:5
**Cangelosi** [1] - 19:10
**CANGELOSI** [2] - 19:12, 19:14
**cannot** [1] - 17:21
**carveout** [5] - 5:21, 23:7, 23:12, 23:19, 24:12
**carveouts** [3] - 24:1, 24:2, 24:3
**carving** [1] - 23:14
**case** [28] - 4:12, 4:13, 4:15, 4:25, 5:3,

9:15, 9:22, 9:24, 9:25, 10:7, 10:9, 10:10, 10:14, 10:20, 10:21, 10:22, 11:4, 11:5, 12:5, 13:5, 13:16, 16:12, 17:13, 19:25, 22:17, 25:16, 27:19, 27:23
**cases** [3] - 4:19, 9:17, 17:23
**categories** [1] - 18:23
**causes** [3] - 24:4, 24:9, 24:17
**certain** [3] - 3:15, 6:23, 7:11
**certainly** [1] - 23:18
**certify** [1] - 29:12
**change** [1] - 29:4
**changes** [1] - 22:7
**changing** [1] - 29:2
**Chapter** [1] - 3:22
**CHIEF** [1] - 1:2
**Christopher** [1] - 6:17
**CHRISTOPHER** [1] - 2:13
**CHUBB** [2] - 1:17, 6:20
**Chubb** [1] - 6:21
**Circuit** [2] - 12:11, 17:23
**circumstance** [2] - 17:19, 17:20
**cited** [1] - 17:24
**claim** [3] - 14:14, 14:17, 22:17
**claims** [5] - 14:18, 16:20, 16:23, 18:9, 24:4
**clarification** [1] - 5:1
**clean** [1] - 12:13
**clear** [6] - 8:20, 11:14, 11:18, 20:21, 22:3, 25:25
**clearly** [1] - 9:7
**clerical** [1] - 26:25
**Clerk** [3] - 5:7, 26:10, 28:23
**clerk** [2] - 9:21, 10:8
**clients** [5] - 7:5, 15:20, 16:12, 16:17, 17:8
**close** [1] - 10:8
**collateral** [5] - 11:23, 13:23, 14:3, 17:13, 17:18
**coming** [2] - 12:9, 15:18
**COMMERCIAL** [1] - 1:4

2

**committed** [1] - 25:5
**COMPANY** [1] - 1:5
**Compass** [7] - 4:11, 5:2, 10:5, 15:8, 15:10, 15:20, 16:7
**COMPASS** [2] - 1:11, 1:20
**complaint** [1] - 17:2
**completely** [1] - 22:21
**concern** [1] - 8:11
**conclusions** [1] - 26:18
**conditioning** [1] - 17:21
**conduct** [2] - 13:11
**confident** [1] -
**confirm** [1] - 22:22
**confirming** [1] - 21:16
**conforming** [1] - 22:7
**connection** [2] - 15:8, 20:17
**consider** [1] - 28:7
**consistent** [1] - 25:21
**consolidated** [3] - 9:15, 10:9, 10:21
**consolidation** [3] - 9:16, 10:5, 27:1
**contained** [1] - 18:16
**continued** [3] - 1:25, 2:1, 8:4
**contract** [1] - 17:4
**contrary** [4] - 8:18, 8:19, 9:3, 11:1
**copy** [1] - 27:25
**correct** [4] - 7:8, 14:15, 20:10, 29:12
**cost** [1] - 12:8
**COUNSEL** [1] - 2:11
**counsel** [3] - 5:2, 6:7, 22:5
**couple** [1] - 4:25
**course** [5] - 6:2, 6:22, 11:13, 21:15, 28:12
**court** [3] - 12:22, 12:23, 15:11
**Court** [15] - 3:9, 6:24, 7:3, 12:4, 17:23, 18:12, 21:2, 21:3, 21:10, 24:22, 24:23, 25:1, 26:12, 26:14, 28:6
**Court's** [5] - 8:19, 17:22, 21:7, 27:1, 28:9
**courtroom** [2] - 6:16, 19:11

**courts** [2] - 12:16, 12:21
**credit** [1] - 16:1
**creditor** [1] - 16:6
**creditor's** [2] - 14:14, 14:17
**cutting** [1] - 29:2

## D

**D.C** [1] - 5:11
**Dabbieri** [1] - 3:21
**DABBIERI** [2] - 1:21, 3:20
**Dallas** [1] - 25:10
**Dan** [2] - 4:8, 25:15
**DANIEL** [1] - 1:20
**date** [2] - 16:3, 25:6
**de** [2] - 24:8, 24:19
**death** [1] - 20:5
**debate** [1] - 9:3
**Debtor** [1] - 1:6
**decision** [1] - 16:4
**declaratory** [1] - 9:18
**defendant** [1] - 24:4
**defendants** [7] - 4:12, 5:2, 9:8, 10:4, 17:8, 24:5, 24:9
**Defendants** [1] - 1:12
**DEFENDANTS** [2] - 1:19, 1:20
**delay** [1] - 24:25
**DENNIS** [1] - 2:9
**Dennis** [1] - 6:13
**deny** [1] - 22:22
**deprives** [1] - 13:23, 17:13
**designed** [1] - 17:10
**desperately** [1] - 15:6
**details** [2] - 21:4, 21:18
**devil** [2] - 21:3, 21:18
**dice** [1] - 12:13
**died** [1] - 7:5
**different** [1] - 27:21
**direct** [6] - 3:15, 6:23, 7:11, 12:8, 13:12, 13:14
**directly** [1] - 8:18
**disclose** [1] - 6:24
**dismiss** [2] - 16:13, 17:3
**dispute** [3] - 9:1, 16:4, 21:22
**disputes** [1] - 21:13
**docket** [1] - 27:19
**document** [1] - 26:17
**done** [1] - 22:15

**down** [2] - 4:9, 10:8
**draft** [2] - 18:15, 18:23
**drafted** [1] - 16:15
**DUNCAN** [1] - 28:19
**Duncan** [1] - 7:11
**during** [1] - 7:5
**duty** [1] - 17:4

## E

**early** [2] - 9:18, 9:20
**effect** [5] - 13:24, 14:1, 14:4, 14:7, 17:13
**effort** [1] - 20:4
**eight** [2] - 18:22, 18:24
**either** [1] - 17:17
**Ely** [1] - 5:14
**embarrassed** [1] - 8:1
**end** [1] - 25:25
**enter** [5] - 7:3, 7:4, 11:9, 18:12, 26:8
**entered** [12] - 5:8, 7:7, 9:15, 9:18, 9:21, 10:10, 10:15, 13:25, 15:20, 27:9, 28:22
**entitled** [5] - 12:2, 17:14, 19:22, 19:24, 29:13
**entry** [1] - 26:25
**Epstein** [1] - 6:11
**EPSTEIN** [1] - 2:7
**Eric** [1] - 23:10
**error** [2] - 26:25, 27:9
**especially** [1] - 8:18
**essentially** [1] - 17:22
**Estate** [1] - 9:6
**estate** [4] - 13:20, 14:22, 15:9, 19:23
**estoppel** [5] - 11:23, 13:24, 14:4, 17:13, 17:18
**et** [2] - 1:8, 1:11
**EUGENE** [1] - 2:11
**exactly** [1] - 12:1
**exception** [2] - 4:12, 4:14
**excused** [1] - 29:1
**Exhibit** [1] - 26:17
**exhibits** [1] - 26:16
**experiences** [1] - 20:5
**extensive** [1] - 21:14
**extent** [2] - 18:9, 18:10

## F

**face** [2] - 16:16, 17:9
**failure** [1] - 28:19
**fair** [3] - 14:5, 16:15, 25:9
**favoring** [1] - 12:16
**fees** [7] - 14:19, 14:24, 16:1, 16:7, 20:4, 22:18, 22:19
**FERNANDO** [1] - 1:7
**fiduciary** [1] - 17:4
**fight** [1] - 24:19
**figure** [1] - 15:17
**file** [5] - 5:23, 10:9, 15:13, 20:21, 21:14
**filed** [12] - 4:24, 6:1, 10:19, 14:17, 16:3, 18:4, 21:2, 23:4, 26:15, 27:19, 28:5
**filing** [1] - 16:5
**final** [3] - 7:14, 10:11, 21:12
**findings** [11] - 9:2, 9:3, 11:1, 11:13, 11:17, 11:19, 12:13, 12:14, 21:23, 23:14, 26:17
**fine** [1] - 25:4
**finger** [1] - 11:25
**firm** [2] - 5:11, 6:24
**firms** [4] - 14:16, 14:17, 15:12, 23:7
**first** [2] - 7:23, 8:11
**flow** [1] - 8:23
**follow** [1] - 23:10
**FOR** [9] - 1:17, 1:18, 1:20, 1:21, 2:3, 2:5, 2:7, 2:9, 2:11
**foregoing** [1] - 29:12
**form** [2] - 3:9, 20:22
**forth** [2] - 18:13, 22:11
**forthwith** [1] - 28:22
**forward** [1] - 17:10
**FRANCIS** [1] - 1:18
**Francis** [1] - 4:5
**frank** [1] - 22:21
**frankly** [1] - 16:10
**fraud** [1] - 17:4
**Freeh** [1] - 5:11
**freestanding** [1] - 27:15
**Friday** [1] - 25:3
**front** [1] - 26:6
**full** [1] - 21:4
**fully** [3] - 9:23, 11:8, 27:20
**future** [1] - 17:10

## G

**GAYLE** [1] - 2:5
**Gayle** [2] - 5:19, 23:2
**Gene** [1] - 5:11
**general** [4] - 8:22, 23:11, 23:15, 25:18
**generally** [1] - 23:11
**given** [1] - 24:16
**GOTSCHAL** [1] - 2:3
**Gotschal** [7] - 3:8, 6:25, 14:13, 14:21, 15:2, 15:8, 22:16
**grants** [1] - 24:6
**grounds** [1] - 18:24
**guess** [1] - 5:3
**guidance** [4] - 8:14, 21:7, 23:11, 23:15
**guideline** [1] - 8:22
**gun** [1] - 17:22

## H

**hac** [1] - 3:17
**haced** [1] - 4:6
**half** [2] - 18:25, 19:3
**Hampton** [1] - 5:19
**hand** [1] - 27:25
**happy** [2] - 19:1, 19:2
**hat** [4] - 22:4, 29:2, 29:4
**Hayward** [2] - 4:9, 25:15
**HAYWARD** [10] - 1:20, 4:8, 4:11, 4:19, 4:23, 5:6, 5:9, 25:15, 25:24, 26:4
**head** [1] - 17:22
**hear** [1] - 11:10
**hearing** [4] - 7:2, 16:14, 27:16, 28:7
**help** [1] - 4:1
**Hill** [1] - 6:7
**HILL** [2] - 1:18, 6:6
**Holder** [1] - 8:10
**Hollywood** [1] - 6:22
**home** [1] - 6:21
**Honor** [59] - 3:6, 3:10, 3:13, 3:20, 4:2, 4:4, 4:8, 4:23, 5:6, 5:9, 5:10, 5:18, 6:6, 6:10, 6:13, 6:20, 7:10, 7:21, 8:12, 8:24, 9:9, 9:17, 9:19, 9:22, 10:3, 10:10, 10:18, 11:9, 11:25, 12:12, 15:1, 15:15, 16:9, 19:15, 19:21, 20:1, 20:9, 21:16, 21:23, 22:14,

22:21, 23:1, 23:16,
24:15, 24:25, 25:3,
25:7, 25:13, 25:15,
25:24, 26:4, 26:5,
26:6, 26:14, 27:18,
28:14, 29:5, 29:6,
29:7
  **Honor's** [3] - 9:3,
25:18, 25:25
  **hopeful** [2] - 21:6,
22:8
  **Hostetler** [1] - 6:11
  **HOSTETLER** [2] -
2:7, 6:10
  **hotel** - 5:12
  **housekeeping** [2] -
20:13, 20:25

## I

  **immediately** [1] -
9:19
  **immense** [1] - 25:1
  **important** [1] - 16:11
  **IN** [2] - 1:4, 2:13
  **inadvertently** [1] -
25:20
  **include** [3] - 17:3,
25:11, 25:20
  **included** [1] - 5:22
  **including** [3] - 5:3,
5:21, 16:21
  **independent** [1] -
11:6
  **indicated** [1] - 20:1
  **indirectly** [1] - 21:25
  **indulge** [1] - 24:22
  **injunction** [1] - 18:10
  **instruction** [2] -
24:23, 25:18
  **intention** [1] - 26:1
  **interest** [2] - 14:15,
15:25
  **interests** [1] - 6:8
  **interlocutory** [1] -
19:24
  **interminably** [1] -
28:1
  **interrupt** [1] - 15:16
  **intervene** [2] - 20:18,
28:14
  **intervened** [1] -
27:22
  **intervening** [1] -
10:21
  **intervention** [1] -
10:19
  **involved** [2] - 10:4,
16:4
  **ISAAC** [2] - 2:13,

6:17
  **Isaac** [1] - 6:17
  **issue** [5] - 7:23, 8:13,
9:14, 14:22, 19:19
  **issues** [10] - 7:15,
7:17, 7:18, 7:22, 21:3,
21:18, 22:1, 24:8,
24:24, 25:17

## J

  **JANET** [1] - 1:17
  **Janet** [1] - 6:21
  **JENNIFER** [1] - 2:7
  **Jennifer** [1] - 6:11
  **jointly** [1] - 11:5
  **Jonathan** [1] - 3:21
  **JONATHAN** [1] -
1:21
  **JONES** [1] - 1:2
  **judge** [2] - 13:6,
21:10
  **Judge** [4] - 4:3, 7:25,
24:14, 29:1
  **judges** [1] - 13:7
  **judgment** [4] - 9:18,
10:11, 20:8, 25:21
  **July** [2] - 9:17, 10:11
  **June** [1] - 18:15
  **jurisdiction** [1] -
28:10
  **jury** [2] - 9:25, 13:20
  **jury's** [2] - 8:19, 13:8

## K

  **Kern** [2] - 5:19, 23:2
  **KERN** [5] - 2:5, 5:18,
6:3, 23:1, 23:20
  **kind** [1] - 24:23
  **known** [1] - 9:22
  **knows** [1] - 21:3

## L

  **Lane** [1] - 17:17
  **language** [11] - 5:22,
7:15, 8:22, 21:12,
23:7, 23:12, 27:12,
27:15, 28:4, 28:16,
28:18
  **Las** [2] - 5:16, 6:4
  **last** [5] - 5:23, 9:17,
13:13, 16:11, 27:8
  **late** [1] - 7:20
  **lateness** [1] - 5:24
  **Laughter** [1] - 3:25
  **Law** [9] - 1:17, 1:19,
1:20, 1:22, 2:3, 2:5,

2:7, 2:9, 2:11
  **law** [5] - 5:11, 6:24,
12:12, 18:9, 18:10
  **Lawrence** [1] - 3:7
  **LAWRENCE** [1] - 2:3
  **Lawrence's** [1] -
15:19
  **lawsuit** [1] - 11:21
  **lawyer** [5] - 9:8,
15:19, 24:4, 24:5,
24:9
  **lawyer's** [1] - 16:1
  **lawyers** [1] - 10:5,
12:25
  **learn** [1] - 15:7
  **learned** [1] - 18:15
  **learning** [1] - 15:1
  **least** [2] - 14:16,
25:16
  **leave** [1] - 18:25
  **leaving** [1] - 14:6
  **left** [1] - 7:23
  **legal** [1] - 20:4
  **lenders** [6] - 3:16,
6:23, 7:11, 12:8,
13:12, 13:15
  **LENDERS** [1] - 1:7
  **Leonard** [1] - 3:21
  **limited** [3] - 5:20,
5:24, 20:18
  **litigation** [8] - 15:10,
15:20, 15:23, 16:24,
17:9, 17:11, 22:19
  **live** [3] - 4:1, 4:9,
6:22
  **LLC** [2] - 1:8, 1:11
  **local** [2] - 5:12, 6:7
  **lock** [1] - 13:7
  **lodged** [2] - 3:9, 21:4
  **LOMAZOW** [1] - 2:3
  **Lomazow** [3] - 3:8,
14:13, 16:11
  **looked** [1] - 18:6
  **looking** [2] - 15:15,
26:22
  **lose** [1] - 14:3
  **lower** [1] - 12:23

## M

  **ma'am** [1] - 19:13
  **Madam** [3] - 5:7,
26:10, 28:23
  **magistrate** [1] -
21:10
  **MAJORIE** [40] - 1:18,
4:3, 7:18, 8:3, 8:8,
8:24, 9:8, 9:12, 10:1,
10:3, 10:13, 10:18,
10:25, 11:2, 11:4,

11:8, 15:15, 15:19,
16:2, 21:16, 21:21,
22:14, 23:16, 23:21,
24:1, 24:3, 24:7,
24:13, 24:19, 25:3,
25:7, 25:10, 25:13,
26:5, 26:21, 27:18,
27:22, 28:2, 28:25,
29:6
  **Majorie** [4] - 4:5,
21:1, 26:11, 27:17
  **manner** [2] - 16:20,
18:16
  **March** [2] - 18:4,
18:17
  **material** [1] - 18:16
  **matter** [5] - 7:1, 21:1,
27:4, 27:8, 29:13
  **matters** [1] - 20:14
  **McAlan** [1] - 7:10
  **mean** [1] - 27:11
  **meet** [1] - 28:19
  **Melanie** [1] - 6:7
  **MELANIE** [1] - 1:18
  **might** [1] - 22:1
  **Milbank** [3] - 3:7,
14:12, 15:10
  **MILBANK** [1] - 2:3
  **Millimet** [1] - 19:14
  **MILLIMET** [13] -
1:17, 3:13, 4:1, 19:15,
19:17, 19:19, 19:21,
20:6, 20:9, 24:15,
24:22, 25:14, 29:5
  **Millimett** [1] - 3:15
  **MILLIMETT** [1] - 3:18
  **millions** [1] - 26:9
  **minute** [1] - 12:25
  **misspoke** [1] - 16:2
  **moment** [6] - 10:16,
14:7, 14:9, 18:2, 20:1,
24:16
  **Monday** [2] - 25:7,
25:11
  **money** [2] - 12:9,
13:12
  **moneys** [1] - 14:22
  **month** [1] - 16:14
  **months** [1] - 4:25
  **morning** [14] - 3:6,
3:10, 3:13, 3:20, 4:4,
4:8, 5:10, 5:18, 6:6,
6:10, 6:13, 6:20, 7:10,
7:20
  **MORTGAGE** [1] - 1:5
  **most** [2] - 7:15, 7:18
  **motion** [8] - 17:3,
18:4, 18:13, 26:7,
27:19, 27:24, 28:11
  **motions** [1] - 18:3
  **move** [4] - 18:7,

19:7, 24:14, 28:14
  **moved** [5] - 10:14,
11:5, 16:13, 17:5,
28:15
  **movement** [1] - 7:14
  **MR** [111] - 3:6, 3:10,
3:13, 3:18, 3:20, 4:1,
4:3, 4:8, 4:11, 4:19,
4:23, 5:6, 5:9, 5:10,
6:13, 6:17, 7:10, 7:18,
8:3, 8:8, 8:12, 8:24,
9:8, 9:12, 10:1, 10:3,
10:13, 10:18, 10:25,
11:2, 11:4, 11:8,
11:20, 11:25, 12:3,
12:11, 13:2, 14:6,
14:12, 14:16, 14:20,
14:25, 15:5, 15:15,
15:19, 16:2, 16:8,
16:18, 16:20, 16:23,
17:2, 17:7, 18:1,
18:20, 19:2, 19:15,
19:17, 19:19, 19:21,
20:6, 20:9, 20:13,
20:16, 20:24, 21:9,
21:16, 21:21, 22:6,
22:10, 22:14, 22:21,
23:16, 23:21, 24:1,
24:3, 24:7, 24:13,
24:15, 24:19, 24:22,
25:3, 25:7, 25:10,
25:13, 25:14, 25:15,
25:24, 26:4, 26:5,
26:11, 26:14, 26:20,
26:21, 26:22, 26:25,
27:3, 27:6, 27:10,
27:14, 27:18, 27:21,
27:22, 28:2, 28:5,
28:9, 28:13, 28:18,
28:25, 29:5, 29:6,
29:7
  **MS** [9] - 5:18, 6:3,
6:6, 6:10, 6:20, 19:12,
19:14, 23:1, 23:20
  **MULLIN** [1] - 2:5
  **Mullin** [7] - 5:19,
5:21, 23:3, 23:8,
23:22, 24:14, 24:18
  **Munger** [1] - 3:7
  **mustache** [2] - 22:4,
29:2

## N

  **name** [3] - 6:17,
7:23, 18:25
  **Nancy** [1] - 8:9
  **near** [1] - 20:4
  **need** [3] - 7:6, 18:18,
22:23
  **needed** [1] - 9:20

**Nevada** [3] - 1:7, 3:14, 5:15
**never** [1] - 27:10
**New** [1] - 15:13
**new** [5] - 9:24, 9:25, 15:1, 16:12, 16:13
**next** [3] - 1:25, 16:14, 27:12
**night** [1] - 5:23
**Ninth** [2] - 12:11, 17:22
**nonmutual** [1] - 17:18
**note** [3] - 4:15, 20:3, 22:16
**noticed** [1] - 18:17
**novo** [2] - 24:8, 24:19
**nub** [1] - 18:21
**number** [2] - 9:24, 11:12
**numerous** [1] - 9:17

**O**

**object** [12] - 18:11, 20:20, 20:22, 27:13, 28:3, 28:5, 28:8, 28:9, 28:10, 28:17, 28:20
**objected** [2] - 18:24, 23:22
**objecting** [3] - 3:8, 9:9, 13:18
**objection** [14] - 7:13, 8:4, 8:5, 9:4, 10:16, 10:19, 11:11, 17:15, 19:10, 19:20, 20:12, 20:17, 20:18, 22:16
**objectionable** [1] - 18:23
**objections** [1] - 22:11
**obviously** [1] - 9:16
**occasion** [1] - 28:6
**OF** [2] - 1:1, 1:15
**Official** [1] - 1:23, 29:15
**old** [1] - 6:21
**Olson** [1] - 3:7
**one** [14] - 4:3, 4:17, 8:11, 10:9, 11:12, 12:16, 14:16, 14:18, 14:20, 15:14, 16:8, 19:4, 19:10
**ones** [2] - 7:16, 13:20
**ongoing** [1] - 17:8
**oops** [1] - 6:16
**opinion** [1] - 13:10
**opportunity** [2] -

22:23, 23:4
**opposed** [2] - 23:11
**opposite** [1] - 11:13
**opposition** [3] - 17:15, 20:19, 28:6
**ORAL** [1] - 1:15
**order** [37] - 3:9, 5:4, 7:3, 7:7, 7:21, 8:8, 8:16, 9:15, 9:22, 10:17, 10:23, 11:6, 11:9, 12:6, 14:21, 16:15, 17:9, 18:12, 18:15, 18:23, 20:20, 20:22, 21:4, 24:25, 25:23, 26:3, 26:6, 26:13, 26:16, 27:7, 27:15, 27:16, 27:21, 27:24, 28:8, 28:19
**orders** [8] - 12:10, 13:8, 14:4, 15:22, 19:24, 20:7, 20:8, 27:1
**original** [1] - 15:9
**ought** [1] - 19:1
**ounce** [1] - 13:13
**out-of-state** [1] - 3:23
**outstanding** [1] - 7:16
**overrule** [2] - 19:9, 20:11
**overruled** [2] - 22:12, 27:12
**owned** [1] - 17:1

**P**

**page** [2] - 1:25, 26:17
**pages** [1] - 27:3
**paper** [2] - 9:18, 20:19
**papers** [5] - 20:21, 21:1, 21:19, 22:11, 26:10
**Park** [1] - 17:17
**part** [7] - 8:21, 12:8, 18:7, 19:21, 26:7, 27:7, 27:24
**particular** [1] - 8:14
**particularly** [1] - 26:2
**parties** [11] - 9:5, 10:20, 11:16, 13:5, 14:2, 15:13, 18:4, 19:6, 20:20, 24:23, 27:23
**parts** [1] - 3:12
**party** [8] - 11:5, 11:21, 12:4, 12:12, 13:24, 15:1, 17:21,

28:12
**Pelosi** [1] - 8:9
**pending** [4] - 4:24, 4:25, 5:5, 14:23
**people** [3] - 5:15, 12:24, 14:2
**per** [1] - 4:20
**permissible** [1] - 17:19
**permitted** [2] - 18:9, 18:10
**person** [1] - 23:23
**PERSONA** [1] - 2:13
**persons** [1] - 27:22
**perspective** [1] - 25:4
**pertains** [1] - 23:14
**phone** [1] - 7:9
**phonetic** [1] - 17:18
**phonetic)** [1] - 6:14
**piece** [1] - 9:18
**Pisanelli** [1] - 3:11
**Piskun** [10] - 4:13, 4:14, 4:20, 4:24, 5:3, 9:6, 19:23, 25:16, 25:19, 26:3
**Piskun's** [1] - 13:11
**Plaintiffs** [1] - 1:9
**plaintiffs** [1] - 28:19
**plane** [1] - 7:21
**pleading** [2] - 5:23, 26:15
**pleadings** [1] - 21:14
**pleasure** [1] - 3:14
**pocket** [1] - 12:9
**point** [1] - 9:1
**pointed** [1] - 9:19
**portion** [1] - 26:16
**Posary** [1] - 17:17
**position** [3] - 19:16, 19:17, 22:22
**possible** [1] - 26:8
**possibly** [1] - 7:4
**potential** [1] - 11:23
**present** [2] - 10:17, 26:10
**presented** [1] - 10:23
**preserved** [2] - 24:8, 24:18
**preserves** [1] - 24:6
**previously** [1] - 4:22
**primarily** [1] - 21:22
**primary** [1] - 20:4
**PRINCE** [2] - 2:9, 6:13
**Prince** [2] - 6:14, 6:15
**principal** [1] - 14:7
**privilege** [1] - 23:19
**pro** [4] - 3:17, 4:6, 4:20, 8:21

**problem** [3] - 23:10, 26:19, 28:14
**procedure** [2] - 14:9, 18:1
**proceeded** [1] - 13:21
**proceedings** [3] - 10:6, 29:12
**process** [1] - 11:6
**produced** [1] - 20:7
**proposal** [1] - 9:4
**proposed** [2] - 12:7, 27:7
**proposing** [1] - 26:20
**PROPRIA** [1] - 2:13
**provincial** [1] - 5:17
**publish** [2] - 12:23, 12:24
**purchase** [1] - 15:9
**purpose** [5] - 5:21, 5:24, 8:16, 20:18, 28:15
**purposes** [1] - 7:2
**put** [6] - 11:25, 12:20, 14:22, 17:22, 24:14, 24:24

**Q**

**quick** [2] - 24:16, 24:24
**quid** [1] - 8:21
**quite** [1] - 5:16
**quo** [1] - 8:21

**R**

**rather** [1] - 13:13
**RE** [1] - 1:4
**reached** [1] - 8:25
**read** [3] - 6:2, 18:19, 23:4
**real** [3] - 13:4, 13:6, 17:7
**really** [10] - 7:6, 7:22, 8:4, 10:21, 11:11, 12:20, 20:25, 21:14, 21:22
**reason** [2] - 7:24, 17:7
**reasons** [1] - 18:13
**receiving** [1] - 7:19
**recognize** [2] - 13:11, 22:1
**record** [5] - 20:3, 21:17, 22:4, 28:21, 29:12
**reflect** [1] - 28:21
**regarding** [2] -

13:10, 19:20
**relate** [1] - 26:2
**related** [1] - 22:18
**relates** [1] - 22:17
**relating** [3] - 8:5, 9:5, 24:4
**remain** [1] - 13:25
**remaining** [3] - 19:4, 21:3, 22:11
**remind** [1] - 5:7
**RENO** [1] - 3:1
**Reno** [3] - 1:7, 5:20, 6:22
**repeat** [1] - 18:18
**rephrase** [1] - 12:19
**rephrasing** [1] - 13:5
**Reported** [1] - 1:23
**Reporter** [2] - 1:23, 29:15
**represent** [2] - 6:23, 14:10, 14:12
**represented** [3] - 15:8, 15:10, 19:13
**representing** [3] - 10:5, 15:20, 15:23
**represents** [1] - 6:25
**Resolution** [4] - 3:4, 19:23, 22:17, 22:25
**resolve** [1] - 21:13
**resolved** [1] - 11:14
**resolving** [1] - 24:24
**respect** [9] - 7:22, 11:16, 19:2, 19:4, 21:21, 23:3, 23:7, 24:8, 25:16
**respond** [2] - 15:16, 22:23
**result** [1] - 9:16
**return** [1] - 20:2
**reversal** [1] - 12:24
**RICO** [1] - 16:12
**rid** [1] - 12:9
**Rob** [1] - 3:15
**role** [3] - 16:8, 16:10, 16:11
**roll** [1] - 12:12
**ruled** [2] - 20:16, 21:23
**rules** [1] - 23:24
**ruling** [2] - 12:22, 13:24
**rulings** [12] - 8:14, 8:17, 8:18, 8:19, 8:20, 9:5, 14:8, 17:12, 19:24, 25:19
**Rumph** [1] - 9:15

**S**

**SAN** [1] - 1:7

scratch [1] - 24:20
search [1] - 26:9
second [2] - 8:13, 20:25
see [3] - 3:4, 3:23, 5:14
seek [3] - 5:1, 18:8, 18:10
servicing [2] - 22:18
servicing-related [1] - 22:18
set [4] - 16:14, 18:13, 22:11, 28:7
settle [1] - 13:12
SETTLEMENT [1] - 2:11
settlement [19] - 7:6, 8:21, 11:6, 11:15, 12:8, 13:18, 17:21, 18:5, 18:6, 18:7, 18:8, 18:11, 18:13, 19:6, 19:17, 19:22, 24:25, 25:17
settlements [1] - 12:16
settling [3] - 12:14, 18:4, 19:5
seven [1] - 18:24
Shepard [1] - 24:18
Sheppard [6] - 5:19, 5:21, 23:3, 23:8, 23:22, 24:14
SHEPPARD [1] - 2:5
showing [1] - 23:23
side [4] - 11:10, 12:16, 12:18, 12:19
sidewalk [1] - 17:1
sign [1] - 24:25
signed [1] - 27:16
signing [1] - 28:21
SILAR [1] - 1:18
Silar [14] - 4:5, 6:7, 9:5, 11:18, 11:19, 11:24, 12:4, 17:4, 17:15, 19:6, 19:22, 20:19, 23:14, 23:21
Silar's [3] - 12:9, 13:10, 22:5
simply [8] - 5:21, 5:25, 10:20, 10:24, 10:25, 23:6, 23:8, 27:23
six [3] - 18:24, 19:3
slate [1] - 12:13
so-called [1] - 8:6
solve [1] - 8:11
sometime [1] - 16:14
somewhere [2] - 26:6, 26:10
soon [2] - 7:4, 26:8
sooner [1] - 22:15

sorry [4] - 5:7, 22:6, 22:14, 26:11
sought [3] - 16:24, 20:17, 27:10
sounded [1] - 7:13
sounds [3] - 11:13, 19:1, 25:9
south [1] - 5:14
SPE [1] - 1:11
speaking [1] - 22:5
specific [1] - 28:16
specifically [1] - 19:18
Sporking [1] - 5:12
stand [1] - 11:22
standing [2] - 20:20, 20:22
stands [1] - 11:6
start [1] - 29:1
state [1] - 3:23
State [1] - 3:14
statement [3] - 14:5, 27:5, 27:9
staying [1] - 5:12
still [11] - 5:2, 5:5, 5:20, 6:22, 10:12, 10:13, 12:6, 13:10, 14:16, 15:1, 22:4
stipulation [2] - 4:16, 4:24
stock [1] - 13:7
stood [1] - 12:6
street [1] - 4:9
stress [1] - 20:4
stricken [2] - 8:20, 14:1
strike [6] - 8:17, 9:11, 9:12, 19:24, 25:23, 26:13
strikes [2] - 10:24, 10:25
striking [7] - 11:17, 11:19, 14:4, 14:7, 23:13, 26:3, 26:16
subject [2] - 10:16, 17:3
submit [2] - 12:3, 17:20
submitted [1] - 26:6
subsequent [2] - 11:24, 20:8
substantial [2] - 7:14, 20:1
substantive [1] - 23:9
substituted [1] - 4:20
sued [3] - 16:11, 16:13, 16:17
suffer [1] - 12:13
suit [1] - 11:24

Sullivan [2] - 5:11, 5:12
SULLIVAN [2] - 2:11, 5:10
supposed [1] - 10:15
Supreme [1] - 17:23
switch [1] - 18:1

T

tall [1] - 22:4
Teasdale [1] - 6:25
telephone [5] - 6:5, 6:16, 6:19, 21:13, 29:9
ten [2] - 15:3, 18:22
tension [5] - 12:15, 12:16, 12:20, 13:4, 13:6
term [1] - 23:8
third [1] - 10:20
three [1] - 16:12
timeliness [1] - 28:10
timetable [1] - 24:24
today [8] - 5:3, 16:9, 17:8, 18:2, 18:12, 22:22, 28:22
TODD [1] - 2:3
Todd [1] - 3:11
Tolles [1] - 3:7
tomorrow [1] - 25:2
totally [1] - 13:7
towards [1] - 7:14
town [1] - 5:14
transcript [1] - 29:12
travel [1] - 25:11
treat [1] - 23:9
treated [1] - 5:25
trial [2] - 9:25, 13:20
true [1] - 25:24
trust [7] - 3:23, 7:24, 16:24, 18:25, 21:5, 21:21, 21:24
Trust [2] - 8:10
trustee [3] - 16:22, 16:23, 17:1
Trustee [1] - 3:22
TRUSTEE [1] - 1:21
try [1] - 22:7
trying [2] - 15:6, 15:17
TWEED [1] - 2:3
Tweed [5] - 3:8, 14:12, 15:10, 15:14
two [7] - 7:4, 7:22, 20:13, 21:17, 26:15, 26:17, 27:3
two-page [1] - 26:17
type [1] - 22:19

U

U.S [1] - 17:23
under [4] - 15:6, 28:10, 28:11, 28:20
unfortunately [1] - 9:21
unopposed [1] - 5:1
unrelated [1] - 7:1
up [4] - 12:23, 20:13, 23:23, 27:25
USA [2] - 1:4, 1:11

V

vacate [2] - 10:14, 27:24
vacated [2] - 9:19, 27:10
vacating [1] - 12:14
vacature [11] - 8:6, 9:4, 17:12, 17:22, 18:2, 18:8, 19:7, 19:19, 21:23, 25:19, 25:20
various [1] - 10:6
Vegas [2] - 5:16, 6:4
versus [1] - 1:10
vice [1] - 3:17
view [1] - 7:17
views [1] - 8:14
vindictiveness [1] - 13:13
violation [1] - 27:1

W

wait [1] - 12:25
walked [1] - 16:25
water [1] - 5:24
wear [2] - 22:4, 29:4
week [2] - 25:3, 26:8
Weil [7] - 3:8, 6:25, 14:12, 14:21, 15:2, 15:8, 22:16
WEIL [1] - 2:3
white [1] - 29:4
whole [2] - 7:5, 13:20
William [1] - 3:21
willing [1] - 7:4
wipe [1] - 12:13
withdrawal [3] - 5:4, 9:5, 15:22
withdrawn [5] - 4:13, 4:18, 4:20, 14:18, 15:21
word [1] - 21:1
words [3] - 9:2, 13:14, 24:17

works [1] - 17:18
world [1] - 18:17

Y

year [3] - 7:6, 9:17, 16:11
years [1] - 15:3
yesterday [5] - 7:20, 21:2, 26:15
York [1] - 15:13