1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

UNITED STATES DISTRICT COURT

17

District of Nevada

18

| In re: | Case No. 2:07-CV-892-RCJ-GWF-BASE |
| | and |
| USA COMMERCIAL MORTGAGE COMPANY, | Case No. 3:07-CV-241-RCJ-GWF |
| Debtor. | |
| | ORDER **FINAL TAKE NOTHING** |
| 3685 SAN FERNANDO LENDERS, LLC, *et al.*, | **JUDGMENT REGARDING SILAR** |
| | **ADVISORS, LP, SILAR SPECIAL** |
| Plaintiffs, | **OPPORTUNITIES FUND, LP, ASSET** |
| | **RESOLUTION LLC, AND BORIS PISKUN** |
| v. | **PURSUANT TO FED. R. CIV. P. 54(b)** |
| COMPASS USA SPE LLC, *et al.*, | |
| Defendants. | |

26

27

On September 6, 2012, the Court entered its Agreed Order Regarding Settlement And

Related Relief (the "Agreed Order"). *See* Docket No. 1915 in Case No. 09-32824. Pursuant to the

Agreed Order, the claims that were or could be asserted between and among Plaintiffs (and the other "B&B DL Settling Clients," as defined in the Agreed Order), on the one hand, and Defendants Silar Advisors, LP, Silar Special Opportunities Fund, LP, and Asset Resolution LLC solely in its capacity as debtor ("Asset Resolution") (together, "Silar"), the chapter 7 bankruptcy estate of Asset Resolution LLC (the "Estate"), and Boris Piskun ("Piskun"), on the other (collectively, the "Parties"), were settled (the "Settlement"). *See id.* Among other things, the Agreed Order also contemplates that a severed final judgment be entered in this action as to and among the Parties. *See, e.g., id.*, ¶ 122. The term "Silar Parties" in this Final Judgment has the meaning set forth in the Agreed Order.

In addition, after considering all the pleadings, declarations and other evidence, motions, responses, transcripts, evidence admitted at trial, orders, and other records entered in this case, the "Asset Resolution Bankruptcy Cases" (jointly administered in this Court as BK-S-09-32824-RCJ), and numerous related proceedings (over all of which this Court takes judicial notice), the representations to the Court by counsel for the Parties, and applicable law, the Court hereby finds that good cause exists for entering this Agreed Final Judgment between and among the Parties pursuant to Federal Rule of Civil Procedure 54(b).

BASED UPON THE FOREGOING, THE COURT NOW HEREBY ENTERS THIS ORDER AND MAKES THE FOLLOWING FINDINGS OF FACT, LEGAL CONCLUSIONS, AND DECLARATIONS:

## I.

### RULE 54(B) CERTIFICATION

1. The findings of fact, legal conclusions, and declarations in this Final Judgment are final as between the Parties. The findings of fact, legal conclusions, and declarations in this Judgment are interlocutory as to remaining defendants Compass Partners, LLC and Compass USA

SPE, LLC (jointly and severally, "Compass") and David Blatt ("Blatt"), pending entry of a final money judgment against those defendants.

2.      There is no just reason for delay in entry of a Final Judgment as between the Parties, in light of, among other things, the merits, the interests of judicial administration, the equities, the relationship between the claims which are the subject of this Final Judgment and the claims against the only remaining defendants in this case, Compass and Blatt, possible future developments in this case, delay, and expense.

## II.

## BACKGROUND

3.      This case arises out of a series of related proceedings.

4.      The first set of proceedings were chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Nevada (the "Nevada Bankruptcy Court") bearing primary Case No. BK-S-06-10725-LBR (the "USACM Bankruptcy Cases"). The USACM Bankruptcy Cases were prompted by the liquidity problems created by a massive, interstate ponzi-scheme in which insider managers and brokers of USA Commercial Mortgage Company and its affiliates ("USACM") fraudulently induced thousands of persons across the United States ("Direct Lenders") to invest hundreds of millions of dollars in fractionalized "direct lender" beneficial interests ("DL Interests") in what were falsely represented to be fully-secured, short-term commercial real estate loans to independent borrowers and guarantors (the "USACM Loans").

5.      The proceedings mushroomed from the Nevada Bankruptcy Court to civil litigation in this Court as a result of the sale to Compass of, among other things, loan servicing agreements (the "LSAs") and/or DL Interests held by USACM in sixty-five USACM Loans and/or related collateral properties over the objections of certain other Direct Lenders. Silar, acting for itself and/or as investment manager and as lead lender for certain investors and participants, advanced over $50 million to Compass under a Master Repurchase Agreement ("MRA") which Compass used to

engage in the purchase and sale transaction with USACM.  The civil litigation involved a series of actions ultimately consolidated in this action (the "892 Case"), including without limitation an action bearing Case No. 3-07-CV-241-RCJ-GWF (the "241 Case").

6.    The proceedings also included the Asset Resolution Bankruptcy Cases.  Those cases were originally filed in New York, were transferred to Nevada, were fully withdrawn to this Court, and are now pending before this Article III Court.

7.    In 2007, in this 892 Case, this Court exercised *in rem* jurisdiction over the USACM Loans and the loan servicing relationship created by the LSAs, entered a Preliminary Injunction (the "Preliminary Injunction") (892 Doc. 199), and issued a series of interlocutory declarations concerning the rights, obligations, fees, and alleged wrongful conduct of the post-USACM servicers with respect to fifty-two of the USACM Loans from February 16, 2007, through January 19, 2010 (the "Post-USACM/Pre-Termination Servicing Period").

8.    In that connection, in 2007, all persons or entities who were known to own or were believed to own beneficial or DL Interests – *i.e.*, the Direct Lenders – in the fifty-two USACM Loans which were the subject of this action were served a copy of the Preliminary Injunction and notified of their right to appear herein.  The Direct Lenders were also served a copy of the motion which led to the entry of the Agreed Order.  The DL Interests in all of the USACM Loans belong to one or more than one natural person within the meaning of Nev. Rev. Stat. 645B.340 et al.  The holders of more than fifty-one percent of the DL Interests in all of the USACM Loans except the "Marlton I" loan consented to the terms of the Agreed Order in writing with respect to those loans. This Final Judgment partially implements those terms.  All Direct Lenders and their successors-in-interest are therefore bound by the Court's rulings in this Final Judgment based upon this Court's *in rem*, bankruptcy, diversity, and supplemental subject matter jurisdiction, and Nevada law.

## III.

## MATTERS RELATING TO LOAN COLLECTIONS/WATERFALL

9.     The Court has entered a series of orders in the 892 Case and also in the Asset Resolution Bankruptcy Cases which recognized that the Estate's servicing rights and duties under the LSAs were terminated as of January 19, 2010, and recognized the assumption of servicing duties by others.  The Court also entered a series of orders mandating a procedure for resolving claims for payment by persons or entities who provided goods or services in connection with the servicing of the USACM Loans during the Post-USACM/Pre-termination Servicing Period.  See 892 Case Doc. 1630; AR Bk Doc. Nos. 356, 387, & 989; AR Bk January 19, 2010 Transcript at 57.

A.     **Claims And Parties**

10.     On August 29, 2007, this Court affirmed the Nevada Bankruptcy Court's order confirming the USACM Plan under chapter 11 of the Bankruptcy Code over the objections of certain Direct Lenders.  In that decision, among other things, this Court ruled that the "Bankruptcy Court's confirmation order does not purport to interpret the LSAs to define Compass' contractual rights, or lack thereof . . . [under the LSAs]," and that "[r]esolution of potential, future disputes regarding Compass' rights under the LSAs are a matter of contract interpretation . . . ." [Doc. 160 (Opinion) at 27/lines 3-8]  Compass received notice of the appeal and opted not to appear and assert a position contrary to the ruling ultimately entered by this Court.  This 892 Case is the "future dispute" anticipated by the Court's opinion.

11.     Among other things, Plaintiffs in the 892 Case sought to terminate Compass (and later Asset Resolution) as servicers for the USACM Loans, sought declarations concerning the measurement, timing, and amount of default-fee compensation that was due to be paid to those servicers under the LSAs, and sought an accounting of loan collections and damages for "loan servicer misconduct" based on those declarations.

12.     The original plaintiffs in the 892 Case were limited liability companies ("Plaintiff LLCs") representing greater than 51 percent of the DL Interests in fifty-two of the USACM Loans which were the subject of USACM's sale to Compass.  The remaining purchased USACM Loans were either owned entirely by USACM (and then Compass) or were resolved without controversy. Although the Plaintiff LLCs were eventually dismissed from the 892 Case, the case continued to be prosecuted by and against several "loan captains" and "key people" associated with the fifty-two USACM Loans at issue in the litigation.  [1832 Doc. 7 at 13-15; 09-15632 Transcript at 11/line 4]

13.     This Court has recognized that the LSAs and the Nevada statutes and regulations governing the LSAs created co-ownership interests in the same subject matter and a substantial identity, community, or mutuality of interests among all of the Direct Lenders and between the Direct Lenders and their servicers under the LSAs with respect to each USACM Loan which was the subject of the USACM sale.  [892 Doc. 1599 (Order) at 6]  The LSAs at issue in this 892 Case, and the legal and factual issues involving collections and the measurement and timing of payment of base-servicing and other fees and servicer advances thereunder, were and are common to all Direct Lenders.

14.     The claims and defenses asserted with respect to the issues under the LSAs in this 892 Case were and are typical of those which would be asserted by all Direct Lenders.

15.     The Direct Lenders vigorously presented the issues in connection with the interpretation of the LSAs in this 892 Case.  The loan servicers under the LSAs also acted or refused to act on grounds that applied generally to all of the Direct Lenders in the USACM Loans.

16.     Inconsistent or varying adjudications with respect to the interpretation of the LSAs would establish incompatible standards of conduct for the loan servicers under the LSAs with respect to the same USACM Loan.

17.     For these reasons and others, the Court protected the interests of all parties to all of the LSAs by entering the Preliminary Injunction (which, as has been noted, was the result of a

consolidation of various pending cases, including a core adversary proceeding brought by Compass to enforce the USACM Plan and related orders for which the automatic reference was withdrawn to this Court).

**B.      Preliminary Injunction/*In Rem* Jurisdiction**

18.      The Preliminary Injunction preserved the *status quo* pending adjudication of the issues raised in this consolidated 892 Case and applied to all Direct Lenders through the Court's exercise of *in rem* jurisdiction "over the [USACM] Loans and LSAs relating thereto."  (892 Doc. 199)  See Morgan Stanley Mortgage Capital, Inc. v. Ins. Commission of State of Cal., 18 F.3d 790 (9th Cir. 1984).

19.      Paragraph 14 of the Preliminary Injunction expressly required service of the Preliminary Injunction on all Direct Lenders in the USACM Loans by mail and further provided that any Direct Lender who was not a named plaintiff in the 892 Case "must file a written objection with this Court stating the specific basis for such objection within fifteen (15) days of the date hereof, or such Direct Lender shall otherwise be bound by the terms hereof . . . ."  (892 Doc. 199 at 12, ¶ 14)

20.      As noted above, the Preliminary Injunction was mailed to all Direct Lenders in the USACM Loans.  No Direct Lenders filed an objection to the relief set forth in the Preliminary Injunction.  Nor did any named party in the 892 Case or any other Direct Lenders appeal issuance of the Preliminary Injunction.

21.      The Ninth Circuit Court of Appeals has affirmed this Court's amendment of the Preliminary Injunction to add Asset Resolution as the replacement servicer to Compass.  Cangelosi v. Silar Advisors, LP (In re USA Commer. Mortg. Co.), 397 F. App'x 300, 306 (9th Cir. 2010) (unpublished) [892 Doc. 1877].

22.      The Ninth Circuit Court of Appeals has also affirmed this Court's application of the termination provision in the Preliminary Injunction as of January 10, 2010 to all of the LSAs

purchased by Compass as to all Direct Lenders.  See <u>3685 San Fernando Lenders LLC v. Cross Equities Partners, LLC, et al.</u>, No. 09-16897, Doc 88-1 at 10-13 (9/19/11).

23.    The Ninth Circuit has also ruled that, "to the extent any party would argue that the Preliminary Injunction improperly affected their underlying rights in the LSAs, . . . such argument [w]as waived because no party . . . appealed the entry of the original preliminary injunction." <u>See 3685 San Fernando Lenders LLC v. Cross Equities Partners, LLC, et al.</u>, No. 09-16897, Doc 88-1 at 12, n.4 (9/19/11).

24.    The Preliminary Injunction was therefore binding on all parties to the USACM Loans servicing relationship from November 2007 onward.

**C.    <u>Servicing And Collections Under The Preliminary Injunction</u>**

25.    The Preliminary Injunction was entered in part in response to motions initially filed by Compass which sought to maintain Compass' position as servicer during the Post-USACM/Pre-Termination Servicing Period.  (10-725 Doc. 3773)

26.    The Preliminary Injunction provided the "exclusive authority of Compass to act directly on behalf of the Direct Lenders as servicer" for the loans *pendente lite* and provided a mechanism for terminating the servicing relationship by motion.  (892 Doc. 199 at 4, ¶¶ 1 & 2, and at 9, ¶ 8)

27.    Compass acted as the servicer of the USACM Loans from February 16, 2007 (the effective date of the sale by USACM) through September 26, 2008 (when Asset Resolution terminated Compass' rights under the MRA with respect to the LSAs and the USACM DL Interests). During those periods, the Direct Lenders sought in the 892 Case to terminate that servicing relationship in order to obtain day-to-day control over the management and collection of the USACM Loans and the protection of the underlying collateral (through, for example, payment of taxes, maintenance costs, and the like).

28.    This Court has ruled that Silar was vicariously liable to certain Direct Lenders on certain USACM Loans for acts by Compass relating to the servicing of USACM Loans because the MRA established a principal-agency relationship between Silar and Compass with respect to those matters.  Although the MRA cannot shield Silar from *respondeat superior* liability for servicer-related conduct of Compass, the Silar Parties are not vicariously liable for any acts or omissions of Compass which either took place before the MRA was executed (February 16, 2007), which were performed outside the scope of the agency under the MRA, and/or which were undertaken for Compass' own account.  This means, for example, that none of the Silar Parties is liable for purchases of DL Interests by Compass or its affiliates or for any debts incurred by Compass to third parties hired or retained by Compass to assist Compass in the performance of  Compass's duties to Silar or the Direct Lenders.

29.    As this Court has ruled, as a result of the assignment by Silar to Asset Resolution and the termination of Compass' rights under the MRA and related agreements by Asset Resolution as of September 26, 2008, as well as the Court's ensuing order joining Asset Resolution as a party to the 892 Case and the Preliminary Injunction:  (a) Asset Resolution became the holder of the servicing rights and the DL Interests originally received by Compass through the purchase and sale transaction with the USACM estates; and (b) Asset Resolution, not the Silar Parties, became the owner of the servicing rights (and related receivables accrued thereunder) for the USACM Loans from September 26, 2008 through January 19, 2010.   Asset Resolution was assisted in the servicing and administration of the Loans by Windemere Capital, LLC (a Nevada-licensed sub-servicer) and by Servicing Oversight Solutions, LLC.

D.    **The Preliminary Injunction "Waterfall" Procedure**

30.    The Preliminary Injunction set forth detailed procedures for handling loan collections when there was a payment in full, a "consensual discounted payoff," or a "non-consensual discounted payment."  (892 Doc. 199 at 6-8, ¶¶ 4-7)

31.    The segregation of collections into various categories:  (a) allowed Compass and Asset Resolution to withdraw servicer advances and base servicing fees chargeable against the accounts of all Direct Lenders in the USACM Loans without further Court order; (b) allowed Compass and Asset Resolution to withdraw payments for all "Compass Fees" (even default interest, late fees, and other non-base-servicing fees) chargeable against their own DL Interests AND against the DL Interests of any other Direct Lenders who did not object per the LSAs to the treatment proposed by Compass or Asset Resolution; (c) required Compass and Asset Resolution to set-aside the default interest, late fees, and other non-base-servicing fees which were in "dispute" because the Direct Lenders in question did not consent to the payment of such fees as proposed by the loan servicer ("Disputed Fees"); and (d) allowed Compass and Asset Resolution to distribute payments to themselves and other Direct Lenders for their DL Interests.

32.    On November 15, 2007, Compass filed an accounting of loan collections and disbursements with the Court as required by section 9 of the Preliminary Injunction (the "Compass Accounting").  (892 Doc. 216)  No objections to that accounting were asserted by any Direct Lenders.  Section 6(d) of the Preliminary Injunction allowed Compass and Asset Resolution to receive fees with respect to DL Interests they owned and/or with respect to DL Interests held by persons who did not object to paying such fees.  Also, with the exception of the Gess Loan (where the Court  directly ruled upon the allocation of cash from the liquidation of that loan), no Direct Lenders asserted any objections in the Court to any base servicing fees taken by Compass or Asset Resolution under the Preliminary Injunction and/or the LSAs.  In fact, the original Complaint filed by the Plaintiffs in the 892 Case acknowledged that "[p]ursuant to Section 5 of the Loan Servicing Agreement, the loan servicer had the right to retain, as compensation for servicing loans a servicing fee varying between 1-3% per annum." (See 241 Doc. 1, paragraph 56).  This allegation was essentially reiterated in paragraph 45 of the Third Amended Complaint filed in the 892 Case.  (892 Doc. 1499)

33.     Compass and Asset Resolution (respectively) – and not the Silar Parties – were responsible for retaining any base servicing fees and other payments from USACM Loan collections during the Post-USACM/Pre-Termination Servicing Period.  During trial in the 892 Case, Silar filed a notice of intent to deposit monies based on a tentative calculation of what might be payable to Direct Lenders solely based on the Court's "Gess  math" (which Silar disputed) and without any considerations for Direct Lender consents, offsets for servicer advances, or other deductions. [892 Doc. 1995]. On January 27, 2011, Silar filed a detailed supplemental accounting (the "Supplemental Silar Accounting") and served over 6,000 pages of supporting materials on counsel for the Estate and Plaintiffs.  (892 Doc. 2041)  Silar also provided its experts from a forensic accounting firm, Kroll, Inc., for deposition by Plaintiffs' counsel, Bickel & Brewer.  On August 9, 2011, the Court entered an order (892 Doc. 2188)  and the clerk entered a "judgment" (892 Doc. 2189) concerning the payment of $1,415,572.26 (the "Tendered $1.4 Million") to the IOLTA account of Bickel & Brewer in connection with Plaintiffs' contentions that these collections were not properly accounted for under the Preliminary Injunction.  Silar contested those claims but agreed to settle the matter by depositing cash in the questioned amount with Bickel & Brewer until a review of the accounting could be made.

**E.     Final Adjudications With Respect To Loan Collections As To Silar And The Estate**

34.     The Court previously found and hereby finally adjudicates that $375,112.43 of the Tendered $1.4 Million represented monies received by Greenberg Traurig LLP ("Greenberg Traurig") on October 1, 2009 (i.e., contemporaneously with the resolution of the Anchor B Loan which was a subject of the trial in the 892 Case and just before the Asset Resolution Bankruptcy Cases were filed).  The Court further ruled (and hereby affirms) that Silar should be entitled to recover the first $375,112.43 of any recoveries from Greenberg Traurig, LLP, however collected, because Silar was in effect "returning" such sums through the $1,415,572.62 payment.

- 11 -

35.     Paragraph 4 of the August 9, 2011 order directs that, except for $90,000 which was payable for attorneys fees and costs of an auditor, the remaining $1,325,572.26 was to be held in Bickel & Brewer's IOLTA account until an analysis could be conducted concerning how such monies should be allocated.  (892 Doc. 2188).  The accountings were based on conservative assumptions and therefore did not contain additional appropriate deductions for Direct Lender consents, servicer advance offsets, and other matters.  The Court now holds and hereby renders this final adjudication that no Silar Party is liable to any Direct Lenders in any USACM Loan for violating the Preliminary Injunction or any other court orders, for breaching the LSAs, or for receiving or retaining any collections from USACM Loans, and the Silar Parties are fully and completely discharged from any further obligations or liabilities to all Direct Lenders with respect to all USACM Loans.

36.     The Court also now hereby holds and renders this final adjudication:  (a) accepting the Compass Accounting (as it relates to the Silar Parties and the Estate) and the Supplemental Silar Accounting; and (b) discharging the Silar Parties from any and all obligations, liabilities, or "Causes of Action" (as defined in the Agreed Order) to further account for, pay over, or compensate any or all Direct Lenders for any collections the Silar Parties or Compass  received directly or indirectly for or relating to USACM Loans from February 16, 2007  through the date of this Final Judgment.

37.     The Court also now hereby holds and renders this final adjudication that:  (a) all obligations of the Silar Parties directly or indirectly under the Preliminary Injunction, under the Order Approving Settlement Of Motions For An Order To Show Cause Why Silar And Its Principals Should Not Be Held In Contempt Of Court [892 Doc. 2188], and under the Judgment on Attorney's Fees [892 Doc. 2189] shall be deemed automatically fully and finally satisfied in all respects and none of the Silar Parties shall be subject to any Causes of Action by any Direct Lenders relating directly or indirectly to any USACM Loan collections or disbursements or other matters which gave rise thereto; (b) the obligation to render an accounting to the Court with respect to any part of the

$1,415,572.26 deposited by the Silar Parties with Bickel & Brewer on March 1, 2011 in connection therewith shall be deemed fully discharged; and (c) $1,325,572.26 of the $1,415,572.26 deposit shall be automatically deemed to be held by Bickel & Brewer in trust solely for the B&B DL Settling Clients.

38.     The Court also now hereby holds and renders this final adjudication that:   (a) Plaintiffs' Motion to Compel Silar Advisors, LP and Silar Special Opportunities Fund, LP to Deposit Funds with the Court (the "Deposit Motion") (892 Docs. 2133) is denied; (b) the proposed order submitted by the B&B DL Settling Clients in connection with their Deposit Motion (892 Doc. 2215) is denied; and (c) any and all obligations, duties, responsibilities, or liabilities of the Silar Parties to any Direct Lenders to deposit, reimburse, pay over, compensate for, or otherwise account for any monies received in connection with USACM Loans from February 16, 2007 through the date of this Final Judgment have been discharged in full and no Causes of Action by any Direct Lender(s) against any Silar Parties shall lie with respect thereto.

39.     Based upon the findings made throughout the Agreed Order and this Final Judgment and as a result of the Settlement, this Court  hereby holds and renders final adjudication that:  (a) the Silar Parties, Piskun (in his individual capacity), and the Estate were and are persons who were performing and have performed acts under and in complete compliance with federal court orders with respect to all USACM Loan collections from February 16, 2007 through the date of this Final Judgment; and (b) such orders (including this Final Judgment) preempt state law with respect to such persons and entities relating to such matters.  For the avoidance of doubt, this declaration does not apply to Compass.

**IV.**

**FINAL ADJUDICATION CONCERNING CERTAIN
INTERLOCUTORY FINDINGS AND CONCLUSIONS**

40.     The Court notes that, per the Court's direction after trial, Plaintiffs submitted a detailed proposed Declaratory Judgment to be considered for entry by the Court in addition to money judgments against the various defendants.  (See 892 Doc Nos. 2213 & 2214)  The Court has vacated *nunc pro tunc* an earlier-filed form of "judgment" which was entered through oversight, omission, and inadvertence.      (See 892 Doc. Nos. 2174, 2176, 2282, and 2283). The form of declaratory judgment presented by Plaintiffs (892 Doc. 2213) is denied as moot and the form of money judgment presented by Plaintiffs (892 Doc. 2214) is denied without prejudice.

41.     Based upon the findings made throughout the Agreed Order and this Final Judgment and as a result of the Settlement, this Court also hereby affirms and renders final adjudication that: (a) all oral and written rulings and/or findings in this 892 Case, any one or more of the cases consolidated cases with this 892 Case, and/or in the Asset Resolution Bankruptcy Cases by the Court or jury that Silar, any of the other Silar Parties, Piskun, and/or the Estate violated the mortgage broker, power of attorney, escrow agent, or other requirements of Nevada law (*see, e.g.,* 892 Doc. 1819 at 7/12 to 8/12) are vacated *nunc pro tunc* and shall have no collateral estoppel or *res judicata* effect (and therefore no such rulings or findings  have been made with respect to Silar, any of the other Silar Parties, Piskun, and/or the Estate); (b) all oral and written rulings and/or findings by the Court or the jury that any of the Silar Parties, the Estate, or Piskun engaged in conversion, conspiracy, "grievous and perfidious conduct," deliberate contravention of the intention and spirit of the LSAs, breach of fiduciary duty, elder abuse, misuse of  actual or putative powers of attorney, breach of the implied covenant of good faith and fair dealing, failure to act in good faith, acting in bad faith, reprehensible conduct, malice, or any acts or omissions which would support the imposition of any liability, compensatory, punitive, or statutory damages  are vacated *nunc pro tunc*

- 14 -

and shall have no collateral estoppel or *res judicata* effect (and therefore no such rulings or findings have been made with respect to Silar, any of the other Silar Parties, Piskun, and/or the Estate); and (c) all responsibilities, duties, obligations, and/or liabilities of any kind and nature of the Silar Parties directly or indirectly arising out of or relating to the USACM Loans shall be deemed fully and finally satisfied. There are no findings of wrongdoing by Silar, the Silar Parties, the Estate, and/or Piskun. Nothing in this Final Judgment is intended to or does have any impact on the appeal of the Agreed Order by Weil Gotshal & Manges, LLP, Tyson Lomazow, and Milbank, Tweed, Hadley & McCloy LLP (jointly and severally, "W/L/M").

## V.

## PERMANENT INJUNCTIVE RELIEF

42. All persons and entities are hereby permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting against the Silar Parties, the Estate, or Piskun any Causes of Action based on any alleged wrongdoing that was undertaken while servicing the USACM Loans and/or the related collateral if 51% or more of Direct Lenders in any of the USACM Loans and/or the related collateral have agreed to the Settlement. In this regard, the B&B DL Settling Clients and the Estate are deemed by the Court to have voted all the DL Interests in any of the USACM Loans and/or related collateral held by them in favor of approving such releases. Nothing in this Final Judgment precludes any persons or entities from defending against, or obtaining a reduction in their own liability in connection with, a cause of action asserted against them based on the fault of others (including without limitation the Silar Parties). Notwithstanding anything to the contrary, W/L/M are not enjoined from asserting any cause of action which is both: (a) not a claim for contribution or indemnity; and (b) not permitted by law to be enjoined by virtue of the Court's approval of the Settlement. For the sake of clarity, W/L/M are barred, enjoined and restrained only from commencing, prosecuting, or asserting causes of action which are barred by virtue of the Court's approval of the settlement, this Final Judgment, and/or applicable law. In light of the foregoing

language and otherwise, the objection and related motion to intervene filed by W/L/M with respect to the form of this Final Judgment [892 Doc. 2299] is overruled and denied.[1]

43.     The Silar Parties, Piskun, the Estate, and the B&B DL Settling Clients (jointly and severally, "Enjoined Persons") are enjoined from, directly or indirectly, through any manner or means:  (a) asserting formally or informally any Causes of Action against any Enjoined Person; and/or (b) taking any acts, directly or indirectly, with the purpose, intent, or foreseeable effect of undermining, impairing, interfering with, or otherwise negatively impacting the efforts of the "Claims Recovery Trust" to collect on the "Trust Assets" which have been "Assigned" to it under the Agreed Order or otherwise (as those terms are defined in the Agreed Order); and/or (c) suggesting, proposing, encouraging, enticing, inspiring, inducing, coordinating, helping, contacting, soliciting, assisting, contributing to, aiding, abetting, or otherwise enabling any person or entity to undertake acts which are enjoined under subsections (a) or (b).

///
///
///
///
///
///
///
///
///
///
///
///

44.     Notwithstanding anything to the contrary in this Final Judgment or the "Trust Agreement" (as defined in the Agreed Order):

---

[1] W/M/L agree that this revised form of Final Judgment resolves their objections to the previously lodged proposed Final Judgment, except insofar as this Final Judgment contains material covered by W/M/L's objections to the Agreed Order, which objections W/M/L acknowledges have already been overruled by the Court.

A.      Any acts or omissions by the Claims Recovery Trust and/or the "Trust Representatives" (as defined in the Agreed Order) and/or persons or entities who are providing business, consulting, litigation support, and/or other services in connection with the liquidation of Trust Assets (including without limitation the assertion of Causes of Action) are not prohibited or enjoined by this Final Judgment;

B.      Any acts or omissions by an Enjoined Person which directly or indirectly assist the activities of the Claims Recovery Trust are not prohibited or enjoined by this Final Judgment;

C.      Any acts or omissions by an Enjoined Person which directly or indirectly involve the assertion of Causes of Action against one or more of the "Professionals" (as defined in the Agreed Order) are not prohibited or enjoined by this Final Judgment;

D.      Nothing in this Final Judgment is intended to or does:  (1) limit or preclude Piskun's counsel, Laxalt & Nomura, Ltd., from continuing to serve as counsel for Compass and defend its interests; and/or (2) limit or preclude any person or entity from asserting Causes of Action as defenses or offsetting counterclaims or from obtaining a reduction of their own liability in connection with a Cause of Action asserted against such person or entity; and/or (3) limit or preclude any Enjoined Person from asserting a Cause of Action for violations of this Final Judgment, the Agreed Order, the Trust Agreement, or the "Instruments of Closing" (as defined in the Agreed Order); and/or (4) limit or preclude any Enjoined Person from asserting a Cause of Action against any person or entity who did not provide and receive a mutual release under the Settlement; and

E.      Nothing in this Final Judgment is intended to or does constitute a release of or prohibition or injunction against the assertion of Causes of Action between or among B&B DL Settling Clients, Bickel & Brewer, Rodger Stubbs ("Stubbs"), McAlan Duncan, Cross FLS, or their respective affiliates.

45.     The foregoing injunctions are intended to be construed *in pari materia* with the injunctions set forth in the Agreed Order.

46.     A bond of $1,000 will be automatically deemed posted by the Estate in favor of the Estate, the B&B DL Settling Clients, the Silar Parties, and Piskun to make the foregoing injunctions effective.

47.     The Court finds that these injunctions are a necessary and material part of the Settlement, promote the policy of encouraging settlement, and are appropriate to protect the Estate and other settling persons and to promote equity, and provide compensation to injured persons from persons responsible for the harm.   The foregoing injunctions also supplement the injunctions contained in the order confirming the USACM Plan.  See Miller v. Christopher, 887 F.2d 902 (9th Cir. 1989); N.R.S. 17.245; Doctors Company v. Vincent, 120 Nev. 644, 650, 98 P.3d 681, 686 (2004); Eichenholtz v. Brennan, 52 F.3d 478, 452-453 (3rd Cir. 1995); In re Stonebridge Techs., Inc., 430 F.3d 260, 266 (5th Cir. 2005) (extending "related to" jurisdiction in a dispute between two non-bankrupt third parties).

48.     In addition to all other remedies available for a violation of an injunction in this Final Judgment, the person or entity harmed by the violations shall be entitled to assert all Causes of Action against the "Violator" which were otherwise the subject of a release or dismissal in the Settlement but such Causes of Action shall be subject to all defenses, if any, by the Violator. Notwithstanding anything to the contrary in this Final Judgment or the Settlement, if the "Violator" is a person or entity who is included in the definition of B&B DL Settling Clients or Silar Parties, then the "Violator" shall only be the specific person or entity who engaged in the violation or breach and the releases and protections accorded to all other persons and entities in the defined group shall retain their releases and protections.  The Court shall retain continuing exclusive jurisdiction to enforce these injunctions to the fullest extent allowed by the law, whether or not the Asset Resolution Bankruptcy Cases are ultimately dismissed.

## VI.

## <u>DISPOSITION CONCERNING RODGER STUBBS AND OTHERS</u>

49.   It is finally adjudicated and decreed through this Final Judgment that the Plaintiff LLCs and all Direct Lenders who are Plaintiffs in the 892 Case shall take nothing against Silar and the Estate.  In addition, the claims of the Plaintiff LLCs and all Direct Lenders who are Plaintiffs in the 892 Case against Piskun are hereby dismissed with prejudice.  Each of the foregoing parties shall bear their own costs and attorney's fees.

50.   With respect to Stubbs, the Court finds that Bickel & Brewer appeared on his behalf in this 892 Case, Stubbs is a plaintiff in the 892 Case, Stubbs is not and has never been a Direct Lender, and Stubbs is therefore not entitled to any damages or declaratory or other relief.   It is hereby ordered that Stubbs is dismissed as a party from the 892 Case without prejudice.  The Court shall continue to reserve jurisdiction with respect to Stubbs relating to matters over which this Court exercised jurisdiction in the 892 Case and/or the Asset Resolution Bankruptcy Cases.

51.   Plaintiffs in the 892 Case shall re-file with the Court within ten days of the date of entry of this Final Judgment with notice to the remaining defendants in the 892 Case a proposed final money judgment in a form consistent with the Court's rulings in the 892 Case and this Final Judgment.  In light of the rulings made in this Final Judgment and the fact that Compass and David Blatt remain defendants in the 892 Case, the Court orders that:   (a) the rulings against those remaining defendants shall stand but no final declaratory judgment is necessary in light of this Final Judgment and such rulings shall be bound up in a money judgment to be entered against such defendants; and (b) the final money judgment entered with respect to Compass and  Blatt must provide that Plaintiff Stubbs shall take nothing as a Plaintiff because there was no evidence offered

at the trial showing that he was a DL or was otherwise entitled to obtain either declaratory relief or

damages.

       IT IS SO ORDERED.

Dated:  October 31, 2012.

_____

UNITED STATES DISTRICT JUDGE

AGREED AS TO FORM:

BICKEL & BREWER
ARMSTRONG TEASDALE

       */s/ Janet L. Chubb*

By: _____
      Janet L. Chubb, Esq.
      Michael J. Collins, Esq.
      Robert M. Millimet, Esq.

Counsel for Plaintiffs

SULLIVAN, HILL, LEWIN, REZ & ENGEL

       */s/ Jonathan S. Dabbieri*

By: _____
      Jonathan S. Dabbieri, Esq.

Counsel for Chapter 7 Trustee,
William A. Leonard, Jr.

LAXALT & NOMURA, LTD.

       */s/ Daniel T. Hayward*

By: _____
      Daniel T. Hayward, Esq.

Counsel for Defendants Compass Partners, LLC,
Compass USA SPE, LLC, and David Blatt

THE MAJORIE FIRM, LTD.
LAW OFFICE OF MELANIE HILL

       */s/ Francis B. Majorie*

By: _____

      Francis B. Majorie PC
      Melanie A. Hill, Esq.

Counsel for Silar Advisors, LP and Silar Special
Opportunities Fund, LP

BORIS PISKUN

       */s/ Boris Piskun*

By: _____
      Boris Piskun

Pro se

- 20 -

5278650.3